1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3        HONORABLE CONSUELO B. MARSHALL, U.S. DISTRICT JUDGE

4                        - - -

5

# COPY

6

7                                    )
UNITED STATES OF AMERICA,            )
8                                    )
                    PLAINTIFF,       )
9                                    )
        vs.                          ) No. CR06-391-CBM
10                                   )
STEVEN PROWLER,                      )
11                                   )
                    DEFENDANT.       )
12  _____  )

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                LOS ANGELES, CALIFORNIA

17              MONDAY, APRIL 19, 2010

18

19

20

21

22        _____

23           CINDY L. NIRENBERG, CSR 5059
             U.S. Official Court Reporter
24           312 North Spring Street, #438
             Los Angeles, California 90012
25              *www.cindynirenberg.com*

1  APPEARANCES OF COUNSEL:

2

3  FOR THE PLAINTIFF:

4                    OFFICE OF THE UNITED STATES ATTORNEY
                     BY: SHERILYN PEACE GARNETT,
                       ASSISTANT U.S. ATTORNEY

5                    312 NORTH SPRING STREET
                     12TH FLOOR

6                    LOS ANGELES, CA 90012
                     213-894-2434

7

8

9  FOR THE DEFENDANT:
                     OFFICE OF THE FEDERAL PUBLIC DEFENDER

10                   BY: CHRISTOPHER DYBWAD,
                       DEPUTY FEDERAL PUBLIC DEFENDER
                       GUY IVERSON,

11                     DEPUTY FEDERAL PUBLIC DEFENDER
                     321 EAST 2ND STREET

12                   LOS ANGELES, CA 90012
                     213-894-2854

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1              LOS ANGELES, CALIFORNIA; MONDAY, APRIL 19, 2010

2                            2:00 P.M.

3                            - - - - -

4              THE CLERK:  Calling Item Number 5, CR06-391, USA

5    versus Steven Erik Prowler.

6              Appearances, please.

7              MS. GARNETT:  Good afternoon, Your Honor.  Sherilyn

8    Garnett for the United States.  Also seated with me at counsel

9    table is Supervisory Special Agent Gary Kiernan and Special

10   Agent Sean Mofferty with ICE.

11             THE COURT:  Good afternoon.

12             MR. DYBWAD:  Good afternoon, Your Honor.  Chris

13   Dybwad on behalf of Mr. Prowler, who is appearing via video

14   conference, and with me at counsel table is Guy Iverson also of

15   the Federal Public Defender's Office.

16             THE COURT:  Good afternoon.  And so I notice Mr.

17   Prowler is participating, as counsel said, by video, but we

18   can't see his face.

19             MR. DYBWAD:  Mr. Prowler, if you sit down -- there we

20   go.

21             THE COURT:  All right.  Good afternoon, Mr. Prowler.

22             THE DEFENDANT:  Good afternoon, Your Honor.

23             THE COURT:  So we will depend on you to let us know

24   if you are unable to hear what's being said here or if you

25   can't see.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1          One of the speakers, please let us know and we can

2   correct that.

3          Also, the last time that you appeared by video, I did

4   ask you at that time whether it was your desire to appear by

5   video rather than being here live for your sentencing hearing.

6   You do have a right to physically be here in the courtroom for

7   the sentencing hearing, and I think I explained to you the last

8   time that you appeared by video that if you wished to be here,

9   transportation would be arranged so that you could be here.

10          So do you understand, sir, that you do have a right

11   to be physically present in the courtroom with everyone else

12   for this sentencing hearing?

13          THE DEFENDANT:  Yes, Your Honor.  I understand I have

14   that right, and I voluntarily waived it.  It was my own

15   decision.

16          THE COURT:  So it's your desire to not come to the

17   courtroom for the sentencing hearing but to be present or

18   participate at the sentencing hearing by way of video?

19          THE DEFENDANT:  Yes, Your Honor.  I felt that the

20   transportation and all that would be involved in my stay at the

21   Los Angeles Detention Center would be just too physically and

22   emotionally stressful for me, especially over a period of

23   months, and knowing what -- all that would be involved, I felt

24   this would be better.

25          THE COURT:  You were apparently concerned about the

1    time that it would take to transport you from the facility

2    where you're presently located, bring you here to probably the

3    Metropolitan Detention Center, waiting there for the hearing,

4    and then the time that would be consumed while you attended the

5    hearing, and then waited to be transferred back or waited to be

6    transferred to whatever facility you would be serving your

7    sentence, the time that it would take to do all of that, you

8    had some concerns about that?

9         THE DEFENDANT:  I had serious concerns about its

10   effect on my emotional and physical health.

11        THE COURT:  And, sir, you probably realize, and your

12   attorney has probably discussed this with you, there is no

13   assurance that after the sentencing hearing that you would

14   remain at the facility where you're presently located, so it is

15   still possible after the sentence is imposed that you may be

16   transferred from that facility to a different facility.

17        Are you aware of that?

18        THE DEFENDANT:  Not really, Your Honor.

19        THE COURT:  And if that were the case, would that

20   change your position as to whether you wanted to be physically

21   here in the courtroom as opposed to participating by video at

22   this sentencing hearing?

23        THE DEFENDANT:  No, that would not change my decision

24   to proceed today as we're doing.

25        THE COURT:  All right.  Your attorneys have probably

1   advised you that even when recommendations are made by counsel

2   as to which facility within the Bureau of Prisons you should

3   serve your sentence and the Court recommends to the Bureau of

4   Prisons that you go to a particular facility for serving your

5   sentence, that it's the Bureau of Prisons that decides where

6   that will be, and they do not necessarily follow the

7   recommendation of the Court or the desire of you or your

8   attorney as to where you will serve your sentence.

9           Are you aware of that, sir?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  So you still may be transferred

12   from where you're presently located to a different place, and I

13   understand you to be saying that even if that is the case, you

14   still prefer and it is your desire to participate by video

15   rather than being here in the courtroom --

16          THE DEFENDANT:  That's correct.

17          THE COURT:  -- is my understanding correct?

18          And so where are you presently?

19          THE DEFENDANT:  I'm located at FCI Seagoville, Texas.

20          THE COURT:  And how long have you been at that

21   facility?

22          THE DEFENDANT:  It's roughly about two-and-a-half

23   years.

24          THE COURT:  All right.  Thank you, sir.

25          I want to raise another matter as well.  The last

1    time that you participated by video at a hearing, we did not go

2    forward with the sentencing hearing because the Court felt that

3    there were things that needed to be done before the Court was

4    ready to proceed with the sentencing.  And one of the things

5    that I raised was the fact that you did not have an attorney

6    present at the facility where you are located.

