```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3                          ---

 4        HONORABLE CONSUELO B. MARSHALL, JUDGE PRESIDING

 5                          ---

 6

 7

 8   UNITED STATES OF AMERICA,        )
                                      )
 9                                    )
                                      )
10                  Plaintiff;        )
                                      )No. CR06-391
11          VS                        )
                                      )
12   STEVEN ERIK PROWLER              )
                                      )
13                                    )
                                      )
14                  Defendant.        )
     _____ )
15

16

17            Reporter's Transcript of Proceedings
                          HEARING
                  Los Angeles, California
18             TUESDAY, OCTOBER 20, 2009

19

20

21

22

23            Anne Kielwasser, RPR No. 50901
              Federal Official Court Reporter
24            312 North Spring Street, Room 432
              Los Angeles, California 90012
25              Telephone: (213) 894-2969
                 annekielwasser@aol.com
```

```
 1                      A P P E A R A N C E S

 2

 3      ON BEHALF OF THE PLAINTIFF:

 4

 5      Sherilyn Peace Garnett
        AUSA - Office of US Attorney
 6      CR Division - United States District Court
        312 North Spring Street 12th Floor
 7      Los Angeles, CA 90012
        213-894-2434
 8      Fax:  213-894-6436
        Email:  USACAC.Criminal@usdoj.gov
 9

10

11      ON BEHALF OF THE DEFENDANT:

12

13      Christopher W Dybwad
        Federal Public Defender
14      321 East 2nd Street
        Los Angeles, CA 90012
15      213-894-7545
        Fax:  213-894-0081
16      Email:  ZzCAC_FPD_Document_Receiving@fd.org

17

18

19

20

21

22

23

24

25
```

```
 1   TUESDAY, OCTOBER 20, 2009                    10:30 A.M.

 2                         ~ ~ ~

 3                P R O C E E D I N G S

 4                         ~ ~ ~

 5        COURT CLERK:  Item No. 2.  CR-06-391.  United

 6   States of America versus Stephen Prowler.

 7              Appearances, please.

 8        MS. GARNETT:  Good morning, Your Honor.  Sherilyn

 9   Garnett, Assistant United States Attorney.  Also with me at

10   the counsel table is Special Agent Derek Chen.

11        THE COURT:  Good morning.

12        MR. DYBWAD:  Good morning, Your Honor.  Chris

13   Dybwad on behalf of Mr. Prowler.  Mr. Prowler is present via

14   in VideoLink, but he's in custody in Seagoville, Texas.

15        THE COURT:  Good morning, Mr. Prowler.

16        THE DEFENDANT:  Good morning, Your Honor.

17        THE COURT:  Sir, if at any time you're not able to

18   hear us as we speak, please let us know that in some way, by

19   raising your hand or something of that type, and that will

20   indicate to me that you are not hearing the proceedings, and

21   we'll try to do whatever we can do to make sure that you're

22   able to hear; and of course we need to hear you as well when

23   you address the Court; and so, if we're not able to hear you,

24   we'll also indicate.

25              The matter is here for sentencing this
```

1   morning, and I know that Mr. Levario has communicated with

2   counsel that I am not going to be imposing sentence today.  I

3   know this case has a long history, but I'm new to the case.

4              When I started my review of documents that I

5   need to review in order to make a determination as to what

6   went wrong with the last sentencing, and I'm not clear on

7   that, so I'm going to ask you some questions about it.  I've

8   looked at the mandate from the Circuit; but as you know, it's

9   just a one-page mandate.  I came to some conclusions from

10  reading it but still not sure if it's the right conclusion.

11             I'm aware that counsel were not in agreement

12  as to the calculation of the Guidelines.  I've looked at a

13  chart that I think was prepared by the defense counsel trying

14  to give the Court some guidance as to where you disagree.

15             So, I need to do the research to satisfy

16  myself as to whether either of you arrive in your

17  calculations, so I can make the findings for the record.

18             It would be helpful to the Court if I had a

19  copy of the transcript from the last sentencing proceeding

20  that was not a part of the file that might have helped me

21  understand what the issues were and where I needed to focus

22  my attention in order to resolve them.

23             I do not have the former position papers,

24  apparently, that you've filed for the previous sentencing.

25  Mr. Levario tells me that he can provide to me the

UNITED STATES DISTRICT COURT

1   government's position papers.  Apparently that's something
2   that he can obtain.  But the defense's position papers
3   apparently was filed under seal, but I would have expected
4   the government's would be under seal as well.
5           So I don't know why one seems to be
6   available, one isn't; but I know that these issues are all
7   going to be resolved.  I put this on the record just to
8   explain to you and to explain to the defendant why I am
9   unable to actually impose sentence today.
10          I understand that both sides have agreed that
11  the sentencing may proceed with the defendant remaining at
12  the facility where he presently is located; but participating
13  by way of video, this is the first time I've actually had a
14  criminal proceeding by way of video.
15          One of the questions that I have, though, is:
16  How does defense counsel communicate with the defendant?
17  Since you're here, and the defendant, as I understand, is in
18  another state.
19          I can envision that there may come a time
20  when the defendant may want to consult with defense counsel
21  or defense counsel may want to give some advice to the
22  defendant based upon questions that the Court might ask or
23  other things that could happen in the sentencing hearing; and
24  so, I don't know how you would communicate and still keep
25  that in confidence.

1          It would appear to me that the defense

2    counsel should be at the same place where the defendant is

3    located to be able to communicate.  So, I don't know how you

4    thought that could be accomplished, but I'm sure that's

5    something you're going to explain to me.

6               The other questions that I have, I noticed

7    that the conditions of supervised release, quite a long list

8    of them, and there may be case law that addressed some of

9    these conditions since this sentence was imposed.  I don't

10   know that for sure, but I would ask that counsel review all

11   of the conditions to see whether or not there is any

12   objection to any of them, and if they are supported by case

13   law.

14               There are new cases that come down, you know,

15   all the time from the Ninth Circuit that give us all guidance

16   as to whether a condition is an appropriate one,

17   constitutional or too broad or, for instance, one of those

18   that I noticed is a condition I know that I have not imposed

19   because I don't know what it involves, and it's listed as

20   No. 9 in the report prepared of the confidential letter,

21   prepared by probation, it's the ABEL, A-B-E-L, Testing.  I

22   have no idea what that is.

23               On prior occasions, I think I've called

24   probation to seek some guidance as to what it is and what's

25   involved, and I don't think it's a condition that I have

1    imposed in the past.  So, that may be one that counsel need

2    to find out more about it if you feel that this is an

3    appropriate condition.

4                    The ones that I question whether or not there

5    are any cases that would suggest that they need to be either

6    reworded or not imposed at all are numbers 4, 5, 6 and 7.

7    They all have to do with restricting computer use and search

8    of computers, and it may be that those are fine.  I just

9    simply don't know what the current law is.  The sentence was

10   imposed two years ago.  So, things may have changed within

11   that two-year period.

12                    So, those are the reasons why I don't feel

13   that I can impose sentence today.  I just don't think I have

14   all the information that I need.  So, maybe you can answer

15   some of the questions that I have raised.

16                    First, Defense Counsel, are you satisfied

17   that it's fine for you to be here and the defendant to be in

18   a facility in Texas?  And if there is a need for you to

19   communicate in a confidential way, how could that be

20   accomplished?

21             MR. DYBWAD:  Your Honor, it was my understanding

22   from Mr. Prowler previously that he wanted to proceed by way

23   of VideoLink rather than being re-transported back to the

24   Metropolitan Detention Center.  It is my current

25   understanding that that is the way he wants to proceed.

1            As to the Court's second question, that

2    actually occurred to me while walking into court this

3    morning, perhaps it may be possible to use one of the

4    telephone lines in the Court to contact the room that

5    Mr. Prowler is in, in Seagoville, Texas, should the need

6    arise for a private consultation.

7            As the Court has accurately identified, there

8    is no way to have a private conversation, giving counsel,

9    while Mr. Prowler is on the VideoLink, and I'm standing here.

10   That simply wouldn't be private.  Perhaps it may be possible

11   to use the Court's courtroom deputy's phone and make sure

12   that there is an open phone line in the facility that

13   Mr. Prowler is at.

14            THE COURT:  And I can ask the defendant some

15   questions, but I'll try to just ask those questions of

16   defense counsel rather than speaking directly to the

17   defendant and having to try to figure out how you advise him

18   or communicate; but are you satisfied that proceeding by way

19   of video, the defendant is still going to receive adequate

20   representation of counsel?

21            MR. DYBWAD:  I am, Your Honor.  As the Court

22   noted, this case has a long procedural history.  Mr. Prowler

23   and I have been acquainted for many years.

24            If Mr. Prowler believes that it's

25   inappropriate and says so on the record, then obviously I

1  believe an in-person resentencing is appropriate, but my

2  current understanding is that proceeding by way of VideoLink

3  is the preferred method.

4         THE COURT:  And do you know if he has made the

5  decision to proceed in that way because there were

6  difficulties transporting him to the courthouse, or has he

7  made that decision just for some other reason?

8         MR. DYBWAD:  Your Honor, it's my understanding

9  that in part the decision, it was made for two reasons:  One

10  is, while the case is initially proceeding pretrial,

11  Mr. Prowler was housed in an administrative segregated way at

12  the MDC on 23-hour lockdown, essentially solitary

13  confinement; and it's my understanding that Mr. Prowler does

14  not have the desire to return to those conditions, and, in

15  fact, those are the conditions that Mr. Prowler would need to

16  be in if he were awaiting the resentencing at the

17  Metropolitan Detention Center.

18            It's also my understanding that if he were to

19  move from the Seagoville, Texas to the Metropolitan Detention

20  Center, he would lose his possessions.  In short, he has

21  established a routine and a way of life at Seagoville, Texas

22  which he would lose if he was transported back here to be

23  physically present for the resentencing.