7         Now, there are two attorneys present in the courtroom

8    and, of course, they are representing you, but neither of them

9    is at the facility where you're located.  I had some concern

10   about that.  I raised that concern, so I want to explore with

11   you a little bit about that.

12        It is correct that there is no attorney presently at

13   that facility with you representing you for purposes of the

14   sentencing hearing, am I correct?

15        THE DEFENDANT:  That's correct, Your Honor.

16        THE COURT:  Have you met with counsel and actually

17   talked with counsel about your sentencing hearing since the

18   last appearance where you participated by video?

19        MR. DYBWAD:  And, Your Honor, if you would include

20   telephonically in that question.

21        THE COURT:  So have there been meetings between you

22   and your attorneys who are representing you for purposes of the

23   sentencing since you've last appeared by video?  And counsel

24   has asked that the Court include telephonic communications.

25        THE DEFENDANT:  What -- we've had a number of

```
 1   telephone conversations and written correspondence.  We have

 2   not had a personal face-to-face meeting.

 3           THE COURT:  And how do you feel about that?

 4           THE DEFENDANT:  We had a number of --

 5           THE COURT:  I was going to ask you --

 6           THE DEFENDANT:  How did I feel about it?

 7           THE COURT:  Yes.  Do you feel that you are ready to

 8   proceed with the sentencing hearing even though there have been

 9   no face-to-face conversations between you and your attorney

10   since the last hearing?

11           THE DEFENDANT:  Yes, I feel I am ready to proceed.  I

12   feel that Mr. Dybwad has fully answered my questions and has

13   addressed my concerns in all our previous communications since

14   then.

15           THE COURT:  And, sir, the last time I think I

16   identified the various things that I have read and considered

17   for purposes of the sentencing hearing, so I'm going to

18   identify those again, and I want to know if you have read these

19   papers, if you have discussed them with your attorney, and

20   whether you have them with you now as we proceed with the

21   sentencing hearing.

22           So let me identify them first.  There is a report

23   prepared by the probation department which gives the Court more

24   information about you.  It's the Pre-sentence Investigation

25   Report, and it was disclosed to the parties May 23rd, 2007.
```

1              Have you seen this report, sir?

2         THE DEFENDANT:  Yes.  Yes, Your Honor.

3         THE COURT:  And have you read it?

4         THE DEFENDANT:  Yes, I have.

5         THE COURT:  And have you discussed it with your

6    attorneys?

7         THE DEFENDANT:  Yes.  I did originally.

8         THE COURT:  And if there was anything in that report

9    to which you had an objection, did you tell your attorneys

10   about that subject?

11        THE DEFENDANT:  Yes.  Yes, I did.

12        THE COURT:  And do you know whether your attorneys

13   have, in fact, objected by filing something with the Court to

14   those things that are in the Pre-sentence Report to which you

15   have objections?

16        THE DEFENDANT:  There was one thing that stands out

17   in my mind that I was very concerned about was a fabrication --

18   somewhere along the line that I had tried to escape from the

19   prison in Bangkok, and the response -- our response to this was

20   addressed in a footnote simply to the effect that I had firmly

21   denied ever trying to escape from that facility.

22             I was most upset about that because I felt that that

23   originated with the authorities in Thailand and it was picked

24   up by the authorities in the United States, and it's possible

25   that that fabrication was used to deny me bail in Thailand and

```
 1    has had a ripple effect.

 2              MR. DYBWAD:  And, Your Honor -- sorry, Mr. Prowler.

 3              And, Your Honor, that objection is contained in the

 4    Defendant's Position re Sentencing from the original sentencing

 5    proceedings.  Mr. Prowler accurately identified that it's

 6    contained in a footnote in that pleading.

 7              THE COURT:  And so the defendant addressed it in the

 8    defendant's position paper that you filed with the Court?

 9              MR. DYBWAD:  The original papers in connection with

10    the original sentencing, Your Honor, yes.

11              THE COURT:  Mr. Prowler, I will identify the

12    additional things that I have read for purposes of preparing

13    for this hearing and I want to know for each of these whether

14    you have also read them and discussed them with your attorney.

15              In addition to the Pre-sentence Report prepared by

16    probation, there is a confidential letter.  The letter is dated

17    June 25th, 2007 prepared by Probation and the letter was

18    originally prepared for Judge Takasugi's consideration and it

19    starts out, "Dear Judge Takasugi."

20              In that letter, Probation does indicate the sentence

21    that Probation thinks is appropriate to be imposed, as well as

22    the conditions of supervised release, and there are 19

23    conditions.  That letter also includes Probation's

24    justification for why Probation calculates the sentence in the

25    manner in which they do.
```

1          There is an addendum to the Pre-sentence Report, and

2     this is also prepared by Probation.  It contains objections by

3     the government that Probation received, and it says, "The

4     government has no factual objections and no objections to the

5     probation officer's recommended application of the guidelines.

6     The government seeks a sentence of 327 months of imprisonment."

7          And then Probation also indicates objections that the

8     defense made, and it indicates, "Although the defendant has no

9     factual objections, he does object to the following sentencing

10    guideline enhancements," and so Probation addresses those as

11    well.

12         Also included is the Judgment and Commitment Order

13    that was prepared as a result of the sentence that was imposed

14    by Judge Takasugi.  That is the sentence that was appealed to

15    the Circuit.

16         And then again, there is the Pre-sentence Report,

17    which I mentioned earlier.

18         So, sir, have you seen and discussed with your

19    attorney the confidential letter that I referred to, as well as

20    the objections that were made to the Pre-sentence Report by the

21    government, as well as the defense counsel and Probation's

22    response thereto?

23         MR. DYBWAD:  And, Your Honor, if I may preliminarily

24    address part of that question.

25         The defense and Mr. Prowler have never seen the

1    confidential letter.  The original sentencing, Judge Takasugi

2    on the record gave what amounted to I believe an accurate

3    summary of that recommendation letter, but that recommendation

4    letter itself has never been disclosed to the defense or to Mr.

5    Prowler, presumably the government as well.

6            THE COURT:  So -- but last time that you were in

7    court, this Court, I did not disclose to you the actual

8    confidential letter that's dated June 25th, 2007?

9            MR. DYBWAD:  I don't believe so, Your Honor.

10           THE COURT:  I generally do, so that's -- I usually

11   make it available to both the defense and the government.  And

12   if I didn't do that, then I am prepared to make it available to

13   both sides before we complete the sentencing hearing.  But at

14   least it's your memory that you never actually saw the physical

15   letter itself?