24            And certainly if I've phrased any of that

25  incorrectly, Mr. Prowler could correct me.

```
 1            THE COURT:  I'm not familiar with the facility at

 2   Seagoville, Texas.  I assume that's a Bureau of Prisons

 3   facility.

 4            MR. DYBWAD:  It is, Your Honor.  I believe it's

 5   spelled Seagoville, S-E-A-G-O-V-I-L-L-E.

 6            PROBATION OFFICER:  That's correct, Your Honor.

 7   It's a Bureau of Prisons facility, and it's a minimum

 8   security institution.

 9            THE COURT:  And do either counsel know why the

10   Bureau of Prisons chose to place him there?  Is there some

11   special program that they offer based upon the offense to

12   which he's pled or some other reason?

13            MR. DYBWAD:  Your Honor, I can offer this:  I have

14   had other clients with this type of offense or offenses that

15   fall within this ambit, and a number of them are at

16   Seagoville, Texas.  It leads me to believe that it is a

17   facility that houses in part these types of offenses.

18            THE COURT:  Do either of you know the city to

19   which one would fly in for purposes of visiting this

20   facility?  Because I'm not familiar with it, so I would want

21   more information about what program they have.

22                 I don't have control over where he serves his

23   sentence, but I can make the recommendations; and for a

24   while, I was under the impression that Butner in North

25   Carolina had a specific program for those who were convicted
```

```
 1    of similar offenses.  Now, maybe this facility has a special

 2    program too, or there could be some other reason for it.

 3              But what city is it close to?

 4              PROBATION OFFICER:  Dallas, Your Honor.  Dallas,

 5    Texas.

 6              MR. DYBWAD:  And, Your Honor, it's been my

 7    experience in my office that offenders who might have used to

 8    be at Butner, while some were still sent to Butner,

 9    Seagoville also has some of them.

10              THE COURT:  All right, so, it may be a special

11    program there that I'm just not aware of, and it's a good

12    time for me to become educated about what that program might

13    be.

14              Let me just ask the defendant a few

15    questions.  Mr. Prowler, is it your desire to proceed at your

16    sentencing hearing by way of a video?  You remaining at the

17    facility in Texas, and the rest of us being here in Los

18    Angeles in the courtroom?

19              THE DEFENDANT:  Your Honor, yes, it is.  It's a

20    difficult decision for me.  I always believe in personal

21    face-to-face contacts; but in this case, considering what

22    I've been through presentencing, and all the factors

23    involved, I don't want to do that again, and the transport

24    and stress.  I thought that this would be good.

25              But the only thing I'm insisting on is that I
```

UNITED STATES DISTRICT COURT

1  have adequate chance to converse confidentially with my

2  public defender via telephone just for a short time.

3        I had some trouble reaching him earlier in

4  the week.  He's out a lot, but if I could be assured that I

5  can just chat with him by a phone, at some point in the

6  future, that would be fine.  I do consent to this video.

7        MR. DYBWAD:  And, Your Honor, as I understand the

8  Court's comments this morning, we won't be proceeding with

9  the resentencing today but rather we're simply taking the

10  steps to ensure that when we do return for a resentencing,

11  every mechanism is in place.  And I think it is important

12  that one mechanism be a telephone line in the courtroom as

13  well as the telephone on the other end in Seagoville.

14        THE COURT:  Well, I'll charge you with the

15  responsibility of making sure whatever is needed that would

16  permit you to communicate with Mr. Prowler confidentially,

17  that those arrangements be made; and so, I'm not quite sure

18  what needs to be done on his end, what needs to be done here;

19  but you will have the responsibility for making sure that he

20  gets adequate representation if we proceed in this manner.

21  And I understand that it's his desire to proceed this way as

22  long as there is a method of his communicating with counsel

23  confidentially.

24        You might also discuss with him if there is

25  anything that he wishes the Court to consider in addition to

1   the things that are going to be provided by both government's

2   counsel and defense counsel, that those be available to the

3   Court.

4            Sometimes defendants have letters that

5   they've written themselves, or they have some certificates

6   that they've received that says they've been in custody that

7   would show what they've been doing since they've been there,

8   information that might be provided by the warden or others

9   who are in charge of that facility about programs that he's

10  participating in and what they see as far as a successful

11  participation in those programs.

12           There may be others in the community that he

13  wishes the Court to hear from either by written

14  correspondence or otherwise.  So, I want to make sure that by

15  proceeding this way, we don't have the defendant at some

16  later time petitioning the Court and expressing some concern

17  about ineffective assistance of counsel or things that

18  weren't in accordance with the way he wanted them to be at

19  the sentencing hearing because we have time to make sure that

20  those things are taken care of.

21           One of the questions I wanted to raise with

22  the government, the Court is aware that victims have a right

23  to attend these proceedings and be heard at the sentencing

24  hearing.  I understand from what I have read or believe that

25  the victims in this case are in another country, in Thailand,

1     and at least at the time that the offenses occurred, they

2     were young men; but I don't know what the government has done

3     to make sure that they are aware of their rights, as the

4     Court is required to make sure that they be given that

5     opportunity to be heard if they are present.

6                 So, the government might want to address

7     that.

8               MS. GARNETT:  One moment, Your Honor.

9               MR. DYBWAD:  And, Your Honor, at a later point I

10    can speak to the procedural history and my understanding of

11    the parties' positions and why it is back on remand.  I

12    understand that someone had --

13             THE COURT:  I'm going to ask that question.

14             MS. GARNETT:  Your Honor, as to the victims in

15    this case, one of the issues that we've had all along is

16    because of the nature of the victims being homeless children,

17    we have lost track of them at various times.

18              For example, one of the victims, Jack,

19    immediately after the offense that's charged in Count No. 4,

20    disappeared, so that defendant could not be charged in

21    Thailand with molesting him.

22              We had the same problem when we brought the

23    case here.  We have tracked down the victims at various

24    times, but they had run away or disappeared, and that has

25    been the problem throughout this case.

1          So, we can do our best to track them down

2     again, but many of the victims that we had had disappeared,

3     and so can we can't notify them.

4          THE COURT:  And I'm not asking that government's

5     counsel or the agent do any extra work.  I just want to make

6     sure that the record is clear that the Court is complying

7     with the statute that requires that victims be given an

8     opportunity to be heard at all phases of the proceeding, and

9     of course that does include the sentencing hearing.

10          I assume, based on government's counsel's

11     comments, that there are also not guardians who may have some

12     interest in these proceedings and may want to have a voice?

13          MS. GARNETT:  At the time that the matter was

14     going to trial, we tried to get guardians to, for the

15     children that we could find, and the case agents here and in

16     Thailand were going to serve as those guardians and sort of

17     chaperone them through the judicial process; but since then,

18     since it's gone on appeal, that has fallen by the wayside.

19     So, we do not have guardians; and if they were guardians,

20     that would be the case agent that's here, as well as another

21     person.

22          As far as being aware of the process, at the

23     time that the agents were able to track down some of the

24     victims, they did speak with the victims and get their

25     positions in terms of how they had dealt with the defendant

 1   and things that he could have done instead of the conduct

 2   that he engaged in with them, and those are referenced in the

 3   Declaration of Gary Keirnan that was filed under seal.

 4                   And I want to make sure that the Court, at

 5   some point before we leave here, has or is aware of all the

 6   various papers that the government filed.  They were all

 7   under seal, but we filed a sentencing position as well as the

 8   declaration that includes multiple exhibits from A to U.

 9            THE COURT:  So, what I'll do is, I'll order for

10   both counsel to meet-and-confer with the courtroom clerk,

11   Mr. Levario, when we finish this proceeding.

12                   You can identify for him everything that I

13   need to read in order to clearly understand your respective

14   positions and then make sure that all of those things are

15   available to the Court.

16                   As I said, I have not read any of those

17   things, so I think you can better understand and the

18   defendant can understand, too, why I can't proceed with the

19   sentencing hearing.  I just don't have the knowledge that I

20   need to have in order to make the record and impose the

21   sentence.

22                   The Court, then, assumes that, as the case

23   was being prepared for trial that the victims -- no

24   arrangements were made for the victims to be present to offer

25   testimony?

1          MS. GARNETT:  Arrangements were made, Your Honor.

2    We went through the INLAP process, and, actually, the victims

3    that we could find, we made arrangements to have somebody

4    watch over them and have them transported here to the United

5    States and be watched over while they were here in the United

6    States.  That all took place through the Thai embassy.

7               It's just that after the defendant pled

8    guilty and we were proceeding to sentencing, we lost track of

9    some of the victims; and, you know, I cannot make any

10   representations as to where any of these victims are today.

11         THE COURT:  Okay, and it may be contained in the

12   declarations that I haven't read.  So, the agents may have

13   advised the victims that even though the defendant pled, that

14   it wasn't necessary for them to be present to testify at

15   trial.  They still had a right to make a statement at the

16   sentencing hearing if they so desire, and this may have all

17   been done, and it may be addressed in all the filings that

18   have been made.  I just don't know.

19         MS. GARNETT:  Well, it hasn't been addressed, Your

20   Honor.

21         THE COURT:  Okay.  So, counsel, take a look at the

22   statute and satisfy yourselves.  If there is something more

23   that needs to be done in order to make sure that the Court is

24   complying with the statute that does give victims that right,

25   that we've done everything that we're supposed to do in order

1   to make them aware that they have a right to be heard at the

2   sentencing hearing.

3                 I did want to go next to the question of why

4   the remand, and I'll tell you what I'm reading into the

5   mandate, but I could be wrong; and if so, you'll straighten

6   me out.

7                 It appears that while probation calculated

8   thee guideline sentence and actually addressed the guidelines

9   in the presentence report, identifying all the factors that

10  need to be identified for purposes of that calculation, that

11  the government agreed with probation's calculations, that is

12  the guidelines range, and how probation arrived at that

13  range, but the defense disagreed; that at the sentencing

14  hearing, apparently, the sentencing judge never indicated how

15  the judge calculated the guideline range for purposes then of

16  imposing the sentence considering all the factors that need

17  to be considered for that purpose.

18                 That's what I assumed happened from reading

19  the mandates.  The mandates suggests that there was no way to

20  determine the sentencing judge's calculation of the guideline

21  range.

22                 So, that's what I understand may have

23  occurred, but you'll straighten me out.

24            MR. DYBWAD:  Your Honor, I believe that's

25  essentially correct.  The probation and the government

 1   calculated the guideline range.  I believe the total offense

 2   level is 39.

 3               At the time of sentencing -- and the defense

 4   disputed the number of the enhancements as calculate by the

 5   probation and the government.  At the time of sentencing, as

 6   the sentencing judge pronounced a ten-year sentence and

 7   pronounced that the total offense level was 30 but did not

 8   explicitly articulate what guideline calculations had gotten

 9   to that point.

10               The government subsequently appealed the

11   sentence and identified two provisions that they believe that

12   the judge had either rejected or not adequately taken into

13   account, that specifically the vulnerable victim enhancement

14   which the government believes was not applied at the original

15   sentencing as well as the double counting argument as to the

16   five-level for the pattern of activity, and essentially

17   resurrecting the dismissed counts under the multiple-count

18   grouping rule.

19               And the government has advanced that to the

20   Ninth Circuit, but the district court had improperly rejected

21   both of those.  The defense position on appeal was, in this

22   case, it actually was not possible to tell how the district

23   court had calculated the total offense level at 30.  There

24   were certain permutations that could have applied that were

25   not applied, and therefore it was impossible to tell what was

1    or wasn't included.

2              The Ninth Circuit in remanding issued an

3    unpublished disposition which said -- well, it actually said

4    that the parties agreed that there was no way to tell how

5    total offense level of 30 came about, and it needs to be

6    vacated and remanded for a resentencing.

7              In short, what I think what I've offered the

8    Court is that the Ninth Circuit did not opine on what

9    enhancements apply and don't apply.  It simply said that it

10   was unclear at the original sentencing.

11        THE COURT:  And that's the Court's understanding,

12   and so that's why this would be a new sentencing with the

13   parties addressing the appropriate guidelines, providing the

14   Court with your support, which I assume is in your original

15   position paper; and if that's the case, I don't need new

16   position papers, unless the law is changed in some way.

17              And then the Court would then, as I always

18   do, make a finding as to the appropriate guideline range

19   indicating how I arrived at that figure, what the guideline

20   range is based upon the Court's offense level and the

21   criminal history, and then I go through all the other factors

22   that we need to consider for sentencing purposes.