16           MR. DYBWAD:  And, Your Honor, I hate to misspeak, but

17   it's my memory that I have not seen that confidential letter.

18           I do know that Judge Takasugi gave a detailed summary

19   of its contents, and presumably the Judgment and Commitment

20   Order contains at least whatever proposed supervised release

21   conditions that Judge Takasugi saw fit, but, again, I have

22   never seen the letter.

23           THE COURT:  The defense has in its position paper

24   objected to those conditions of supervised release that you

25   felt should not be included, am I correct?

1          MR. DYBWAD:  That is correct, Your Honor, and that

2    comes from the original Judgment and Commitment Order of the

3    conditions imposed at that time.

4          THE COURT:  All right.  Then I'll accept counsel's

5    representation on that.

6          Mr. Prowler, the other document that I have before me

7    is the Defendant's Position re Re-sentencing.  This is a

8    document that was filed October 13th, 2009.

9          And so my question again, sir, is have you read this

10   position paper and had an opportunity -- or actually discussed

11   it with counsel who are representing you at the sentencing

12   hearing?

13         THE DEFENDANT:  Yes, Your Honor.  I have seen that

14   and we have discussed it.

15         THE COURT:  I also have and have read for purposes of

16   this sentencing hearing the Government's Supplemental

17   Sentencing Position re Re-sentencing.  This is a document also

18   filed October 13th, 2009.

19         Have you read this paper and discussed it with your

20   counsel?

21         THE DEFENDANT:  I'm not sure about that one, Your

22   Honor.  I did read the original pleading from the government.

23   I'm a little confused now as to whether that's -- whether

24   that's what you are referring to.

25         THE COURT:  This document that I have just referred

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    to was actually filed October 13th, 2009.  It's entitled

2    Government's Supplemental Sentencing Position re Re-sentencing,

3    so I don't believe that this is the document that was prepared

4    for the original sentencing hearing.

5           So should I understand, sir, that you do not know

6    whether you actually read the government's supplemental

7    sentencing position and discussed that with your attorney?

8           THE DEFENDANT:  I'm sorry.  I am recalling now that I

9    did read that.  That was provided to me by Mr. Dybwad.

10          THE COURT:  Now, one of the reasons I was delayed in

11   taking the bench this afternoon is some additional things have

12   been filed that I was trying to read before I took the bench,

13   so I want to ask you about those.

14          There is a Supplemental Information re Re-sentencing,

15   and this was actually filed I believe on April 13th of this

16   year, but I did not see it until just this morning, and that's

17   just because I wasn't here at the time that it was filed.

18          Attached to that are Exhibits A, B and C.  And those

19   exhibits give the Court more information about things that you

20   have done, programs that you've participated in, inmate skills,

21   development plan, a certificate indicating that you have

22   completed certain programs that were offered by the Bureau of

23   Prisons, and then Exhibit C is a poem that you have written

24   entitled Figure Eights' Infinite Paths, so that is something

25   else that I have read.

1        Sir, is that a document that you have seen, read and

2  discussed with your counsel?

3        THE DEFENDANT:  Yes, Your Honor.

4        THE COURT:  And then this afternoon just before I

5  took the bench, brought to my attention was the government's ex

6  parte application for an order sealing certain documents.  A

7  declaration of government's counsel is attached thereto, and

8  the documents that are referenced are the Victim Impact

9  Statements re Sentencing.

10        So that document was -- I'm not sure of the file

11  date, but the last page shows that it was either mailed or

12  provided or served upon the public defender's office on April

13  the 16th.

14        So I would first just ask defense counsel, have you

15  seen the document that I just described?

16        MR. DYBWAD:  I have, Your Honor.  I don't believe Mr.

17  Prowler has.  I attempted to mail-serve at that point Mr.

18  Prowler, but I've received and reviewed it, but I don't believe

19  he has yet.

20        THE COURT:  Is this a document that you feel that you

21  should discuss with him so that he has an opportunity to

22  address it through you or himself before we complete the

23  sentencing hearing?

24        MR. DYBWAD:  Your Honor, I believe we can go forward

25  at this time.  And the way I was going to propose to the Court

1    that we go forward is when the Court is ready to start argument

2    after the defense argues and the government argues, I was going

3    to propose that we can take a five-minute break to allow me to

4    telephonically confer with Mr. Prowler and answer any questions

5    he has at that point.

6              I'm prepared to address the information contained

7    therein as of right now.

8              THE COURT:  All right.  So, Mr. Prowler, I think

9    you've heard defense counsel indicate as to this Victim Impact

10   Statement, he's reviewed it.  He has not provided it to you for

11   your review, and you have not had a discussion about this

12   document, but he does ask at some time during these proceedings

13   the Court take a recess, counsel will then call you by phone

14   and will discuss with you anything that he feels the two of you

15   need to talk about before the Court completes the sentencing

16   hearing.

17             So is that acceptable to you?

18             THE DEFENDANT:  It is acceptable, Your Honor.

19             THE COURT:  Those are the things that I have read to

20   prepare for the hearing today.

21             I do want the record to reflect, so counsel are

22   aware, the defendant is aware, I have not read the original

23   sentencing papers.  So the position papers that were filed

24   prior to the sentencing by Judge Takasugi, I have not read

25   those.  I know that they are part of the file and, certainly, I

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    could read them, but I just haven't read them, so I want you to

2    know that.

3          Because this is a re-sentencing, the Circuit having

4    remanded the case so that the Court could sentence again, I

5    didn't feel it was necessary to go back and read the original

6    position papers, so I've only read those supplemental papers

7    that have been filed.

8          So if either counsel believes that the Court should

9    read, before the Court completes the sentencing hearing, the

10   original position papers that you filed with the Court, you may

11   need to review those, bring that to my attention, and then I

12   will, obviously, review those before I impose the sentence, but

13   I do want you to know that I have not read them.  And even if I

14   have, I don't remember what's included in them at this point.

15   So for purposes of this hearing, I'll be relying upon those

16   documents that I've identified which have been reviewed by the

17   Court.

18         Is there anything else that I failed to mention that

19   has been filed?  And, of course, that could include your

20   original position papers that you feel that the Court should

21   review before the Court imposes sentence.

22         MR. DYBWAD:  Your Honor, I have listed three

23   documents.  There were actually two documents with the same

24   title of Defendant's Supplemental Information re Sentencing.