23              I want to ask one question.  The mandate

24   seems to suggest that the parties agreed that the case had to

25   be remanded.  Am I correct?  That the parties agreed that

 1    this is a case that had to be remanded in order for the

 2    defendant to be sentenced properly.

 3            MR. DYBWAD:  Your Honor, I did not author the

 4    brief for Mr. Prowler.  Certainly it was the defense's

 5    position that because it was unclear, it necessitated a

 6    remand.  As to the government's position re a remand, I

 7    think, presuming they were correct, they were, nonetheless,

 8    need to be remanded.

 9            MS. GARNETT:  The government's position was the

10    same.  It necessitated a remand not just for the calculations

11    of the guidelines, but we also argued in our position paper

12    that the sentencing judge had relied on certain reasoning for

13    the ultimate sentence that wasn't in keeping with the facts

14    of the case, and that was all a part of our argument.

15                And I just also want to point out to the

16    Court that this appeal took place in the midst of, Gall the

17    Supreme Court's decision in Gall and what the correct steps

18    should be taken for reviewing sentences of this nature.  And

19    our position, and what the Ninth Circuit has made clear in

20    ^ Carny (phonetically spelled) or ^ Cargy (phonetically

21    spelled), in 2008, is that you start first with calculating

22    the guidelines and then you move on to a reasonableness

23    determination.

24                Our position is the guidelines were not

25    calculated in a manner where we could determine whether they

1    were correct; and our position is they were not correct based

2    on the ultimate total offense level and so we didn't reach

3    the reasonableness issue.

4              And so when we remanded the case or when the

5    case was remanded, it's for a proper calculation as well as

6    the discussion of the 3553(a) factors.

7              MR. DYBWAD:  And, Your Honor, I believe that

8    comment becomes a little bit more complicated.  The

9    government as, Ms. Garnett just pointed out, the government

10   appeals on the guideline calculation.  They did not appeal on

11   the reasonableness grounds.  As I understand, the

12   government's Reply brief in front of the Ninth Circuit they

13   essentially dropped a footnote saying, Well, we didn't

14   address reasonableness because under Cargy (phonetically

15   spelled) Ms. Garnett is absolutely right, the first set is to

16   accurately calculate the guidelines.

17             In the Ninth Circuit the defense included a

18   press release that the government issued at the time of the

19   original sentencing saying that this was a decade-long

20   sentence, there was a harsh sentence, that it was a strong

21   deterrent.

22             Actually, the Court made one comment, I would

23   want to clarify.  Those parties have, in fact, put in

24   supplemental position papers before this resentencing,

25   certainly those are papers that the Court should have as

1    well, and we'll make sure that the Court gets those.

2              THE COURT:  Well, I will tell you what I have

3    seen.  I do have the defendant's position re resentencing,

4    and the proof of service date is October 13, 2009.

5              And so that's where the Court saw this, what

6    I call the chart on page 3.  It's entitled Parties' Positions

7    Re Advisory Guidelines.  And what it does -- or at least I'm

8    interpreting it to mean that use of a minor, the government

9    agreed with probation that there were a two-point increase

10   for that, but the defense's position was:  It does not apply.

11             "Vulnerable victim," again, four points.  The

12   government and the probation department agree.  The defense

13   says it does not apply.

14             On "multiple count adjustment," five points,

15   both probation and the government agree that that was

16   applicable, and the defense indicated it does not apply, and

17   then the pattern of activity, five points.  Probation,

18   government agreeing; the defense, it does not apply if

19   multiple counts applies.

20             And so what this chart shows is that the

21   government in probation's calculation was 39.  The defense's

22   calculation was 28.  And now the parties advised me that the

23   judge found the offense level to be 30.  Everybody, I think,

24   agreed it was the criminal history category of 1.

25             So, is the judge's sentence within the

1    guideline range of an offense level of 30 and a criminal

2    history category of 1, or was it still outside of that range?

3              MR. DYBWAD:  Yes, it was, Your Honor.

4              THE COURT:  It was inside the range?

5              MR. DYBWAD:  It was inside the range at the

6    high-end.  At offense level 30, criminal history category 1,

7    the advisory guideline range is 97 to 121.  A sentence of 120

8    months was at the top end of that calculated guideline range.

9              THE COURT:  Would it be helpful -- do the parties

10   think it would be helpful to the Court to have the briefs

11   that you filed with the Ninth Circuit?  May be helpful, maybe

12   not.  I just don't know.  I haven't seen them.  Is that

13   something that you think it would be helpful if the Court had

14   the benefit of those briefs, the cases that you cited in

15   those briefs, and for the Court to do its research and its

16   analysis?

17             MR. DYBWAD:  I defer to the government.  The

18   government did also file a supplemental paper where they

19   address, I believe, a lot of the same arguments, correct me

20   if I'm wrong, that are in the Ninth Circuit brief.

21                  I'm sure to the extent the Court would be

22   helped by that, I'll be happy to provide the briefs to the

23   Court.

24             THE COURT:  I just don't know if it's helpful.

25   You prepared those briefs or somebody in your offices did.

1          Would the government's counsel tell me what

2     was the filing date of the paper that you filed, position

3     paper that you filed for purposes of this hearing?

4              MS. GARNETT:  October 13th.  I filed it the same

5     day as defense counsel.

6              THE COURT:  And was it filed under seal?

7              MS. GARNETT:  No, Your Honor.

8              THE COURT:  Okay, nor was the defense's filed

9     under seal.

10             MR. DYBWAD:  The defense's was filed under seal.

11    The government's was not filed under seal.

12             THE COURT:  All right, so, as I said, if you'll

13    talk to Mr. Levario before you leave, we just need to find

14    all these things and put them together.

15             Now, if you think it would be beneficial to

16    the Court to review the briefs that you filed on appeal, I'll

17    review them, but I'll let you make that initial decision.

18             It might be that you have put in your more

19    recent position papers, and there is no position papers,

20    everything that you think the Court needs to know, the new

21    cases that you may rely upon as well as anything that may

22    have changed since the defendant was sentenced two years ago.

23             So, I'm not looking for extra reading.  I

24    just want to make sure that I have everything that I need to

25    do the job that I need to do.

1          Okay, those were the concerns that the Court

2     had.  Are there other things that you wish to place on the

3     record, just so that the Court should consider it, at least,

4     before we have our new sentencing date?

5          Does government have anything more to put on

6     this record?

7          MS. GARNETT:  No, Your Honor.  I just want to

8     point out one thing.  The defense counsel -- just because he

9     raised it today in court -- talked about a press release that

10    was attached to the defense counsel's papers; and obviously

11    the government is always going to be respectful of the

12    Court's decisions.  The government is not going to attack the

13    Court's decisions in the media, but in this we and probation

14    has been very consistent about what we thought was the

15    reasonable and appropriate sentence from the very beginning

16    to the fact that we appealed the sentence to the Ninth

17    Circuit, and we're arguing the same thing today and at the

18    ultimate sentencing.  And so, to point to a press release, I

19    think is just --

20         MR. DYBWAD:  And, Your Honor, I respectfully

21    disagree; and we can get into the press release right now.

22         THE COURT:  No, I don't think we need to.  Let me

23    just advise the parties.  As far as I'm concerned, this is a

24    resentencing, starting all over again.

25         I think it's my job to read the position

1    papers of the parties, the presentence report, to calculate

2    the guidelines based upon the information that each side has

3    provided, including probation; and I agreed the starting

4    place, and it's always the place where I start is the

5    guideline calculation.

6                    If I agree with it, then I would say so; if I

7    disagree with it, I would say so; but then I would make

8    specific findings on the arguments that the parties have

9    made.  So it would be clear from the record for you, for the

10   defendant and anybody reviewing the record that the Court has

11   calculated the guidelines in this particular way and then

12   what the sentence is within that guideline range, and then

13   the Court would go through all of the other factors that the

14   Court needs to consider for a sentencing purposes.

15                   So, the press release, I doubt that it would

16   be helpful to the Court anyway; but, you know, it doesn't

17   preclude you from providing the Court with whatever you think

18   the Court needs, and then both sides, of course, can

19   certainly object to anything that's provided that you think

20   is not relevant, and the Court would be able to rule on that.

21                   So, I don't think that we need to make those

22   findings here.  I start with the premise of knowing very

23   little about the case, just the few things that I was able to

24   find, the presentence report, but I didn't have the benefit

25   of the position papers of the parties.

1              So, that's where we are.

2              MR. DYBWAD:  And, Your Honor, I understand the

3    Court's comments, and I'm not going to argue now.  I do think

4    it's relevant; and at the time of sentencing, I can explain

5    why.

6              THE COURT:  Okay, all right.  Anything else that

7    either side -- any questions that you wish to ask me just so

8    that we can all be prepared for this hearing when we set it

9    next or just anything else that you wish to place on the

10   record?

11             Government have anything?

12             MS. GARNETT:  One moment, Your Honor.

13             (Discussion off the record.)

14             MS. GARNETT:  No, Your Honor.

15             THE COURT:  Defense, anything?

16             MR. DYBWAD:  Your Honor, the only thing I'd note

17   is that, given the Court's comments about some of the

18   supervised release conditions, after taking a look, there may

19   be an additional defense filing regarding those and also

20   given the Court's comments about making sure that any

21   information about Mr. Prowler's progress while in custody is

22   before the Court, that may also be attached to an additional

23   filing.  I just want to alert the Court that that is a

24   possibility.

25             THE COURT:  Why don't I just order that if either

1    side decides to supplement the position papers that are

2    presently before the Court, and that includes your most

3    recent ones, that those additional filings to be filed with

4    the Court no later than two weeks prior to the sentencing

5    hearing.

6               I said two weeks because then that gives each

7    of you an opportunity to object to anything that the other

8    may have filed or to be able to advise the Court as to why

9    you think it's not correct or misleading or whatever your

10   position might be.

11              Then I think we remain then to find a new

12   date for a sentencing; and Mr. Levario and I did talk about a

13   date.  I don't know if it works, but I'll let him tell us.

14              COURT CLERK:  Your Honor, we have a couple of

15   dates that may be available:  November 23rd or the 30th.

16              THE COURT:  So, November 23rd is probably a better

17   date than the 30th, correct?

18              COURT CLERK:  Correct.

19              THE COURT:  Just in terms of things we have on

20   calendar.

21              So, I'll tell you why there are two suggested

22   dates.  I will be starting a trial on the 3rd of November.