25         One of them was manually filed, and I believe that's

1    the one that the Court alluded to that contained the Bureau of

2    Prison's progress report.

3           There was another one that was e-filed that

4    contained -- I believe it's Document 95.  It contains some

5    additional exhibits regarding Mr. Prowler's Torah studies.

6           THE COURT:  When was it filed?

7           MR. DYBWAD:  Unfortunately, I've hole-punched

8    directly through the date.

9           THE COURT:  What is the document number?

10          MR. DYBWAD:  Document Number 95, Your Honor.

11          THE COURT:  Ninety-five.  Now, I may have read that

12   document in preparation for the hearing last time, but I'll ask

13   someone on my staff to locate that document so that at least I

14   can have it before me and I will be able to tell you whether

15   it's something that I previously read.

16          And then was there another document as well?

17          MR. DYBWAD:  There were two other documents which I

18   believe the -- which the Court alluded to.

19          There was a defense Objection to Supervised Release

20   Conditions in accordance with what the Court indicated one

21   subject it wanted to address at the re-sentencing, and the

22   government also filed a response to the defendant's objections

23   to the supervised release conditions.

24          I believe Mr. Prowler has the defense filing but

25   probably not the government filing.

```
 1          THE COURT:  And, again, I believe that the Court's
 2   read both of those.  I don't have those documents before me at
 3   this moment, but because I am aware that the defense did object
 4   to conditions of supervised release and I'm prepared to comment
 5   on those and I'm also aware that the government responded to
 6   those, I believe those are documents that I have read, but I
 7   don't have them before me on the bench this afternoon, I
 8   believe.
 9          Let's see.  One of my law clerks has given me a note
10   that might refresh my recollection.
11          Okay.  Apparently, the clerk will print out those
12   documents, and so before we complete the sentencing hearing, I
13   will have reviewed them.
14          MS. GARNETT:  Your Honor, I'd also like to -- I'm not
15   sure if the Court referred to the Amended Declaration of Gary
16   Kiernan with the accompanying exhibits, but that was a document
17   that we also filed.
18          THE COURT:  That was filed by the government?
19          MS. GARNETT:  Yes, on November 20th, 2009.  It's a
20   sealed document.
21          THE COURT:  And I don't know if that's the document
22   that I reviewed, but, again, since it's been called to my
23   attention, I'm sure the clerk will make sure that I get it, and
24   I'll put something on the record once I have read it.  And it
25   may be that I previously read it and just am not remembering at
```

 1   the moment, but I know I don't have it before me at this time.

 2          The defense has that document?

 3          MR. DYBWAD:  I do, Your Honor.

 4          THE COURT:  And is that a document that you have

 5   discussed with Mr. Prowler?

 6          MR. DYBWAD:  Discussed the contents.  For various

 7   reasons of the information contained within it, I have not

 8   mailed it to Mr. Prowler.

 9          THE COURT:  So what I think should be done with these

10   documents that counsel indicates that you may have had a

11   discussion on the subject of the document but not actually

12   mailed it to the defendant or actually discussed it with him,

13   before we complete the sentencing hearing, you have that

14   telephone conversation with Mr. Prowler, then this is one of

15   the things that you need to discuss with him.

16          So, Mr. Prowler, one thing that would typically

17   happen if you were here in this courtroom where the sentencing

18   hearing is taking place, all of these documents that we're

19   referring to that maybe you have not yet read or just don't

20   remember them or maybe have not yet discussed them with

21   counsel, or you discussed them, but you didn't read them or you

22   don't remember them, I would give you the opportunity to read

23   them before I completed the sentencing hearing.

24          Because you're not physically here in the courtroom,

25   we can certainly get these documents to you.  It's just a

1   matter of making them available either by fax or some

2   electronic means or some other means, and we can still do that

3   if these are things that you would want the opportunity to have

4   time to review them, to also discuss them with your counsel as

5   to what impact they may have upon the sentencing itself.

6          So we will move along, but I will ask you later

7   whether you want to review any of these documents.  If you do,

8   I'll make sure that counsel provides them to you.  And then

9   once you've read them, you may want to discuss them with

10  counsel, and if that's your desire, then counsel would arrange

11  that discussion.

12         I had actually indicated at the last hearing that I

13  felt the better procedure was to have counsel present at the

14  institution where the defendant is located, that one counsel

15  would be here in the courtroom, one counsel would be there so

16  that we would all be assured that Mr. Prowler was looking at

17  the same documents that we have before us and that the Court is

18  considering.

19         And I know that counsel made a decision that you

20  would do it this way rather than physically having someone

21  there, but the defendant does have a right, obviously, to

22  confer with counsel, and the question is what's the most

23  effective way of doing that.

24         Is it equally as effective to have the defendant at

25  the institution and we all be here in the courtroom or would it

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   be more effective if at least one counsel was present with the

 2   defendant?

 3          So you might want to put something on the record

 4   about that subject, and then I can ask the defendant a few more

 5   questions.  So I will let defense counsel be heard.

 6          MR. DYBWAD:  Yes, Your Honor.

 7          After the last appearance on this matter, we had,

 8   again, discussed again proceeding by video conference with Mr.

 9   Prowler and discussed whether it would be sufficient to set up

10   conferring with Mr. Prowler by a telephone line that was not

11   able to be heard by the Court and the court publicly.  And

12   after that discussion, we deemed it sufficient to go forward

13   with the re-sentencing, given that Mr. Prowler was present at

14   the original sentencing and through a number of pre-trial

15   motions and is familiar with a lot of -- in fact, if not all,

16   the arguments and information that will be presented again to

17   this Court at this time.

18          THE COURT:  And counsel may for the record -- I think

19   generally you did make a statement about the meetings that have

20   taken place between you and Mr. Prowler -- maybe all of them

21   have been telephonic -- or most of them have been telephone

22   since we were last assembled for the sentencing here which was

23   continued and just in what manner you have made materials

24   available to him, discussed with him those materials and feel

25   that at this point you have the benefit of whatever he would
```

1    want you to raise with the Court at the sentencing hearing.

2              I'm not suggesting that you disclose any confidences

3    or waive attorney-client privilege, but I think the record

4    needs to reflect just how those communications have taken

5    place.

6              MR. DYBWAD:  Yes, Your Honor.

7              There were two methods of communication.  One was

8    correspondence by mail when Mr. Prowler would articulate

9    questions based on the upcoming re-sentencing and his

10   understanding of the materials as well as any developments in

11   case law, and there was correspondence back and forth

12   addressing those questions.  There were also a number -- quite

13   frankly, it's large enough that I can't remember off the top of

14   my head -- a number of telephonic conversations leading up to

15   today's re-sentencing.

16             Additionally, the Court inquired about making sure

17   that the Court had up-to-date information about Mr. Prowler and

18   the facility that he's at.

19             As the Court can tell from the supplemental

20   information that was filed, there is information with a recent

21   progress report from the Bureau of Prisons from FCI Seagoville,

22   as well as other information provided by Mr. Prowler regarding

23   his recent activities, including book reviews, the poem, so I

24   would put that on the record in terms of an information

25   exchange between defense counsel and Mr. Prowler.