23   Based upon the time estimate, I believe that we should be

24   finished by November 3rd, but you know how that goes.  So,

25   I'm usually wrong on the estimates.  I'm always thinking

```
1    we're going to finish sooner than we do.

2                    So, we could give you the 23rd.  If for some

3    reason it appears to the Court that we are not going to be

4    finished with the trial and therefore able to sentence in

5    this case on the 23rd, I will know that ahead of the 23rd.

6    So, Mr. Levario could just simply give you that information.

7                    The other date, the 30th, Mr. Levario

8    indicated to me that's a very heavy calendar date; and so,

9    this sentencing will take some time.  So, I don't want to put

10   it on a day when we're all feeling that we are overwhelmed;

11   but if we set it for the 30th, it would be the afternoon of

12   the 30th.  Both days are Mondays, I believe.

13              COURT CLERK:  Correct, Your Honor.

14              THE COURT:  So, it would be the afternoon of the

15   30th.

16                    And do we have anything on calendar on the

17   afternoon of the 30th.

18              COURT CLERK:  We do, but I understand there may be

19   a request to continue those matters.

20              THE COURT:  So, I'm prepared to offer you the

21   23rd, indicating that if it appears that the Court is not

22   going to be available that date because we're still in trial,

23   we'll give you advanced notice and then would continue it

24   probably to the 30th, or we can set it for the 30th now.

25                    So, either counsel have any preference for
```

```
 1   either of those dates?  They're both Mondays.
 2               MS. GARNETT:  November 23rd is fine with the
 3   government counsel.
 4               THE COURT:  How about defense?
 5               MR. DYBWAD:  Your Honor, November 23rd is fine
 6   with defense counsel as well.  I have a sentencing at 9:00
 7   a.m. that day as well as in the afternoon.  Was the Court
 8   contemplating an 11:00 o'clock as well?
 9               THE COURT:  I will ask Mr. Levario.
10               On the 23rd what would be the time?
11               COURT CLERK:  1:00 o'clock.
12               THE COURT:  1:00 o'clock on the 23rd would be the
13   time.
14               And what's our time difference between here
15   and the community in which the defendant is?  Is it two
16   hours?
17               MS. GARNETT:  I believe it's three hours, isn't
18   it?
19               THE COURT:  And of course we're going to change
20   time soon, so it may differ.
21               The only reason I raise that question -- if
22   we set it for the afternoon, I don't know what's going on at
23   the facility in the afternoon.  This is something defense
24   counsel could find out, whether based upon the difference in
25   time, it would affect any programs, meals, anything else that
```

1   may be occurring in the institution; but I'll leave you to

2   assist the Court in making that determination.

3               So, if you feel that is not a good time, just

4   based upon the difference in time, then we could change that

5   time, but then we would have to look at what you're doing as

6   well.  So, I'll let you just work with Mr. Levario.  Right

7   now, November 23rd at 1:00 o'clock.

8               If I could just ask the defendant:  Sir, do

9   you know the time difference between California and Texas,

10  the time that we're talking about, in November?

11              THE DEFENDANT:  Yes, Your Honor.  It's two hours.

12  We are two hours ahead of you.  So, noontime -- what is

13  noontime in Los Angeles it's 2:00 o'clock here.

14              THE COURT:  So, if we set the sentencing hearing

15  to commence at 3:00 o'clock, I'm sorry, at 1:00 o'clock our

16  time, which will be 3:00 o'clock your time, and if it took

17  approximately an hour to do that, is there anything going on,

18  of which you're aware at the institution that would conflict

19  with that schedule?

20              THE DEFENDANT:  To the best of my knowledge, there

21  is no conflict.  My case manager is with me right now, and he

22  indicated that there would be no problem.

23              THE COURT:  Okay.  All right, so, the matter is

24  continued to November 23rd at 1:00 o'clock; and then if any

25  additional supplemental filing is to be filed, no later than

1   two weeks prior to that date.

2                   Anything else that we need to put on the

3   record?

4           MR. DYBWAD:  Your Honor, and I'm sure this has

5   been done.  I know the Court issued a writ, and I just wanted

6   to make clear that the writ was cancelled and that there is

7   no accidental transporting of Mr. Prowler.

8           MS. GARNETT:  I informed the marshal person who

9   handles transportation that I would give her a call after

10  this hearing to let her know whether we would need the writ,

11  and I can tell her that we've made arrangements for video

12  conferencing.

13          THE COURT:  All right, so, that's only contingent

14  on defense counsel satisfying yourself that there will be a

15  way to communicate in confidence with your client to satisfy

16  the requirements of affective assistance; and if there is any

17  problem and a decision is made, that defendant needs to be

18  transported here, then that information should be provided to

19  those who would be responsible for getting those arrangements

20  made.