```
 1              THE COURT:  And you are referring to the document

 2   that's entitled Supplemental Information re Sentencing with the

 3   attachments A, B and C?

 4              MR. DYBWAD:  That is correct, Your Honor.

 5              THE COURT:  And lodged with the Court I think April

 6   13th --

 7              MR. DYBWAD:  That is correct.

 8              THE COURT:  -- of this year?

 9         All right.  Then, Mr. Prowler, again, the Court will

10   just permit you to address the Court, if you wish to, sir.

11         Your counsel has just described the method of

12   communicating with you since the last hearing, and I would just

13   inquire of you do you agree with counsel's representations to

14   the Court that those are the various methods of communication?

15              THE DEFENDANT:  Yes, Your Honor.

16              THE COURT:  And your counsel indicated that things

17   may have been mailed to you and you may have had questions

18   about those things and you would have, in turn, mailed those

19   questions to counsel and then counsel would have mailed some

20   response to you.

21         Is that what you recall occurring?

22              THE DEFENDANT:  Yes.  I was -- I very carefully

23   looked over everything and wrote letters, very thorough, and I

24   was very satisfied with the replies I got from my counsel.

25              THE COURT:  And your counsel also says that there
```

1    have been telephone calls where you have had -- you had spoken

2    to counsel telephonically, and you agree that that has also

3    occurred?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  And, sir, you are still requesting that

6    we proceed with this sentencing hearing with you participating

7    by video?

8            THE DEFENDANT:  Yes.  I'm just -- since I've learned

9    that there have been some additional documents filed with the

10   Court that I haven't seen, particularly recent documents, I

11   would want to receive a fax transmission if possible.

12           If that can be done during our proceeding today so

13   that I could discuss them if necessary with my counsel, that

14   would be very much appreciated.

15           THE COURT:  All right.  Let me hear from counsel as

16   to your position on that.  Whether or not these various

17   documents that Mr. Prowler has not seen that have been

18   identified for this record, do you feel that you will be able

19   to have an adequate discussion with him about these papers,

20   such as he suggests, faxing them to him today?

21           He needs an opportunity to review them.  He would

22   also need an opportunity to question you, apparently, as he's

23   done in the past, about anything that he may want to question

24   you about, and then you would need to be able to respond to

25   those questions.

1          MR. DYBWAD:  I do believe it's sufficient, Your

2    Honor.

3          And if I may add just a little bit more information.

4    The category of documents we're talking about are three

5    documents.

6          The government filed objections -- well, a reply to

7    the defense objections regarding supervised release conditions

8    on Friday.  At that point it was too late to get that

9    information to Mr. Prowler, but I believe that I can adequately

10   discuss that over the telephone with him.

11         The government also filed Victim Impact Statements

12   under seal.  I believe that that will be addressed during the

13   sentencing and I'll also be able to communicate with Mr.

14   Prowler about the contents of that while the sentencing is

15   ongoing.

16         The government alluded to a third document which I

17   did not provide to Mr. Prowler and, in fact, I don't believe

18   that I can provide to Mr. Prowler; however, the information --

19   due to the nature of the information contained as exhibits to

20   it, however, the information that is contained as exhibits are

21   evidence in this case that all parties are familiar with, and

22   what that document is is a summary of certain parts of journals

23   and other tangible evidence which I have previously discussed

24   with Mr. Prowler.

25              THE COURT:  Are you referring to the document -- and

```
1    I now have it before me -- entitled Amended Exhibits A through

2    U previously filed as attachments to the Declaration of Gary J.

3    Kiernan, K-I-E-R-N-A-N --

4              MR. DYBWAD:  Yes.

5              THE COURT:  -- in Support of the Government's

6    Position re Sentencing of the defendant?  And the document, I

7    don't have a file stamp on it, but --

8              MS. GARNETT:  November 20th, Your Honor, it was

9    filed.

10             MR. DYBWAD:  And, Your Honor, that is the document

11   I'm referring to.

12             THE COURT:  Okay.  So does counsel represent it was

13   filed November 20th?

14             MS. GARNETT:  Yes, Your Honor.

15             THE COURT:  2009?

16             MS. GARNETT:  Yes, Your Honor.  And also that

17   document is identical to another document that was filed for

18   the original sentencing that I'm assuming that defense counsel

19   and Mr. Prowler had access to because Mr. Prowler came to the

20   original sentencing or appeared in person.

21             The only difference between the document that was

22   filed in the original sentencing and the one that the Court has

23   before it that there are Bates numbers on the exhibits.

24             MR. DYBWAD:  And, again, Your Honor, I believe that's

25   correct.  All the information contained in there was discussed,
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    reviewed, made available to Mr. Prowler and was discussed at
 2    the original sentencing.
 3            THE COURT:  And just for Mr. Prowler's purposes, the
 4    declaration that's prepared under penalty of perjury by I
 5    believe the agent was executed on September 7, 2007 in Bangkok,
 6    Thailand.
 7            So, Mr. Prowler, the document that we're referring
 8    to, you've heard what both counsel have said about this
 9    document.  The declaration does have exhibits attached to it,
10    and I've identified those as Exhibits A through U, U as
11    in umbrella, and counsel believe that you reviewed this
12    document for purposes of the original sentence hearing.
13            So do you remember that document?
14            THE DEFENDANT:  I believe so.
15            THE COURT:  And do you believe it is a document that
16    you reviewed and discussed with defense counsel prior to the
17    original sentencing hearing?
18            THE DEFENDANT:  What is the name -- what does that
19    refer to, the contents?
20            MR. DYBWAD:  Your Honor, if I may, the contents
21    consist of excerpts from journal entries, as well as excerpts
22    from photograph albums I believe we're familiar with.  And it
23    purports -- or it doesn't purport, it's a summary of those
24    excerpts.
25            MS. GARNETT:  It's essentially a summary of evidence
```

```
1    seized from the defendant consisting of what the defense

2    counsel just mentioned, as well as index cards, ledgers,

3    photographs, as well as the reports of investigation in this

4    case, all of which defendant has authored on the stuff that we

5    took from him, and then he has seen the reports from the

6    agents.