21                   So, if we need another writ or the marshals

22  need to know, at this point it appears that it is

23  Mr. Prowler's position that he'd like to remain at the

24  facility, have the sentencing hearing by video as long as he

25  can be assured that there is a way to communicate with

```
1    counsel in confidence.

2                    That is your position, Mr. Prowler?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  All right, thank you.

5              MR. DYBWAD:  Thank you, Your Honor.

6              THE COURT:  Okay, thank you.

7                         ~ ~ ~

8              (Proceedings concluded.)

9                         ~ ~ ~

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    C E R T I F I C A T E

 2    I hereby certify that the foregoing is a true and correct

 3    transcript of the stenographically recorded proceedings in

 4    the above matter.

 5    Fees charged for this transcript, less any circuit fee

 6    reduction and/or deposit, are in conformance with the

 7    regulations of the judicial conference of the united states.

 8

 9

10    _____        9/10/2010

11    Anne Kielwasser, CSR, RPR           _____
      Official Court Reporter             Date

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

**1**

**1** [3] - 23:24, 24:2, 24:6
**10:30** [1] - 3:1
**11:00** [1] - 31:8
**120** [1] - 24:7
**121** [1] - 24:7
**12th** [1] - 2:6
**13** [1] - 23:4
**13th** [1] - 25:4
**1:00** [5] - 31:11, 31:12, 32:7, 32:15, 32:24

**2**

**2** [1] - 3:5
**20** [2] - 1:18, 3:1
**2008** [1] - 21:21
**2009** [3] - 1:18, 3:1, 23:4
**213** [1] - 1:25
**213-894-0081** [1] - 2:15
**213-894-2434** [1] - 2:7
**213-894-6436** [1] - 2:8
**213-894-7545** [1] - 2:14
**23-hour** [1] - 9:12
**23rd** [12] - 29:15, 29:16, 30:2, 30:5, 30:21, 31:2, 31:5, 31:10, 31:12, 32:7, 32:24
**28** [1] - 23:22
**2:00** [1] - 32:13
**2nd** [1] - 2:13

**3**

**3** [1] - 23:6
**30** [6] - 19:7, 19:23, 20:5, 23:23, 24:1, 24:6
**30th** [9] - 29:15, 29:17, 30:7, 30:11, 30:12, 30:15, 30:17, 30:24
**312** [2] - 1:24, 2:6
**321** [1] - 2:13
**3553(a** [1] - 22:6
**39** [2] - 19:2, 23:21
**3:00** [2] - 32:15, 32:16
**3rd** [2] - 29:22, 29:24

**4**

**4** [2] - 7:6, 14:19

**432** [1] - 1:24

**5**

**5** [1] - 7:6
**50901** [1] - 1:23

**6**

**6** [1] - 7:6

**7**

**7** [1] - 7:6

**8**

**894-2969** [1] - 1:25

**9**

**9** [1] - 6:20
**9/10/2010** [1] - 35:10
**90012** [3] - 1:24, 2:7, 2:14
**97** [1] - 24:7
**9:00** [1] - 31:6

**A**

**A.M** [1] - 3:1
**a.m** [1] - 31:7
**ABEL** [2] - 6:21
**able** [9] - 3:17, 3:22, 3:23, 6:3, 15:23, 27:20, 27:23, 29:8, 30:4
**absolutely** [1] - 22:15
**accidental** [1] - 33:7
**accomplished** [2] - 6:4, 7:20
**accordance** [1] - 13:18
**account** [1] - 19:13
**accurately** [2] - 8:7, 22:16
**acquainted** [1] - 8:23
**activity** [2] - 19:16, 23:17
**addition** [1] - 12:25
**additional** [4] - 28:19, 28:22, 29:3, 32:25
**address** [4] - 3:23, 14:6, 22:14, 24:19
**addressed** [2] - 6:8, 17:17, 17:19, 18:8

**addressing** [1] - 20:13
**adequate** [3] - 8:19, 12:1, 12:20
**adequately** [1] - 19:12
**adjustment** [1] - 23:14
**administrative** [1] - 9:11
**advanced** [2] - 19:19, 30:23
**advice** [1] - 5:21
**advise** [3] - 8:17, 26:23, 29:8
**advised** [2] - 17:13, 23:22
**Advisory** [1] - 23:7
**advisory** [1] - 24:7
**affect** [1] - 31:25
**affective** [1] - 33:16
**afternoon** [6] - 30:11, 30:14, 30:17, 31:7, 31:22, 31:23
**agent** [2] - 15:5, 15:20
**Agent** [1] - 3:10
**agents** [3] - 15:15, 15:23, 17:12
**ago** [2] - 7:10, 25:22
**agree** [3] - 23:12, 23:15, 27:6
**agreed** [8] - 5:10, 18:11, 20:4, 20:24, 20:25, 23:9, 23:24, 27:3
**agreeing** [1] - 23:18
**agreement** [1] - 4:11
**ahead** [2] - 30:5, 32:12
**alert** [1] - 28:23
**ambit** [1] - 10:15
**America** [1] - 3:6
**AMERICA** [1] - 1:8
**analysis** [1] - 24:16
**Angeles** [6] - 1:17, 1:24, 2:7, 2:14, 11:18, 32:13
**Anne** [2] - 1:23, 35:11
**anniekielwasser@aol.com** [1] - 1:25
**answer** [1] - 7:14
**anyway** [1] - 27:16
**appeal** [5] - 15:18, 19:21, 21:16, 22:10, 25:16
**appealed** [2] - 19:10, 26:16
**appeals** [1] - 22:10
**appear** [1] - 6:1
**appearances** [1] - 3:7
**applicable** [1] - 23:16
**applied** [3] - 19:14, 19:24, 19:25

**applies** [1] - 23:19
**apply** [6] - 20:9, 23:10, 23:13, 23:16, 23:18
**appropriate** [6] - 6:16, 7:3, 9:1, 20:13, 20:18, 26:15
**argue** [1] - 28:3
**argued** [1] - 21:11
**arguing** [1] - 26:17
**argument** [2] - 19:15, 21:14
**arguments** [2] - 24:19, 27:8
**arise** [1] - 8:6
**arrangements** [6] - 12:17, 16:24, 17:1, 17:3, 33:11, 33:19
**arrive** [1] - 4:16
**arrived** [2] - 18:12, 20:19
**articulate** [1] - 19:8
**assist** [1] - 32:2
**assistance** [2] - 13:17, 33:16
**Assistant** [1] - 3:9
**assume** [3] - 10:2, 15:10, 20:14
**assumed** [1] - 18:18
**assumes** [1] - 16:22
**assured** [2] - 12:4, 33:25
**attached** [2] - 26:10, 28:22
**attack** [1] - 26:12
**attend** [1] - 13:23
**attention** [1] - 4:22
**Attorney** [2] - 2:5, 3:9
**AUSA** [1] - 2:5
**author** [1] - 21:3
**available** [5] - 5:6, 13:2, 16:15, 29:15, 30:22
**awaiting** [1] - 9:16
**aware** [8] - 4:11, 11:11, 13:22, 14:3, 15:22, 16:5, 18:1, 32:18

**B**

**based** [9] - 5:22, 10:11, 15:10, 20:20, 22:1, 27:2, 29:23, 31:24, 32:4
**become** [1] - 11:12
**becomes** [1] - 22:8
**beginning** [1] - 26:15
**BEHALF** [2] - 2:3, 2:11
**behalf** [1] - 3:13

**believes** [2] - 8:24, 19:14
**beneficial** [1] - 25:15
**benefit** [2] - 24:14, 27:24
**best** [2] - 15:1, 32:20
**better** [2] - 16:17, 29:16
**between** [2] - 31:14, 32:9
**bit** [1] - 22:8
**brief** [3] - 21:4, 22:12, 24:20
**briefs** [6] - 24:10, 24:14, 24:15, 24:22, 24:25, 25:16
**broad** [1] - 6:17
**brought** [1] - 14:22
**Bureau** [3] - 10:2, 10:7, 10:10
**Butner** [2] - 10:24, 11:8

**C**

**CA** [2] - 2:7, 2:14
**calculate** [3] - 19:4, 22:16, 27:1
**calculated** [7] - 18:7, 18:15, 19:1, 19:23, 21:25, 24:8, 27:11
**calculating** [1] - 21:21
**calculation** [8] - 4:12, 18:10, 18:20, 22:5, 22:10, 23:21, 23:22, 27:5
**calculations** [4] - 4:17, 18:11, 19:8, 21:10
**calendar** [3] - 29:20, 30:8, 30:16
**CALIFORNIA** [1] - 1:2
**California** [3] - 1:17, 1:24, 32:9
**cancelled** [1] - 33:6
**cannot** [1] - 17:9
**care** [1] - 13:20
**Cargy** [2] - 21:20, 22:14
**Carny** [1] - 21:20
**Carolina** [1] - 10:25
**case** [24] - 4:3, 6:8, 6:12, 8:22, 9:10, 11:21, 13:25, 14:15, 14:23, 14:25, 15:15, 15:20, 16:22, 19:22, 20:15, 20:24, 21:1, 21:14, 22:4, 22:5, 27:23, 30:5, 32:21

**cases** [4] - 6:14, 7:5, 24:14, 25:21
**category** [3] - 23:24, 24:2, 24:6
**Center** [3] - 7:24, 9:17, 9:20
**CENTRAL** [1] - 1:2
**certain** [2] - 19:24, 21:12
**certainly** [4] - 9:24, 21:4, 22:25, 27:19
**certificates** [1] - 13:5
**certify** [1] - 35:2
**chance** [1] - 12:1
**change** [2] - 31:19, 32:4
**changed** [3] - 7:10, 20:16, 25:22
**chaperone** [1] - 15:17
**charge** [2] - 12:14, 13:9
**charged** [3] - 14:19, 14:20, 35:5
**chart** [3] - 4:13, 23:6, 23:20
**chat** [1] - 12:5
**Chen** [1] - 3:10
**children** [2] - 14:16, 15:15
**chose** [1] - 10:10
**Chris** [1] - 3:12
**Christopher** [1] - 2:12
**circuit** [1] - 35:5
**Circuit** [11] - 4:8, 6:15, 19:20, 20:2, 20:8, 21:19, 22:12, 22:17, 24:11, 24:20, 26:17
**cited** [1] - 24:14
**city** [2] - 10:18, 11:3
**clarify** [1] - 22:23
**clear** [5] - 4:6, 15:6, 21:19, 27:9, 33:6
**clearly** [1] - 16:13
**CLERK** [6] - 3:5, 29:14, 29:18, 30:13, 30:18, 31:11
**clerk** [1] - 16:10
**client** [1] - 33:15
**clients** [1] - 10:14
**close** [1] - 11:3
**commence** [1] - 32:15
**comment** [2] - 22:8, 22:22
**comments** [5] - 12:8, 15:11, 28:3, 28:17, 28:20
**communicate** [8] - 5:16, 5:24, 6:3, 7:19, 8:18, 12:16, 33:15, 33:25

**communicated** [1] - 4:1
**communicating** [1] - 12:22
**community** [2] - 13:12, 31:15
**complicated** [1] - 22:8
**complying** [2] - 15:6, 17:24
**computer** [1] - 7:7
**computers** [1] - 7:8
**concern** [1] - 13:16
**concerned** [1] - 26:23
**concerns** [1] - 26:1
**concluded** [1] - 34:8
**conclusion** [1] - 4:10
**conclusions** [1] - 4:9
**condition** [4] - 6:16, 6:18, 6:25, 7:3
**conditions** [6] - 6:7, 6:9, 6:11, 9:14, 9:15, 28:18
**conduct** [1] - 16:1
**confer** [1] - 16:10
**conference** [1] - 35:7
**conferencing** [1] - 33:12
**confidence** [3] - 5:25, 33:15, 34:1