7              THE COURT:  So with the description given by both

8    counsel in the case, does that help you remember what this

9    document is and what it contains?

10             THE DEFENDANT:  So this document was submitted for

11   the original sentencing; is that correct?

12             MR. DYBWAD:  That is correct?

13             THE DEFENDANT:  All right then.

14             I was just concerned that there was some supplemental

15   documents submitted recently that were not seen by me, but if

16   these pertain to the original sentencing, then that's

17   satisfactory enough for me because I know I was given that

18   opportunity to review everything.

19             THE COURT:  Maybe this might be helpful.  If there is

20   a way to get this document, this specific document that we're

21   referring to and maybe others as well, to the defendant so that

22   he could see the document, it may help him know whether or not

23   it's a document that he's previously seen and what he'd like

24   for counsel to say about the document.

25             As I said today -- I mean, I've read all these things
```

1   fairly recently but don't remember each of the documents, the

2   content of every document, so it may be that the defendant has

3   seen the document, he just doesn't remember the document in the

4   manner in which we are describing it.

5           Does the defense have any suggestions?

6           I do have other people in the courtroom.  I have

7   other things that I could do this afternoon, so if we needed to

8   take a recess so that counsel would feel assured that the

9   defendant is looking at what we're looking at, maybe we can

10  make that available.

11          MR. IVERSEN:  May I have a moment, Your Honor?

12          THE COURT:  Sure.

13      *(Counsel confer off the record.)*

14          MR. DYBWAD:  Your Honor, again, I believe we're

15  talking about three documents, one of which Mr. Prowler has

16  indicated a familiarity with from the original sentencing.

17          The concern about that document, the declaration of

18  Agent Kiernan, is that, quite frankly, under the current

19  supervised release conditions, Mr. Prowler cannot possess it.

20          We could fax it over -- we can fax the declaration

21  part over to the prison, but someone would need to shred it

22  after that.  But, again, I believe Mr. Prowler is familiar with

23  all of that information from the original sentencing.

24          The government's remaining two documents are Victim

25  Impact Statements and the objections to supervised release

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    conditions.  Those we could fax over this afternoon.

 2              I believe we're in a position to go forward and

 3    discuss during a break with Mr. Prowler those two documents

 4    which were filed at the end of last week.  I do note that the

 5    Court has a full courtroom.  However the Court wants to

 6    proceed.  But, again, that one document I don't believe, even

 7    if we did fax it over there, someone would need to shred it

 8    shortly thereafter.

 9              THE COURT:  Well, let me say this, Mr. Prowler -- I

10    think you want to say something, so let me let you be heard

11    first, and then I will comment on what your counsel has just

12    said.

13              THE DEFENDANT:  My question is actually directed to

14    my case manager who is with me, Mr. Martinez.

15              Do we have the capability in this facility for me to

16    see this document being shredded?

17              VOICE:  Yes.  We can shred it.  Let me see if we have

18    a fax machine.

19              THE DEFENDANT:  He said "yes," and he's going to

20    check to make sure that there is a fax machine up here.

21              THE COURT:  So you asked that question -- did you ask

22    that question, sir, because you would like to have this

23    document before you but you just want to make sure that the

24    facility has the capability of shredding it once you have seen

25    it?
```

```
 1          THE DEFENDANT:  Well, it's been expressed that this
 2   is a document that I suppose could compromise my safety, and if
 3   that's the case, it really should be destroyed immediately
 4   after I scan it.  But I just wanted to stress that it's not my
 5   intention in any way to delay the proceedings.  I would hope we
 6   can move everything along, but I just want to be sure that
 7   we've covered all bases and we can just dispose of the material
 8   quickly enough.
 9          THE COURT:  Sir, would you like to see the material
10   that we're talking about, the amended exhibits and declaration?
11          THE DEFENDANT:  Is there any reason why -- again, I'm
12   sorry for my hesitancy on this.  Is there any reason why my
13   counsel feels I should not see it?
14          MR. DYBWAD:  Well, Your Honor --
15          THE COURT:  That's a matter that I think you and your
16   counsel can discuss so that he can discuss that with you
17   personally, so I won't try to respond to that.
18          As I've indicated, there will be some time during the
19   course of this proceeding that we'll take a recess and your
20   counsel will speak with you and he can better answer that
21   question.
22          Let me just say a couple of things before we proceed
23   further, and then I'll ask another question of counsel.
24          Most of the discussion that we've had so far, Mr.
25   Prowler, is because I want to be sure that you understand if
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    there is any disadvantage in your not being physically here,

2    what we're going to be doing here, and we will be looking at

3    things that, of course, are not before you so you will not have

4    the opportunity to see those things.

5         So the original sentence that was imposed in this

6    case was ten years by Judge Takasugi, as you know.  That was

7    appealed by the government.  The Ninth Circuit has remanded it

8    for sentencing, and I will hear from everyone here, including

9    you, before I make a decision as to what the sentence may be,

10   but you must keep in mind the sentence could be higher than the

11   sentence that Judge Takasugi imposed.

12        I think you are aware that both the probation

13   department and the United States Attorney's office have asked

14   for a sentence that's considerably higher than the one that

15   Judge Takasugi imposed.

16        Your counsel, of course, have argued to this Court

17   that the sentence that was imposed, which is a ten-year

18   sentence, is the sentence that should be imposed by this Court.

19        I don't know that that will be the case.  So I do

20   want you to understand that you may be looking at a much higher

21   sentence, and if that affects your decision in any way to

22   participate by video conferencing instead of coming physically

23   here to the courtroom, that's something that you need to

24   consider.

25        Before you respond, you might want to discuss this

1    with counsel.  And if you'd like to do that, I'll give you that

2    opportunity, but do you understand the statement that I have

3    made?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  So would you like to talk with your

6    counsel before we go further just on this issue as to whether

7    you should still request to participate in this sentencing

8    hearing by video rather than being physically here?

9              THE DEFENDANT:  Yes, I would like to discuss all of

10   this with him.

11             THE COURT:  Okay.  I think this is the break time.

12   And so during this break, I think counsel can do a number of

13   things.  You may be able to acquaint and help Mr. Prowler

14   recall the amended exhibits A through U and the declaration

15   such that he is satisfied that he's seen it, is familiar with

16   its content and either wants to see it again by having you make

17   it available to him or doesn't need to see it again.

18             You may also apprise him of those additional

19   documents that we discussed that he has not yet seen and the

20   content of those documents so, again, he would know whether

21   those are documents that he feels that he needs to review

22   before he can proceed with the sentencing hearing.

23             Then I'll let you advise the Court as to whether he

24   still wishes to proceed in this manner or he would prefer being

25   physically here.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1            One of the comments I made earlier is he may be

 2   transferred anyway from this facility where he's presently

 3   located, so if a part of his reason for not wanting to come

 4   here for the sentencing hearing was he's comfortable where he

 5   is and he'd like to remain there, that could change anyway, as

 6   we all know.  Not that I have anything specific in mind, but I

 7   just think it's something that he must consider.

 8            I do not know, but counsel probably do know, if he

 9   were to be transferred here for the sentencing hearing, what

10   that actually entails, how long that's likely to be, how long

11   he would likely be at MDC, all of the things that may be

12   concerning him that's causing him to feel, you know, "I should

13   stay where I am," and participate by video rather than

14   physically coming to the courtroom.

15            I still express concern that there's no counsel there

16   with him, and I don't think counsel is concerned about that.

17   So the Court may be overly concerned, and apparently Mr.

18   Prowler isn't concerned about that either, but at least I think

19   it's something that needs to be addressed.

20            So why don't we take the recess at this time.

21            And how much time should I give you?  I don't know

22   that 15 minutes is adequate, but if that's what you think is

23   adequate, then I'll take 15.

24            MR. DYBWAD:  I think 15 minutes would be adequate.

25            THE COURT:  Okay.  We'll take a 15-minute break.
```