**confidential** [2] - 6:20, 7:19
**confidentially** [3] - 12:1, 12:16, 12:23
**confinement** [1] - 9:13
**conflict** [2] - 32:18, 32:21
**conformance** [1] - 35:6
**consent** [1] - 12:6
**consider** [4] - 12:25, 20:22, 26:3, 27:14
**considered** [1] - 18:17
**considering** [2] - 11:21, 18:16
**consistent** [1] - 26:14
**constitutional** [1] - 6:17
**CONSUELO** [1] - 1:4
**consult** [1] - 5:20
**consultation** [1] - 8:6
**contact** [1] - 8:4
**contacts** [1] - 11:21
**contained** [1] - 17:11
**contemplating** [1] - 31:8
**contingent** [1] - 33:13
**continue** [2] - 30:19, 30:23
**continued** [1] - 32:24

**control** [1] - 10:22
**conversation** [1] - 8:8
**converse** [1] - 12:1
**convicted** [1] - 10:25
**copy** [1] - 4:19
**correct** [14] - 9:25, 10:6, 18:25, 20:25, 21:7, 21:17, 22:1, 24:19, 29:9, 29:17, 29:18, 30:13, 35:2
**correspondence** [1] - 13:14
**counsel** [30] - 3:10, 4:2, 4:11, 4:13, 5:16, 5:20, 5:21, 6:2, 6:10, 7:1, 8:8, 8:16, 8:20, 10:9, 12:22, 13:2, 13:17, 15:5, 16:10, 17:21, 25:1, 25:5, 26:8, 30:25, 31:3, 31:6, 31:24, 33:14, 34:1
**Counsel** [1] - 7:16
**counsel's** [2] - 15:10, 26:10
**count** [2] - 19:17, 23:14
**Count** [1] - 14:19
**counting** [1] - 19:15
**country** [1] - 13:25
**counts** [2] - 19:17, 23:19
**couple** [1] - 29:14
**course** [4] - 3:22, 15:9, 27:18, 31:19
**COURT** [47] - 1:1, 3:5, 3:11, 3:15, 3:17, 8:14, 9:4, 10:1, 10:9, 10:18, 11:10, 12:14, 14:13, 15:4, 16:9, 17:11, 17:21, 20:11, 23:2, 24:4, 24:9, 24:24, 25:6, 25:8, 25:12, 26:22, 28:6, 28:15, 28:25, 29:14, 29:16, 29:18, 29:19, 30:13, 30:14, 30:18, 30:20, 31:4, 31:9, 31:11, 31:12, 31:19, 32:14, 32:23, 33:13, 34:4, 34:6
**court** [4] - 8:2, 19:20, 19:23, 26:9
**Court** [55] - 1:23, 2:6, 3:23, 4:14, 4:18, 5:22, 8:4, 8:7, 8:21, 12:25, 13:3, 13:13, 13:16, 13:22, 14:4, 15:6, 16:4, 16:15, 16:22, 17:23, 20:8,

20:14, 20:17, 21:16, 22:22, 22:25, 23:1, 23:5, 24:10, 24:13, 24:15, 24:21, 24:23, 25:16, 25:20, 26:1, 26:3, 27:10, 27:13, 27:14, 27:16, 27:17, 27:18, 27:20, 28:22, 28:23, 29:2, 29:4, 29:8, 30:3, 30:21, 31:7, 32:2, 33:5, 35:11
**Court's** [1] - 8:1, 8:11, 12:8, 20:11, 20:20, 21:17, 26:12, 26:13, 28:3, 28:17, 28:20
**courthouse** [1] - 9:6
**courtroom** [4] - 8:11, 11:18, 12:12, 16:10
**CR** [1] - 2:6
**CR-06-391** [1] - 3:5
**CR06-391** [1] - 1:10
**criminal** [5] - 5:14, 20:21, 23:24, 24:1, 24:6
**CSR** [1] - 35:11
**current** [3] - 7:9, 7:24, 9:2
**custody** [3] - 3:14, 13:6, 28:21

**D**

**Dallas** [2] - 11:4
**Date** [1] - 35:11
**date** [10] - 23:4, 25:2, 26:4, 29:12, 29:13, 29:17, 30:7, 30:8, 30:22, 33:1
**dates** [3] - 29:15, 29:22, 31:1
**days** [1] - 30:12
**dealt** [1] - 15:25
**decade** [1] - 22:19
**decade-long** [1] - 22:19
**decides** [1] - 29:1
**decision** [7] - 9:5, 9:7, 9:9, 11:20, 21:17, 25:17, 33:17
**decisions** [2] - 26:12, 26:13
**Declaration** [1] - 16:3
**declaration** [1] - 16:8
**declarations** [1] - 17:12
**DEFENDANT** [6] - 2:11, 3:16, 11:19,

32:11, 32:20, 34:3
**defendant** [25] - 1:14, 5:8, 5:11, 5:16, 5:17, 5:20, 5:22, 6:2, 7:17, 8:14, 8:17, 8:19, 11:14, 13:15, 14:20, 15:25, 16:18, 17:7, 17:13, 21:2, 25:22, 27:10, 31:15, 32:8, 33:17
**defendant's** [1] - 23:3
**defendants** [1] - 13:4
**defender** [1] - 12:2
**Defender** [1] - 2:13
**Defense** [1] - 7:16
**defense** [23] - 4:13, 5:16, 5:20, 5:21, 6:1, 8:16, 13:2, 18:13, 19:3, 19:21, 22:17, 23:12, 23:16, 23:18, 25:5, 26:8, 26:10, 28:15, 28:19, 31:4, 31:6, 31:23, 33:14
**defense's** [6] - 5:2, 21:4, 23:10, 23:21, 25:8, 25:10
**defer** [1] - 24:17
**department** [1] - 23:12
**deposit** [1] - 35:6
**deputy's** [1] - 8:11
**Derek** [1] - 3:10
**desire** [4] - 9:14, 11:15, 12:21, 17:16
**Detention** [3] - 7:24, 9:17, 9:19
**determination** [3] - 4:5, 21:23, 32:2
**determine** [2] - 18:20, 21:25
**deterrent** [1] - 22:21
**differ** [1] - 31:20
**difference** [4] - 31:14, 31:24, 32:4, 32:9
**difficult** [1] - 11:20
**difficulties** [1] - 9:6
**directly** [1] - 8:16
**disagree** [3] - 4:14, 26:21, 27:7
**disagreed** [1] - 18:13
**disappeared** [3] - 14:20, 14:24, 15:2
**discuss** [1] - 12:24
**Discussion** [1] - 28:13
**discussion** [1] - 22:6
**dismissed** [1] - 19:17
**disposition** [1] - 20:3
**disputed** [1] - 19:4
**District** [1] - 2:6
**DISTRICT** [2] - 1:1, 1:2
**district** [2] - 19:20,

19:22
**Division** [1] - 2:6
**documents** [1] - 4:4
**done** [8] - 12:18, 14:2, 16:1, 17:17, 17:23, 17:25, 33:5
**double** [1] - 19:15
**doubt** [1] - 27:15
**down** [4] - 6:14, 14:23, 15:1, 15:23
**dropped** [1] - 22:13
**Dybwad** [2] - 2:12, 3:13
**DYBWAD** [22] - 3:12, 7:21, 8:21, 9:8, 10:4, 10:13, 11:6, 12:7, 14:9, 18:24, 21:3, 22:7, 24:3, 24:5, 24:17, 25:10, 26:20, 28:2, 28:16, 31:5, 33:4, 34:5

## E

**East** [1] - 2:13
**educated** [1] - 11:12
**either** [10] - 4:16, 7:5, 10:9, 10:18, 13:13, 19:12, 28:7, 28:25, 30:25, 31:1
**Email** [2] - 2:8, 2:15
**embassy** [1] - 17:6
**end** [4] - 12:13, 12:18, 24:6, 24:8
**engaged** [1] - 16:2
**enhancement** [1] - 19:13
**enhancements** [2] - 19:4, 20:9
**ensure** [1] - 12:10
**entitled** [1] - 23:6
**envision** [1] - 5:19
**ERIK** [1] - 1:12
**essentially** [4] - 9:12, 18:25, 19:16, 22:13
**established** [1] - 9:21
**estimate** [1] - 29:23
**estimates** [1] - 29:25
**example** [1] - 14:18
**exhibits** [1] - 16:8
**expected** [1] - 5:3
**experience** [1] - 11:7
**explain** [4] - 5:8, 6:5, 28:4
**explicitly** [1] - 19:8
**expressing** [1] - 13:16
**extent** [1] - 24:21
**extra** [2] - 15:5, 25:23

## F

**face** [2] - 11:21
**face-to-face** [1] - 11:21
**facility** [13] - 5:12, 7:18, 8:12, 10:1, 10:3, 10:7, 10:17, 10:20, 11:1, 11:17, 13:9, 31:23, 33:24
**fact** [3] - 9:15, 22:23, 26:16
**factors** [6] - 11:22, 18:9, 18:16, 20:21, 22:6, 27:13
**facts** [1] - 21:13
**fall** [1] - 10:15
**fallen** [1] - 15:18
**familiar** [2] - 10:1, 10:20
**far** [3] - 13:10, 15:22, 26:23
**Fax** [2] - 2:8, 2:15
**Federal** [2] - 1:23, 2:13
**fee** [1] - 35:5
**fees** [1] - 35:5
**few** [2] - 11:14, 27:23
**figure** [2] - 8:17, 20:19
**file** [2] - 4:20, 24:18
**filed** [17] - 4:24, 5:3, 16:3, 16:6, 16:7, 24:11, 25:2, 25:3, 25:4, 25:6, 25:8, 25:10, 25:11, 25:16, 29:3, 29:8, 32:25
**filing** [4] - 25:2, 28:19, 28:23, 32:25
**filings** [2] - 17:17, 29:3
**findings** [3] - 4:17, 27:8, 27:22
**fine** [5] - 7:8, 7:17, 12:6, 31:2, 31:5
**finish** [2] - 16:11, 30:1
**finished** [2] - 29:24, 30:4
**first** [4] - 5:13, 7:16, 21:21, 22:15
**five** [3] - 19:16, 23:14, 23:17
**five-level** [1] - 19:16
**Floor** [1] - 2:6
**fly** [1] - 10:19
**focus** [1] - 4:21
**footnote** [1] - 22:13
**foregoing** [1] - 35:2
**former** [1] - 4:23
**four** [1] - 23:11

**front** [1] - 22:12
**future** [1] - 12:6

## G

**Gall** [2] - 21:16, 21:17
**Garnett** [4] - 2:5, 3:9, 22:9, 22:15
**GARNETT** [15] - 3:8, 14:8, 14:14, 15:13, 17:1, 17:19, 21:9, 25:4, 25:7, 26:7, 28:12, 28:14, 31:2, 31:17, 33:8
**Gary** [1] - 16:3
**given** [4] - 14:4, 15:7, 28:17, 28:20
**government** [25] - 13:22, 14:2, 14:6, 16:6, 18:11, 18:25, 19:5, 19:10, 19:14, 19:19, 22:9, 23:8, 23:12, 23:15, 23:18, 23:21, 24:17, 24:18, 26:5, 26:11, 26:12, 28:11, 31:3
**government's** [10] - 5:1, 5:4, 13:1, 15:4, 15:10, 21:6, 21:9, 22:12, 25:1, 25:11
**grounds** [1] - 22:11
**grouping** [1] - 19:18
**guardians** [5] - 15:11, 15:14, 15:16, 15:19
**guidance** [3] - 4:14, 6:15, 6:24
**guideline** [13] - 18:8, 18:15, 18:20, 19:1, 19:8, 20:18, 20:19, 22:10, 24:1, 24:7, 24:8, 27:5, 27:12
**Guidelines** [2] - 4:12, 23:7
**guidelines** [9] - 18:8, 18:12, 20:13, 21:11, 21:22, 21:24, 22:16, 27:2, 27:11
**guilty** [1] - 17:8

## H

**hand** [1] - 3:19
**handles** [1] - 33:9
**happy** [1] - 24:22
**harsh** [1] - 22:20
**hear** [5] - 3:18, 3:22, 3:23, 13:13
**heard** [4] - 13:23, 14:5, 15:8, 18:1

**HEARING** [1] - 1:17
**hearing** [16] - 3:20, 5:23, 11:16, 13:19, 13:24, 15:9, 16:19, 17:16, 18:2, 18:14, 25:3, 28:8, 29:5, 32:14, 33:10, 33:24
**heavy** [1] - 30:8
**helped** [4] - 4:20, 24:22
**helpful** [7] - 4:18, 24:9, 24:10, 24:11, 24:13, 24:24, 27:16
**hereby** [1] - 35:2
**high** [1] - 24:6
**high-end** [1] - 24:6
**history** [7] - 4:3, 8:22, 14:10, 20:21, 23:24, 24:2, 24:6
**homeless** [1] - 14:16
**Honor** [36] - 3:8, 3:12, 3:16, 7:21, 8:21, 9:8, 10:4, 10:6, 10:13, 11:4, 11:6, 11:19, 12:7, 14:8, 14:9, 14:14, 17:1, 17:20, 18:24, 21:3, 22:7, 24:3, 25:7, 26:7, 26:20, 28:2, 28:12, 28:14, 28:16, 29:14, 