1            In the meantime, I'll be handling some of the other

2    matters.

3            MR. DYBWAD:  Understood.

4            THE COURT:  Thank you.

5       *(Recess taken from 2:50 to 3:15.)*

6            THE COURT:  Okay.  We're back on the record.

7    Appearances have been noted.  This is after the break.

8            Mr. Prowler is with us and counsel has had an

9    opportunity to speak with him.

10           And would counsel like to put something on the

11   record?

12           MR. DYBWAD:  Yes, Your Honor, and I'll put it in a

13   very summary fashion.

14           I believe we only have 15 minutes left -- or at this

15   point probably ten minutes left on the video link, so at this

16   point, we are probably not proceeding forward with the

17   re-sentencing.

18            With regard to -- without going into the substance

19   of the communication, again, there have been three documents

20   that we discussed.  The declaration of Gary Kiernan discussed

21   with Mr. Prowler, I believe his memory is refreshed that it

22   contains material that we have previously reviewed in person.

23           The other two documents, the Victim Impact Statements

24   and the government's response to the defense's objections

25   regarding supervised release, were discussed with Mr. Prowler

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    on the telephone, the substance of them.

2           Again, I think we're now in a position where we're

3    not going forward today, and those last two documents could be

4    faxed to his facility and made available to him so that he can

5    review them at his leisure.

6           It's my understanding that Mr. Prowler, but I don't

7    want to speak for him, would still like to go forward with

8    video conference, and that's his position, and it's his right

9    to waive if he's comfortable with it.  That's what I would put

10   on the record.

11          THE COURT:  All right.

12          Mr. Prowler?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  You've heard the statement made by your

15   counsel.  Is it still your desire after speaking with him to

16   proceed by video?

17          THE DEFENDANT:  Yes, it is.

18          I want to emphasize I, myself, am a very meticulous

19   and thorough person.  I ask many questions.  At times I'm

20   accused of asking too many questions, and I've had the

21   opportunity to discuss these documents with counsel.

22          I am satisfied that we've covered everything we

23   should cover.  And weighing the pros and cons of my -- again,

24   my physically coming out to Los Angeles -- you know, I'm a

25   great believer in face-to-face communication, but at my age --

1    and my physical and emotional state is such that it would just

2    be too much for me to endure, and I feel satisfied that the

3    video link is adequate and even more than adequate, and I feel

4    that it's really the best option at this time.

5              THE COURT:  All right.  Sir, so you know that you

6    have a right to be physically present here in the courtroom for

7    the sentencing hearing; is that correct?

8              THE DEFENDANT:  Yes, I do.

9              My question to you is if within the next -- let's

10   say, 24 hours -- I were to decide otherwise, could I do that?

11             THE COURT:  You could, sir.  All you need to do is

12   communicate that to your counsel.  He would advise the Court

13   and then we would make the arrangements for you to be

14   transported here to Los Angeles for the hearing.

15             THE DEFENDANT:  Thank you very much, but, again, I

16   feel comfortable enough with the video arrangement.

17             THE COURT:  Sir, do you make this decision freely and

18   voluntarily?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  No promises have been made to you that's

21   causing you to decide to participate by video rather than in

22   person?

23             THE DEFENDANT:  No promises whatever, Your Honor.

24             THE COURT:  No threats have been made to you or

25   anyone near or dear to you that's causing you to make this

1 decision?

2          THE DEFENDANT:  That is correct, Your Honor.  No

3 threats have been made.

4          THE COURT:  And you've had a discussion on this very

5 subject with your counsel?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  And he has given you his advice as to the

8 difference between being here in person and participating by

9 video?

10          THE DEFENDANT:  Yes, he has.  And I can add that as

11 painful as it is for me to endure yet another postponement of

12 the hearings, I know we can take advantage of the additional

13 time to discuss any other loose ends we have.  So there is some

14 good to the delay, and I feel sure that this will work out.

15          THE COURT:  And, sir, just one final question.  Would

16 you prefer having an attorney present at that facility with you

17 as we proceed with the sentencing hearing since you are going

18 to be participating by video?