30:13, 31:5, 32:11, 33:4, 34:3, 34:5
**HONORABLE** [1] - 1:4
**hour** [1] - 32:17
**hours** [4] - 31:16, 31:17, 32:11, 32:12
**housed** [1] - 9:11
**houses** [1] - 10:17

## I

**idea** [1] - 6:22
**identified** [3] - 8:7, 18:10, 19:11
**identify** [1] - 16:12
**identifying** [1] - 18:9
**immediately** [1] - 14:19
**important** [1] - 12:11
**impose** [3] - 5:9, 7:13, 16:20
**imposed** [5] - 6:9, 6:18, 7:1, 7:6, 7:10
**imposing** [2] - 4:2, 18:16
**impossible** [1] - 19:25
**impression** [1] - 10:24
**improperly** [1] - 19:20
**in-person** [1] - 9:1

**inappropriate** [1] - 8:25
**include** [1] - 15:9
**included** [2] - 20:1, 22:17
**includes** [2] - 16:8, 29:2
**including** [1] - 27:3
**incorrectly** [1] - 9:25
**increase** [1] - 23:9
**indicate** [2] - 3:20, 3:24
**indicated** [4] - 18:14, 23:16, 30:8, 32:22
**indicating** [2] - 20:19, 30:21
**ineffective** [1] - 13:17
**information** [7] - 7:14, 10:21, 13:8, 27:2, 28:21, 30:6, 33:18
**informed** [1] - 33:8
**initial** [1] - 25:17
**INLAP** [1] - 17:2
**inside** [2] - 24:4, 24:5
**insisting** [1] - 11:25
**instance** [1] - 6:17
**instead** [1] - 16:1
**institution** [3] - 10:8, 32:1, 32:18
**interest** [1] - 15:12
**interpreting** [1] - 23:8
**involved** [2] - 6:25, 11:23
**involves** [1] - 6:19
**issue** [1] - 22:3
**issued** [3] - 20:2, 22:18, 33:5
**issues** [3] - 4:21, 5:6, 14:15
**Item** [1] - 3:5

## J

**Jack** [1] - 14:18
**job** [2] - 25:25, 26:25
**judge** [6] - 18:14, 18:15, 19:6, 19:12, 21:12, 23:23
**JUDGE** [1] - 1:4
**judge's** [2] - 18:20, 23:25
**judicial** [2] - 15:17, 35:7

## K

**keep** [1] - 5:24
**keeping** [1] - 21:13

Keirnan [1] - 16:3
Kielwasser [2] - 1:23, 35:11
knowing [1] - 27:22
knowledge [2] - 16:19, 32:20

## L

last [2] - 4:6, 4:19
law [4] - 6:8, 6:13, 7:9, 20:16
leads [1] - 10:16
least [3] - 14:1, 23:7, 26:3
leave [3] - 16:5, 25:13, 32:1
less [1] - 35:5
letter [1] - 6:20
letters [1] - 13:4
Levario [9] - 4:1, 4:25, 16:11, 25:13, 29:12, 30:6, 30:7, 31:9, 32:6
level [10] - 19:2, 19:7, 19:16, 19:23, 20:5, 20:20, 22:2, 23:23, 24:1, 24:6
life [1] - 9:21
line [2] - 8:12, 12:12
lines [1] - 8:4
list [1] - 6:7
listed [1] - 6:19
located [2] - 5:12, 6:3
lockdown [1] - 9:12
look [3] - 17:21, 28:18, 32:5
looked [2] - 4:8, 4:12
looking [1] - 25:23
Los [6] - 1:17, 1:24, 2:7, 2:14, 11:17, 32:13
lose [2] - 9:20, 9:22
lost [2] - 14:17, 17:8

## M

manager [1] - 32:21
mandate [4] - 4:8, 4:9, 18:5, 20:23
mandates [2] - 18:19
manner [2] - 12:20, 21:25
marshal [1] - 33:8
MARSHALL [1] - 1:4
marshals [1] - 33:21
matter [4] - 3:25, 15:13, 32:23, 35:4

matters [1] - 30:19
MDC [1] - 9:12
meals [1] - 31:25
mean [1] - 23:8
mechanism [2] - 12:11, 12:12
media [1] - 26:13
meet [1] - 16:10
meet-and-confer [1] - 16:10
men [1] - 14:2
method [2] - 9:3, 12:22
Metropolitan [3] - 7:24, 9:17, 9:19
midst [1] - 21:16
might [9] - 4:20, 5:22, 11:7, 11:12, 12:24, 13:8, 14:6, 25:18, 29:10
minimum [1] - 10:7
minor [1] - 23:8
misleading [1] - 29:9
molesting [1] - 14:21
moment [2] - 14:8, 14:21
Mondays [2] - 30:12, 31:1
months [1] - 24:8
morning [8] - 3:8, 3:11, 3:12, 3:15, 3:16, 4:1, 8:3, 12:8
most [1] - 29:2
move [2] - 9:19, 21:22
MR [22] - 3:12, 7:21, 8:21, 9:8, 10:4, 10:13, 11:6, 12:7, 14:9, 18:24, 21:3, 22:7, 24:3, 24:5, 24:17, 25:10, 26:20, 28:2, 28:16, 31:5, 33:4, 34:5
MS [15] - 3:8, 14:8, 14:14, 15:13, 17:1, 17:19, 21:9, 25:4, 25:7, 26:7, 28:12, 28:14, 31:2, 31:17, 33:1
multiple [4] - 16:8, 19:17, 23:14, 23:19
multiple-count [1] - 19:17

## N

nature [2] - 14:16, 21:18
necessary [1] - 17:14
necessitated [2] -

21:5, 21:10
need [25] - 3:22, 4:5, 4:15, 7:1, 7:5, 7:14, 7:18, 8:5, 9:15, 16:13, 16:20, 18:10, 18:16, 20:15, 20:22, 21:8, 25:13, 25:24, 25:25, 26:22, 27:21, 33:2, 33:10, 33:21, 33:22
needed [2] - 4:21, 12:15
needs [8] - 12:18, 17:23, 20:5, 25:20, 27:14, 27:18, 33:17
never [1] - 18:14
new [7] - 4:3, 6:14, 20:12, 20:15, 25:20, 26:4, 29:11
next [2] - 18:3, 28:9
Ninth [10] - 6:15, 19:20, 20:2, 20:8, 21:19, 22:12, 22:17, 24:11, 24:20, 26:16
nonetheless [1] - 21:7
noontime [2] - 32:12, 32:13
North [3] - 1:24, 2:6, 10:24
note [1] - 28:16
noted [1] - 8:22
notice [1] - 30:23
noticed [2] - 6:6, 6:18
notify [1] - 15:3
November [5] - 29:15, 29:16, 29:22, 29:24, 31:2, 31:5, 32:7, 32:10, 32:24
number [2] - 10:15, 19:4
numbers [1] - 7:6

## O

o'clock [9] - 31:8, 31:11, 31:12, 32:7, 32:13, 32:15, 32:16, 32:24
object [2] - 27:19, 29:7
objection [1] - 6:12
obtain [1] - 5:2
obviously [2] - 8:25, 26:10
occasions [1] - 6:23
occurred [2] - 8:2, 14:1, 18:23
occurring [1] - 32:1
October [2] - 23:4,

25:4
OCTOBER [2] - 1:18, 3:1
OF [4] - 1:2, 1:8, 2:3, 2:11
offenders [1] - 11:7
offense [12] - 10:11, 10:14, 14:19, 19:1, 19:7, 19:23, 20:5, 20:20, 22:2, 23:23, 24:1, 24:6
offenses [4] - 10:14, 10:17, 11:1, 14:1
offer [4] - 10:11, 10:13, 16:24, 30:20
offered [1] - 20:7
Office [1] - 2:5
office [1] - 11:7
OFFICER [2] - 10:6, 11:4
offices [1] - 24:25
Official [1] - 1:23
official [1] - 35:11
ON [2] - 2:3, 2:11
one [19] - 4:9, 5:5, 5:6, 5:15, 6:16, 6:17, 7:1, 8:3, 9:9, 10:19, 12:12, 13:21, 14:8, 14:15, 14:18, 20:23, 22:22, 26:8, 28:12
one-page [1] - 4:9
ones [2] - 7:4, 29:3
open [1] - 8:12
opine [1] - 20:8
opportunity [3] - 14:5, 15:8, 29:7
order [4] - 4:5, 4:22, 16:9, 16:13, 16:20, 17:23, 17:25, 21:1, 28:25
original [4] - 19:14, 20:10, 20:14, 22:19
otherwise [1] - 13:14
outside [1] - 24:2
overwhelmed [1] - 30:10

## P

page [2] - 4:9, 23:6
paper [5] - 20:15, 21:11, 24:18, 25:2, 25:3
papers [13] - 4:23, 5:1, 5:2, 16:6, 20:16, 22:24, 22:25, 25:19, 26:10, 27:1, 27:25, 29:1
part [4] - 4:20, 9:9,

10:17, 21:14
participating [2] - 5:12, 13:10
participation [1] - 13:11
particular [1] - 27:11
parties [11] - 20:4, 20:13, 20:24, 20:25, 22:23, 23:22, 24:9, 26:23, 27:1, 27:8, 27:25
Parties' [1] - 23:6
parties' [1] - 14:11
past [1] - 7:1
pattern [2] - 19:16, 23:17
Peace [1] - 2:5
perhaps [2] - 8:3, 8:10
period [1] - 7:11
permit [1] - 12:16
permutations [1] - 19:24
person [2] - 9:1, 15:21, 33:8
personal [1] - 11:20
petitioning [1] - 13:16
phases [1] - 15:8
phone [3] - 8:11, 8:12, 12:5
phonetically [3] - 21:20, 22:14
phrased [1] - 9:24
physically [1] - 9:23
place [9] - 6:2, 10:10, 12:11, 17:6, 21:16, 26:2, 27:4, 28:9
plaintiff [1] - 1:10
PLAINTIFF [1] - 2:3
pled [3] - 10:12, 17:7, 17:13
point [9] - 12:5, 14:9, 16:5, 19:9, 21:15, 23:9, 26:8, 26:18, 33:22
pointed [1] - 22:9
points [3] - 23:11, 23:14, 23:17
position [26] - 4:23, 5:1, 5:2, 16:7, 19:21, 20:15, 20:16, 21:5, 21:6, 21:9, 21:11, 21:19, 21:24, 22:1, 22:24, 23:3, 23:10, 25:2, 25:19, 26:25, 27:25, 29:1, 29:10, 33:23, 34:2
positions [3] - 14:11, 15:25, 16:14
Positions [1] - 23:6
possessions [1] -

9:20
**possibility** [1] - 28:24
**possible** [3] - 8:3, 8:10, 19:22
**preclude** [1] - 27:17
**preference** [1] - 30:25
**preferred** [1] - 9:3
**premise** [1] - 27:22
**prepared** [7] - 4:13, 6:20, 6:21, 16:23, 24:25, 28:8, 30:20
**present** [5] - 3:13, 9:23, 14:5, 16:24, 17:14
**presentence** [3] - 18:9, 27:1, 27:24
**presentencing** [1] - 11:22
**presently** [2] - 5:12, 29:2
**PRESIDING** [1] - 1:4
**press** [5] - 22:18, 26:9, 26:18, 26:21, 27:15
**presuming** [1] - 21:7
**pretrial** [1] - 9:10
**previous** [1] - 4:24
**previously** [1] - 7:22
**Prisons** [3] - 10:2, 10:7, 10:10
**private** [3] - 8:6, 8:8, 8:10
**probation** [12] - 6:21, 6:24, 18:7, 18:12, 18:25, 19:5, 23:9, 23:12, 23:15, 23:17, 26:13, 27:3
**PROBATION** [2] - 10:6, 11:4
**probation's** [2] - 18:11, 23:21
**problem** [4] - 14:22, 14:25, 32:22, 33:17
**procedural** [2] - 8:22, 14:10
**proceed** [8] - 5:11, 7:22, 7:25, 9:5, 11:15, 12:20, 12:21, 16:18
**proceeding** [10] - 4:19, 5:14, 8:18, 9:2, 9:10, 12:8, 13:15, 15:8, 16:11, 17:8
**proceedings** [5] - 3:20, 13:23, 15:12, 34:8, 35:3
**Proceedings** [1] - 1:16
**process** [3] - 15:17, 15:22, 17:2

**program** [6] - 10:11, 10:21, 10:25, 11:2, 11:11, 11:12
**programs** [3] - 13:9, 13:11, 31:25
**progress** [1] - 28:21
**pronounced** [2] - 19:6, 19:7
**proof** [1] - 23:4
**proper** [1] - 22:5
**properly** [1] - 21:2
**provide** [1] - 4:25, 24:22
**provided** [5] - 13:1, 13:8, 27:3, 27:19, 33:18
**providing** [2] - 20:13, 27:17
**provisions** [1] - 19:11
**PROWLER** [1] - 1:12
**Prowler** [19] - 3:6, 3:13, 3:15, 7:22, 8:5, 8:9, 8:13, 8:22, 8:24, 9:11, 9:13, 9:15, 9:25, 11:15, 12:16, 21:4, 33:7, 34:2
**Prowler's** [2] - 28:21, 33:23
**public** [1] - 12:2
**Public** [1] - 2:13
**purpose** [1] - 18:17
**purposes** [6] - 10:19, 18:10, 18:15, 20:22, 25:3, 27:14
**put** [7] - 5:7, 22:23, 25:14, 25:18, 26:5, 30:9, 33:2

**Q**

**questions** [10] - 4:7, 5:15, 5:22, 6:6, 7:15, 8:15, 11:15, 13:21, 28:7
**quite** [2] - 6:7, 12:17

**R**

**raise** [2] - 13:21, 31:21
**raised** [2] - 7:15, 26:9
**raising** [1] - 3:19
**range** [14] - 18:12, 18:13, 18:15, 18:21, 19:1, 20:18, 20:20, 24:1, 24:2, 24:4, 24:5, 24:7, 24:8, 27:12
**rather** [3] - 7:23, 8:16, 12:9

**Re** [1] - 23:7
**re** [3] - 7:23, 21:6, 23:3
**re-transported** [1] - 7:23
**reach** [1] - 22:2
**reaching** [1] - 12:3
**read** [5] - 13:24, 16:13, 16:16, 17:12, 26:25
**reading** [4] - 4:10, 18:4, 18:18, 25:23
**reason** [5] - 9:7, 10:12, 11:2, 30:3, 31:21
**reasonable** [1] - 26:15
**reasonableness** [4] - 21:22, 22:3, 22:11, 22:14
**reasoning** [1] - 21:12
**reasons** [2] - 7:12, 9:9
**receive** [1] - 8:19
**received** [1] - 13:6
**recent** [2] - 25:19, 29:3
**recommendations** [1] - 10:23
**record** [12] - 4:17, 5:7, 8:25, 15:6, 16:20, 26:3, 26:6, 27:9, 27:10, 28:10, 28:13, 33:3
**recorded** [1] - 35:3
**reduction** [1] - 35:6
**referenced** [1] - 16:2
**regarding** [1] - 28:19
**regulations** [1] - 35:7
**rejected** [2] - 19:12, 19:20
**release** [7] - 6:7, 22:18, 26:9, 26:18, 26:21, 27:15, 28:18
**relevant** [1] - 27:20, 28:4
**relied** [1] - 21:12
**rely** [1] - 25:21
**remain** [2] - 29:11, 33:23
**remaining** [2] - 5:11, 11:16
**remand** [5] - 14:11, 18:4, 21:6, 21:10
**remanded** [1] - 20:6, 20:25, 21:1, 21:8, 22:4, 22:5
**remanding** [1] - 20:2
**Reply** [1] - 22:12
**report** [4] - 6:20, 18:9, 27:1, 27:24
**Reporter** [1] - 1:23, 35:11

**Reporter's** [1] - 1:16
**representation** [2] - 8:20, 12:20
**representations** [1] - 17:10
**request** [1] - 30:19
**required** [1] - 14:4
**requirements** [1] - 33:16
**requires** [1] - 15:7
**research** [2] - 4:15, 24:15
**resentencing** [9] - 9:1, 9:16, 9:23, 12:9, 12:10, 20:6, 22:24, 23:3, 26:24
**resolve** [1] - 4:22
**resolved** [1] - 5:7
**respectful** [1] - 26:11
**respectfully** [1] - 26:20
**respective** [1] - 16:13
**responsibility** [2] - 12:15, 12:19
**responsible** [1] - 33:19
**rest** [1] - 11:17
**restricting** [1] - 7:7
**resurrecting** [1] - 19:17
**return** [2] - 9:14, 12:10
**review** [5] - 4:4, 4:5, 6:10, 25:16, 25:17
**reviewing** [2] - 21:18, 27:10
**reworded** [1] - 7:6
**rights** [1] - 14:3
**Room** [1] - 1:24
**room** [1] - 8:4
**routine** [1] - 9:21
**RPR** [2] - 1:23, 35:11
**rule** [2] - 19:18, 27:20
**run** [1] - 14:24

**S**

**S-E-A-G-O-V-I-L-L-E** [1] - 10:5
**satisfied** [2] - 7:16, 8:18
**satisfy** [3] - 4:15, 17:22, 33:15
**satisfying** [1] - 33:14
**saw** [1] - 23:5
**schedule** [1] - 32:19
**Seagoville** [9] - 3:14, 8:5, 9:19, 9:21, 10:2, 10:5, 10:16, 11:9, 12:13

**seal** [8] - 5:3, 5:4, 16:3, 16:7, 25:6, 25:9, 25:10, 25:11
**search** [1] - 7:7
**second** [1] - 8:1
**security** [1] - 10:8
**see** [2] - 6:11, 13:10
**seek** [1] - 6:24
**segregated** [1] - 9:11
**sent** [1] - 11:8
**sentence** [20] - 4:2, 5:9, 6:9, 7:9, 7:13, 10:23, 16:21, 18:8, 18:16, 19:6, 19:11, 21:13, 22:20, 23:25, 24:7, 26:15, 26:16, 27:12, 30:4
**sentenced** [2] - 21:2, 25:22
**sentences** [1] - 21:18
**sentencing** [37] - 3:25, 4:6, 4:19, 4:24, 5:11, 5:23, 11:16, 13:19, 13:23, 15:9, 16:7, 16:19, 17:8, 17:16, 18:2, 18:13, 18:14, 18:20, 19:3, 19:5, 19:6, 19:15, 20:10, 20:12, 20:22, 21:12, 22:19, 26:4, 26:18, 27:14, 28:4, 29:4, 29:12, 30:9, 31:6, 32:14, 33:24
**serve** [1] - 15:16
**serves** [1] - 10:22
**service** [1] - 23:4
**set** [6] - 22:15, 28:8, 30:11, 30:24, 31:22, 32:14
**Sherilyn** [2] - 2:5, 3:8
**short** [3] - 9:20, 12:2, 20:7
**show** [1] - 13:7
**shows** [1] - 23:20
**side** [3] - 27:2, 28:7, 29:1
**sides** [2] - 5:10, 27:18
**similar** [1] - 11:1
**simply** [5] - 7:9, 8:10, 12:9, 20:9, 30:6
**solitary** [1] - 9:12
**someone** [1] - 14:12
**sometimes** [1] - 13:4
**soon** [1] - 31:20
**sooner** [1] - 30:1
**sorry** [1] - 32:15
**sort** [1] - 15:16
**speaking** [1] - 8:16
**Special** [1] - 3:10
**special** [3] - 10:11,

11:1, 11:10
**specific** [2] - 10:25, 27:8
**specifically** [1] - 19:13
**spelled** [4] - 10:5, 21:20, 21:21, 22:15
**Spring** [2] - 1:24, 2:6
**standing** [1] - 8:9
**start** [3] - 21:21, 27:4, 27:22
**started** [1] - 4:4
**starting** [3] - 26:24, 27:3, 29:22
**state** [1] - 5:18
**statement** [1] - 17:15
**States** [5] - 2:6, 3:6, 3:9, 17:5, 17:6
**STATES** [2] - 1:1, 1:8
**states** [1] - 35:7
**statute** [3] - 15:7, 17:22, 17:24
**stenographically** [1] - 35:3
**Stephen** [1] - 3:6
**steps** [2] - 12:10, 21:17
**STEVEN** [1] - 1:12
**still** [7] - 4:10, 5:24, 8:19, 11:8, 17:15, 24:2, 30:22
**straighten** [2] - 18:5, 18:23
**Street** [3] - 1:24, 2:6, 2:13
**stress** [1] - 11:24
**strong** [1] - 22:20
**subsequently** [1] - 19:10
**successful** [1] - 13:10
**suggest** [2] - 7:5, 20:24
**suggested** [1] - 29:21
**suggests** [1] - 18:19
**supervised** [2] - 6:7, 28:18
**supplement** [1] - 29:1
**supplemental** [3] - 22:24, 24:18, 32:25
**support** [1] - 20:14
**supported** [1] - 6:12
**supposed** [1] - 17:25
**Supreme** [1] - 21:17

## T

**table** [1] - 3:10
**telephone** [4] - 8:4, 12:2, 12:12, 12:13
**Telephone** [1] - 1:25

**ten** [1] - 19:6
**ten-year** [1] - 19:6
**terms** [2] - 15:25, 29:19
**testify** [1] - 17:14
**testimony** [1] - 16:25
**Testing** [1] - 6:21
**Texas** [10] - 3:14, 7:18, 8:5, 9:19, 9:21, 10:2, 10:16, 11:5, 11:17, 32:9
**Thai** [1] - 17:6
**Thailand** [3] - 13:25, 14:21, 15:16
**THE** [47] - 2:3, 2:11, 3:11, 3:15, 3:16, 3:17, 8:14, 9:4, 10:1, 10:9, 10:18, 11:10, 11:19, 12:14, 14:13, 15:4, 16:9, 17:11, 17:21, 20:11, 23:2, 24:4, 24:9, 24:24, 25:6, 25:8, 25:12, 26:22, 28:6, 28:15, 28:25, 29:16, 29:19, 30:14, 30:20, 31:4, 31:9, 31:12, 31:19, 32:11, 32:14, 32:20, 32:23, 33:13, 34:3, 34:4, 34:6
**thee** [1] - 18:8
**themselves** [1] - 13:5
**therefore** [2] - 19:25, 30:4
**they've** [5] - 13:5, 13:6, 13:7
**thinking** [1] - 29:25
**three** [1] - 31:17
**throughout** [1] - 14:25
**today** [7] - 4:2, 5:9, 7:13, 12:9, 17:10, 26:9, 26:17
**together** [1] - 25:14
**took** [3] - 17:6, 21:16, 32:16
**top** [1] - 24:8
**total** [5] - 19:1, 19:7, 19:23, 20:5, 22:2
**track** [4] - 14:17, 15:1, 15:23, 17:8
**tracked** [1] - 14:23
**Transcript** [1] - 1:16
**transcript** [3] - 4:19, 35:3, 35:5
**transport** [1] - 11:23
**transportation** [1] - 33:9
**transported** [4] - 7:23, 9:22, 17:4, 33:18
**transporting** [2] - 9:6,

33:7
**trial** [6] - 15:14, 16:23, 17:15, 29:22, 30:4, 30:22
**tried** [1] - 15:14
**trouble** [1] - 12:3
**true** [1] - 35:2
**try** [3] - 3:21, 8:15, 8:17
**trying** [1] - 4:13
**TUESDAY** [2] - 1:18, 3:1
**two** [13] - 7:10, 7:11, 9:9, 19:11, 23:9, 25:22, 29:4, 29:6, 29:21, 31:15, 32:11, 32:12, 33:1
**two-point** [1] - 23:9
**two-year** [1] - 7:11
**type** [2] - 3:19, 10:14
**types** [1] - 10:17

## U

**ultimate** [3] - 21:13, 22:2, 26:18
**unable** [1] - 5:9
**unclear** [2] - 20:10, 21:5
**under** [11] - 5:3, 5:4, 10:24, 16:3, 16:7, 19:17, 22:14, 25:6, 25:9, 25:10, 25:11
**UNITED** [2] - 1:1, 1:8
**united** [1] - 35:7
**United** [5] - 2:6, 3:5, 3:9, 17:4, 17:5
**unless** [1] - 20:16
**unpublished** [1] - 20:3
**US** [1] - 2:5
**USACAC.Criminal@ usdoj.gov** [1] - 2:8

## V

**vacated** [1] - 20:6
**various** [3] - 14:17, 14:23, 16:6
**versus** [1] - 3:6
**via** [2] - 3:13, 12:2
**victim** [2] - 19:13, 23:11
**victims** [17] - 13:22, 13:25, 14:14, 14:16, 14:18, 14:23, 15:2, 15:7, 15:24, 16:23, 16:24, 17:2, 17:9, 17:10, 17:13, 17:24

**video** [7] - 5:13, 5:14, 8:19, 11:16, 12:6, 33:11, 33:24
**VideoLink** [4] - 3:14, 7:23, 8:9, 9:2
**visiting** [1] - 10:19
**voice** [1] - 15:12
**VS** [1] - 1:11
**vulnerable** [2] - 19:13, 23:11

## W

**walking** [1] - 8:2
**wants** [1] - 7:25
**warden** [1] - 13:8
**watch** [1] - 17:4
**watched** [1] - 17:5
**wayside** [1] - 15:18
**week** [1] - 12:4
**weeks** [3] - 29:4, 29:6, 29:21
**wish** [3] - 26:2, 28:7, 28:9
**wishes** [2] - 12:25, 13:13
**works** [1] - 29:13
**writ** [4] - 33:5, 33:6, 33:10, 33:21
**written** [2] - 13:5, 13:13

## Y

**year** [2] - 7:11, 19:6
**years** [3] - 7:10, 8:23, 25:22
**young** [1] - 14:2
**yourself** [1] - 33:14
**yourselves** [1] - 17:22

## Z

**zzCAC_FPD_ Document_ Receiving@fd.org** [1] - 2:15