19          THE DEFENDANT:  I think that would be a splendid

20 idea.  The other gentleman who was with Mr. Dybwad, perhaps he

21 could come out for the next hearing.  I have always had faith

22 in Mr. Dybwad in his presentations in court, and I would choose

23 to have --

24      *(Brief interruption in the proceedings.)*

25          THE DEFENDANT:  -- I would choose to have him

```
 1   represent me, and the other gentleman can come out to see me to

 2   be here at the hearing.  I think that's a good idea.

 3            THE COURT:  All right.  I was just going to ask for

 4   counsel, anything further that you believe the Court should

 5   place on the record or inquiry that should be made concerning

 6   the waiver?

 7            MR. DYBWAD:  I don't believe so, Your Honor.

 8            THE COURT:  Government's counsel?

 9            MS. GARNETT:  I just want to point out for the Court,

10   though, that in government counsel's argument, I do plan on

11   going through the exhibits and pointing to specific references,

12   so I agree with Mr. Prowler that I think it would be an

13   excellent idea to have Mr. Iverson go out and perhaps have a

14   copy of the declaration of Mr. Kiernan with Mr. Prowler.

15            THE COURT:  Well, that's what I expected would happen

16   this time.

17            I mean, when we had our last hearing, I think I

18   suggested that there should be an attorney or someone

19   physically present with him, even if it were a paralegal or

20   someone, that had all the documents, could make sure that he

21   has the document, he has the right page so that he knows what's

22   being discussed, and I still feel that that is one way of doing

23   it and counsel should consider that.

24            Obviously, your counsel and your reasons for doing it

25   differently may be very good reasons, and I'm not asking that
```

1    you share those with the Court, but I am concerned that the

2    defendant does not have the ability to have all the documents

3    that are going to be used and to have someone with him who can

4    tell us that he's now looking at the document, he's reviewed

5    the document, he has questions about the document, so I still

6    think counsel should consider that.

7             MR. DYBWAD:  And, Your Honor, two quick points.

8             I think given the present posture, perhaps setting a

9    next date doesn't make sense.  If the parties can discuss --

10   I'll need to inform Mr. Iverson that perhaps he's going to

11   Texas.  If we could have some time and then contact the Court's

12   clerk about setting up the re-sentencing date formally, that's

13   my first point.

14            The second is I understand the Court and the

15   government's concern that Mr. Prowler have all the exhibits in

16   front of him.  I have concerns that who's ever traveling with

17   the Kiernan declaration may need perhaps an order from the

18   Court or some other -- the moment -- the materials are arguably

19   in violation of the Adam Walsh Act and some other provisions,

20   and who's ever traveling with those materials or what

21   happens -- perhaps the government can mail the materials

22   themselves to a designated person at the facility so that one

23   lawyer from our office is not transporting them and that they

24   can be reviewed in person at the facility and then destroyed

25   after that presentation.

```
 1            THE COURT:  Your office is an excellent office, so I
 2   know that you will figure out the best way to do this, and I
 3   don't think that I need to be involved in that decision, but I
 4   do think it's important for him to have the documents before
 5   him.  But I would like to set a date, even if we have to change
 6   the date, since we have the defendant present.
 7            So I'm going to ask Mr. Levario, what would be the
 8   next date available to us.  I think this hearing will take
 9   about two hours.
10            Next time I won't have to go through again, probably,
11   the waiver information that I went through today or the
12   documents that the Court has if you don't file anything more.
13            But what would be the next date?
14            I'm not here for the month of May, so I know it won't
15   be in May, and I'm only here a part of June, so I think it's
16   going to be a date that's far enough away that everybody will
17   have time to be ready for it.
18            THE CLERK:  June 21st.
19            THE COURT:  June 21st.  So unless that conflicts with
20   some date -- government's counsel, not a good date for you?
21            MS. GARNETT:  I will be out of the district.  If we
22   could go maybe just one week later.
23            THE COURT:  Okay.
24            THE CLERK:  June 28th.
25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1                    THE COURT:  June 28th.  That date seem to be good for
 2     everyone or not good for everyone?
 3                    MS. GARNETT:  Not so good.
 4                    THE COURT:  Shall we go to July?  Because I think
 5     we're at the end of June.
 6                    MS. GARNETT:  Government's counsel would prefer
 7     August, early August, but that's --
 8                    THE COURT:  Well, you know, August is not such a good
 9     month for the Court.  So I don't know whether we have any
10     August dates, but why don't we do this.  Why don't I let Mr.
11     Levario give us a date in July, then counsel meet and confer,
12     and if that date is a conflict for you or any witness that you
13     were hoping to have present or anyone that you think needs to
14     be present, then you could agree on a different date.  So if it
15     has to go into August -- and it could be an August date.
16                    What would be the July date?
17                    THE CLERK:  July the 12th.
18                    THE COURT:  July 12th.  So I'm going to set it for
19     July 12th.
20                    At 1:30?
21                    THE CLERK:  Yes, Your Honor.
22                    THE COURT:  At 1:30, with the understanding that
23     counsel will meet and confer, and if that date doesn't work,
24     you'll get another date from Mr. Levario.
25                    And so, Mr. Prowler, we are continuing the matter to
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    July the 12th at 1:30, but it may be necessary to even continue

2    it beyond that to find a date that's good for everyone.

3            You understand?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  The final question I just wanted to

6    ask -- I think I know the answer -- we do not have any of the

7    victims present in the courtroom, am I correct?

8            MS. GARNETT:  No, Your Honor.

9            THE COURT:  So there is no one that needs to be

10   ordered back?

11           MS. GARNETT:  No, Your Honor.

12           May I make a request, Your Honor?

13           THE COURT:  Yes.

14           MS. GARNETT:  Earlier you had indicated that you had

15   not read the initial sentencing position papers, and I would

16   ask if the Court has time to read the initial sentencing

17   position papers of both parties.

18           THE COURT:  It's not a matter of time.  I'll just go

19   back -- I probably read them, I just don't remember them, so I

20   should go back and read them anyway so that I can understand

21   the arguments being made.

22           What I will do is I will ask Mr. Levario to identify

23   everything that I think constitutes the previous filings and to

24   send that out to both sides, so if there is any other document

25   that's not on the list, if you will advise him of that, then

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    I'll review that document as well.

 2           MR. DYBWAD:  And, Your Honor, along those lines, if

 3    the Court could disclose the confidential recommendation letter

 4    to the parties.

 5           THE COURT:  I'll ask Mr. Levario to just show it to

 6    you here while you're in the courtroom.

 7           MR. DYBWAD:  Thank you, Your Honor.

 8           THE COURT:  Okay.

 9           MS. GARNETT:  Thank you, Your Honor.

10           THE COURT:  All right.  Thank you.  The matter is

11    continued to the date and time indicated by the Court.

12           This does complete the hearing today, Mr. Prowler.

13           THE DEFENDANT:  Thank you, Your Honor.

14         (Proceedings concluded.)

15                         --oOo--

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1                          CERTIFICATE

 2

 3       I hereby certify that pursuant to Section 753,

 4  Title 28, United States Code, the foregoing is a true and

 5  correct transcript of the stenographically reported

 6  proceedings held in the above-entitled matter and that the

 7  transcript page format is in conformance with the

 8  regulations of the Judicial Conference of the United States.

 9

10  Date: SEPTEMBER 27, 2010

11

12                    _____

13                    Cindy L. Nirenberg, CSR No. 5059

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA