1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                  WESTERN DIVISION

4    THE HONORABLE CONSUELO B. MARSHALL, SENIOR JUDGE PRESIDING

5

6    UNITED STATES OF AMERICA,          )
                                        )
7                    PLAINTIFF,         )
             VS.                        )     NO. CR 06-391-CBM
8                                       )
     STEVEN ERIK PROWLER,               )
9                                       )
                     DEFENDANT.         )
10   _____)

11

12

13

14

15           REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                LOS ANGELES, CALIFORNIA

17           FRIDAY, JULY 30, 2010; 11:26 A.M.

18                 RESENTENCING HEARING

19

20

21

22

23                              MARY RIORDAN RICKEY
                                OFFICIAL COURT REPORTER
24                              255 EAST TEMPLE STREET
                                ROOM 181-G
25                              LOS ANGELES, CA  90012
                                MARY.USDC@YAHOO.COM

*JULY 30, 2010*

1    APPEARANCES OF COUNSEL:

2

3    FOR THE PLAINTIFF:

4              U.S. DEPARTMENT OF JUSTICE
               UNITED STATES ATTORNEY'S OFFICE
5              BY:  SHERILYN PEACE GARNETT
                    ASSISTANT UNITED STATES ATTORNEY
6              1200 U.S. COURTHOUSE
               312 NORTH SPRING STREET
7              LOS ANGELES, CALIFORNIA  90012
               (213) 894-2434
8

9    FOR THE DEFENDANT:

10             OFFICE OF THE FEDERAL PUBLIC DEFENDER
               SEAN K. KENNEDY
11             BY:  CHRISTOPHER DYBWAD
                    GUY IVERSEN
12                  DEPUTY FEDERAL PUBLIC DEFENDERS
               321 EAST SECOND STREET
13             LOS ANGELES, CALIFORNIA  90012

14             (213) 894-2854

15

16   ALSO PRESENT:

17             RETIRED I.C.E. SPECIAL AGENT GARY KIERNAN

18

19

20

21

22

23

24

25

*JULY 30, 2010*

1          LOS ANGELES, CALIFORNIA; FRIDAY, JULY 30, 2010

2                            11:26 A.M.

3                             --oOo--

4          **THE CLERK:**  CALLING THE MATTER OF UNITED STATES

5  VERSUS STEVEN ERIK PROWLER, CASE NO. CR-06-391-CBM.

6          APPEARANCES, PLEASE.

7          **MS. PEACE GARNETT:**  GOOD MORNING, YOUR HONOR.

8  SHERILYN GARNETT FOR THE UNITED STATES.

9          ALSO PRESENT AT COUNSEL TABLE IS NOW RETIRED

10  SPECIAL AGENT GARY KIERNAN WITH I.C.E.

11         **THE COURT:**  GOOD MORNING.

12         **MR. DYBWAD:**  GOOD MORNING, YOUR HONOR.

13  CHRIS DYBWAD, DEPUTY FEDERAL PUBLIC DEFENDER, ON BEHALF OF

14  MR. PROWLER, WHO IS PRESENT IN CUSTODY BEFORE THE COURT, AS

15  WELL AS GUY IVERSEN ON BEHALF OF MR. PROWLER AS WELL.

16         **THE COURT:**  GOOD MORNING.

17         **THE DEFENDANT:**  GOOD MORNING, YOUR HONOR.

18         **THE COURT:**  AND WHEN COUNSEL ADDRESS THE COURT, I

19  THINK YOU KNOW YOU'LL GO TO THE LECTERN.  WE CAN HEAR YOU

20  BETTER, BUT I'M GOING TO MAKE SOME PRELIMINARY REMARKS

21  BEFORE WE GET THERE.

22         SO AT THIS POINT, YOU MAY BE SEATED.

23         I BELIEVE THIS IS PROBABLY THE THIRD HEARING WHERE

24  THE SENTENCING WAS SET BEFORE THIS COURT, BUT FOR VARIOUS

25  REASONS, WE WERE NOT ABLE TO GET MUCH ACCOMPLISHED THE LAST

1    TWO OCCASIONS.

2             SO WHAT I WILL DO IS, FOR THE RECORD, I'LL STATE

3    THE PAPERS THAT I'VE REVIEWED.  I THINK I MAY HAVE ADDRESSED

4    THAT AT THE LAST HEARING, BUT I'M JUST NOT SURE.

5             SO I JUST WANT TO MAKE SURE THAT YOU ARE AWARE OF

6    ALL THE THINGS THAT I HAVE REVIEWED FOR PURPOSES OF THE

7    SENTENCING.  THAT WAY, IF THERE'S SOMETHING THAT I FAILED TO

8    MENTION, YOU CAN BRING IT TO MY ATTENTION.  IF I HAVEN'T

9    REVIEWED IT, THEN OBVIOUSLY I WILL REVIEW IT BEFORE WE

10   PROCEED WITH THE ACTUAL SENTENCING.

11            BECAUSE I KNOW THE AREAS OR I THINK I KNOW THE

12   AREAS WHERE THERE WERE OBJECTIONS AS FAR AS THE PARTIES ARE

13   CONCERNED TO THE PRESENTENCE REPORT PREPARED BY PROBATION OR

14   THE POSITIONS TAKEN BY EACH OF YOU, I THOUGHT TENTATIVE

15   FINDINGS WOULD BE HELPFUL.

16            SO I WILL GIVE YOU THE TENTATIVE CALCULATIONS OF

17   THE GUIDELINES AND, TO THE EXTENT THAT IT'S NECESSARY,

18   SOMETHING THAT WOULD SUPPORT MY THINKING IN THAT REGARD; AND

19   THAT WAY, YOU'LL KNOW WHERE TO FOCUS YOUR ARGUMENTS.

20            THE CONDITIONS OF SUPERVISED RELEASE.  IT SEEMS TO

21   ME THAT AT LEAST ON ONE OCCASION I LOOKED AT THE PREVIOUS

22   JUDGMENT AND COMMITMENT ORDER PREPARED BY JUDGE TAKASUGI AND

23   SAID THESE ARE THE CONDITIONS THAT HE IMPOSED AND INDICATED

24   TO YOU THAT, IF YOU WERE OBJECTING TO ANY OF THOSE, YOU

25   SHOULD SO ADVISE.

1          I BELIEVE IT'S CORRECT THAT THE DEFENSE COUNSEL

2     DID OBJECT TO SOME OF THE CONDITIONS, AND THIS IS PROBABLY

3     IN WRITING AS WELL.  I THINK DEFENSE COUNSEL ACTUALLY FILED

4     A DOCUMENT OBJECTING TO CONDITIONS OF SUPERVISED RELEASE.  I

5     THINK THE GOVERNMENT RESPONDED TO THAT DOCUMENT.

6          AND SO I HAVE FOCUSED ON THE OBJECTIONS AND THE

7     CASES THAT MIGHT HAVE BEEN DECIDED SUBSEQUENT TO THE

8     PREVIOUS SENTENCING TO TRY TO FIGURE OUT HAS THE NINTH

9     CIRCUIT ADDRESSED THE PARTICULAR CONDITIONS.

10          THIS MORNING I THOUGHT AN EASY WAY TO DO THAT WAS

11     JUST TO CALL THE PROBATION OFFICER AND ASK SOME QUESTIONS

12     ABOUT SOME OF THESE CONDITIONS.  AND THE OFFICER INDICATED

13     TO ME, WELL, EVEN PROBATION HAS CHANGED THE LANGUAGE OF SOME

14     OF THESE RECOMMENDATIONS, CONDITIONS OF SUPERVISED RELEASE

15     BECAUSE IT HAS BEEN THREE YEARS.

16          SO I ASKED THAT OFFICER IF HE WOULD EITHER E-MAIL

17     OR BRING TO THE COURTROOM THIS MORNING LANGUAGE THAT MAY BE

18     DIFFERENT AS RECOMMENDED BY PROBATION.  AND TO THE EXTENT

19     THAT THEY ARE USING NOW DIFFERENT LANGUAGE, I WILL MAKE THE

20     PARTIES AWARE OF THAT; AND SO YOU'LL STILL GET TO ADDRESS

21     WHETHER YOU HAVE OBJECTIONS TO THE LANGUAGE OR WHAT YOUR

22     POSITION MIGHT BE.

23          SO WHY DON'T I, FIRST, JUST START WITH THE THINGS

24     THAT I REVIEWED FOR PURPOSES OF THIS HEARING.  THERE'S QUITE

25     A LIST, BUT YOU'LL CERTAINLY RECOGNIZE THE ABSENCE OF

```
 1    SOMETHING THAT YOU KNOW THAT I SHOULD HAVE REVIEWED.

 2            SO THE PROBATION'S PRESENTENCE REPORT IS THE ONE

 3    THAT'S DATED MAY 23RD, 2007.  THAT'S WHEN IT WAS DISCLOSED.

 4            AT SOME POINT, JUDGE TAKASUGI, I THINK AFTER THE

 5    MANDATE WAS ISSUED, HE ASKED PROBATION TO PREPARE A

 6    SUPPLEMENTAL REPORT.  BUT I BELIEVE PROBATION SAID WELL,

 7    THERE'S NOTHING NEW, THAT PROBATION'S POSITION WOULD BE THE

 8    SAME -- DEFENDANT'S BEEN IN CUSTODY.  THERE WAS NOTHING

 9    ACTUALLY TO ADD.

10            SO I DON'T THINK A NEW REPORT WAS ACTUALLY

11    PREPARED.  SO I AM RELYING UPON THAT ORIGINAL REPORT, WHICH

12    IS DATED MAY 23, 2007.

13            AT THAT TIME PROBATION ALSO PREPARED, OR AROUND

14    THAT TIME, THE CONFIDENTIAL LETTER TO JUDGE TAKASUGI, WHICH

15    INCLUDES THE CONDITIONS OF SUPERVISED RELEASE AND ALSO

16    PROBATION'S POSITION, AND THAT LETTER IS DATED JUNE 25TH OF

17    2007.

18            "PROWLER'S POSITION RE SENTENCING FACTORS," THAT

19    WAS EITHER LODGED OR FILED SEPTEMBER 10, 2007;

20            THE GOVERNMENT'S RESPONSE TO THE DEFENDANT'S

21    POSITION FILED SEPTEMBER 12, 2007;

22            AN ADDENDUM TO THE PRESENTENCE REPORT DATED

23    SEPTEMBER 13, 2007.  AND I THINK THIS IS WHERE PROBATION IS

24    RESPONDING TO THE POSITION TAKEN BY THE PARTIES AND

25    ATTEMPTING TO COMMENT ON THE POSITION TAKEN BY THE PARTIES;
```

```
 1              THE JUDGMENT AND COMMITMENT ORDER DATED

 2    SEPTEMBER 17, 2007.  AND I MADE REFERENCE TO THAT BECAUSE

 3    THOSE WERE THE CONDITIONS THAT WERE IMPOSED AT THE TIME, AND

 4    THAT'S WHERE I STARTED AT LEAST LOOKING AT WHETHER THERE

 5    WERE OBJECTIONS TO THOSE CONDITIONS;

 6              THE GOVERNMENT'S SUPPLEMENTAL SENTENCING POSITION

 7    RE SENTENCING OF THE DEFENDANT FILED OCTOBER 13, 2009;

 8              THE DEFENDANT'S OBJECTIONS TO THE CONDITIONS OF

 9    SUPERVISED RELEASE FILED NOVEMBER 9, 2009;

10              THE DEFENDANT'S SUPPLEMENTAL INFORMATION RE

11    RESENTENCING FILED NOVEMBER 9, 2009;

12              THE GOVERNMENT'S AMENDED EXHIBITS "A" THROUGH "U"

13    THAT PREVIOUSLY WERE FILED AS ATTACHMENTS TO THE DECLARATION

14    OF THE AGENT, KIERNAN, IN SUPPORT OF THE GOVERNMENT'S

15    POSITION RE SENTENCING OF THE DEFENDANT.  AND THAT'S A

16    LODGED DOCUMENT, LODGED ON NOVEMBER 10, 2009;

17              THE DEFENDANT'S SUPPLEMENTAL INFORMATION RE

18    SENTENCING LODGED APRIL 13, 2009 --

19              SOME OF THESE THINGS OBVIOUSLY WERE UNDER SEAL --

20              THE GOVERNMENT'S VICTIM IMPACT STATEMENT RE

21    SENTENCING LODGED ON APRIL 16, 2010.  AND SO THAT IS A

22    DOCUMENT THAT I JUST WANT TO -- AND I WILL INQUIRE OF THE

23    GOVERNMENT ABOUT THE VICTIM IMPACT STATEMENT, THE

24    NOTIFICATION GIVEN TO THE VICTIMS AND SO FORTH IN COMPLIANCE

25    WITH THE STATUTE;
```

1          THE GOVERNMENT'S RESPONSE TO THE DEFENDANT'S

2    OBJECTIONS TO THE CONDITIONS OF SUPERVISED RELEASE FILED

3    APRIL 16, 2010;

4          AND THE LAST DOCUMENT RECEIVED, THE DEFENDANT'S

5    SUPPLEMENTAL INFORMATION RE SENTENCING FILED JULY 29TH OF

6    THIS YEAR, 2010.  SO JUST FILED YESTERDAY.

7          THOSE ARE THE DOCUMENTS.

8          SO I WOULD JUST INQUIRE FROM YOU, IF THERE'S ANY

9    DOCUMENT THAT I FAILED TO MENTION, WOULD YOU PLEASE BRING

10   THAT TO MY ATTENTION.

11         **MR. DYBWAD:**  YOUR HONOR, THERE WAS A DOCUMENT

12   ENTITLED "DEFENDANT'S POSITION RE RESENTENCING."  I BELIEVE

13   IT'S DOCKET ENTRY 89.  IT'S THE DOCUMENT THAT INCLUDES A

14   CHART LAYING OUT THE VARIOUS PARTIES' DISAGREEMENTS AS TO

15   WHICH GUIDELINE ENHANCEMENTS APPLY.

16         I KNOW THAT IN AN EARLIER SENTENCING PROCEEDING,

17   THE COURT IDENTIFIED, I BELIEVE THAT IT HAD, AT THE VERY

18   LEAST, REVIEWED THAT CHART.

19         IT MAY WELL BE THAT THE COURT HAS REVIEWED THAT

20   DOCUMENT AS WELL, BUT I DIDN'T HEAR IT IN THE LIST.

21         **THE COURT:**  WHAT'S THE DATE?

22         **MR. DYBWAD:**  IF THE COURT WILL GIVE ME A SECOND.

23         IT WAS FILED UNDER SEAL.  IT'S THE DOCUMENT THAT

24   INCLUDES THE GOVERNMENT'S PRESS RELEASE AS EXHIBIT "A."  I

25   BELIEVE IT WAS LODGED OCTOBER 13, 2009.

```
 1              THE COURT:  I DO HAVE A DOCUMENT, "DEFENDANT'S

 2   POSITION RE SENTENCING FACTORS."  THIS WAS FILED

 3   SEPTEMBER 10, 2007.  THERE ARE ATTACHMENTS A THROUGH L.

 4          SO LET ME JUST LOOK TO SEE.  I'M SURE THAT THERE'S

 5   ANOTHER MORE RECENT ONE AS WELL.

 6                            (PAUSE.)

 7          MR. DYBWAD:  YOUR HONOR, I CAN HAND UP MY COPY IF

 8   THE COURT...

 9          THE COURT:  YOU KNOW, IT'S EASIER -- I'M SURE YOU

10   FIND IT TO BE THE CASE -- IF YOU CAN WORK WITH YOUR OWN

11   COPIES BECAUSE YOU'VE WRITTEN AND MARKED AND DONE THINGS

12   THAT YOU THINK ARE HELPFUL.  SO LET ME SEE IF I HAVE IT.

13          THERE IS A DOCUMENT, DEFENDANT'S POSITION RE

14   RESENTENCING, AND THIS WAS FILED ON OCTOBER 13, 2009.  THE

15   COPY THAT I'M LOOKING AT NOW DOES HAVE ATTACHMENTS.  THERE

16   IS AN EXHIBIT "A."  THE EXHIBIT "A" COMES FROM THE

17   UNITED STATES ATTORNEY'S OFFICE, PUBLIC AFFAIRS OFFICER.

18   APPARENTLY IT IS A PRESS RELEASE.

19          BUT THAT IS THE ONLY DOCUMENT THAT'S ATTACHED TO

20   THIS.  I MEAN, THAT'S THE ONLY EXHIBIT ATTACHED TO THE

21   DOCUMENT THAT I'M REFERENCING.

22          SO DOES THAT APPEAR TO BE THE DOCUMENT THAT YOU

23   ARE TALKING ABOUT?

24          MR. DYBWAD:  IT IS, YOUR HONOR, AND THAT IS THE

25   ONLY ATTACHMENT TO THAT DOCUMENT.
```

```
 1              THE COURT:  OKAY.  AND SO IF YOU TELL ME THE PAGE,

 2    I CAN PROBABLY FIND THAT CHART THAT YOU ARE REFERENCING.

 3              MR. DYBWAD:  IF THE COURT WILL GIVE ME ONE SECOND

 4    SO I CAN REORGANIZE MY PAPERS AS WELL.

 5              PAGE 3 OF THE FILING.

 6              THE COURT:  YES.  PAGE 3, THE PARTIES' POSITION RE

 7    THE ADVISORY GUIDELINES.  AND SO IT DESCRIBES THE VARIOUS

 8    GUIDELINES, GIVES A TITLE, INDICATES HOW MANY POINTS,

 9    PROBATION'S POSITION, GOVERNMENT'S POSITION, DEFENSE

10    POSITION.

11              MR. DYBWAD:  THAT IS CORRECT, YOUR HONOR.  THAT IS

12    THE ONLY DOCUMENT I HAD REVIEWED BUT DID NOT HEAR IN THE

13    COURT'S INITIAL LIST.

14              THE COURT:  OKAY.  SO I DID REVIEW THAT DOCUMENT.

15              ARE THERE DOCUMENTS THAT THE GOVERNMENT BELIEVES

16    HAVE BEEN FILED, LODGED -- UNDER SEAL, WHATEVER -- THAT I

17    DID NOT MENTION THAT I SHOULD REVIEW FOR PURPOSES OF THE

18    SENTENCING HEARING?

19              MS. PEACE GARNETT:  I BELIEVE SO, YOUR HONOR.

20              THERE IS A GOVERNMENT'S POSITION RE SENTENCING OF

21    MR. PROWLER.

22              I APOLOGIZE TO THE COURT.  BECAUSE I DON'T HAVE A

23    DOCKET SHEET, I CAN'T TELL YOU THE EXACT DATE IT WAS FILED,

24    BUT IT CONTAINS THE HEART OF THE GOVERNMENT'S ARGUMENTS FOR

25    RESENTENCING.
```

*JULY 30, 2010*

1          **THE COURT:**  AND SO WHAT'S THE TITLE?  GOVERNMENT'S

2     SENTENCING POSITION --

3          **MS. PEACE GARNETT:**  GOVERNMENT'S POSITION

4     REGARDING SENTENCING OF STEVEN ERIK PROWLER.

5          **THE COURT:**  AND IS THERE ANYTHING ON THAT THAT HAS

6     A DATE THAT YOU COULD REFERENCE?

7          **MS. PEACE GARNETT:**  NOT ON MY COPY, YOUR HONOR.

8          **THE COURT:**  DOES IT HAVE ATTACHMENTS?

9          **MS. PEACE GARNETT:**  NO, YOUR HONOR.  I BELIEVE I

10    FILED IT IN CONJUNCTION WITH THE DECLARATION OF

11    GARY KIERNAN.

12         **THE COURT:**  LET ME SEE.  I'M SURE THAT I'VE SEEN

13    IT AND READ IT, BUT LET ME TRY TO SEE IF I CAN FIND IT IN MY

14    STACK OF THINGS HERE.

15         AND ARE YOU ABLE TO DETERMINE WHETHER IT WAS AN

16    '09 DOCUMENT OR AN '07 DOCUMENT?

17         **MS. PEACE GARNETT:**  '09, YOUR HONOR.  DOCKET 90,

18    AND IT WAS FILED OCTOBER 13, 2009.

19         **THE COURT:**  I HAVE IT RIGHT HERE.  THE

20    GOVERNMENT'S SUPPLEMENTAL SENTENCING POSITION RE

21    RESENTENCING OF THE DEFENDANT, APPARENTLY FILED OCTOBER 13,

22    '09.

23         SO I DO HAVE THAT, AND I HAVE READ THAT.

24         **MS. PEACE GARNETT:**  THANK YOU.

25         **THE COURT:**  IT'S HELPFUL BECAUSE I EVEN WROTE THE

*JULY 30, 2010*

```
 1   WORD "READ."  SO I HAVE READ IT.  OKAY.

 2            ANYTHING ELSE THAT EITHER SIDE THINKS THAT I

 3   SHOULD HAVE READ THAT I DIDN'T MENTION?

 4            MS. PEACE GARNETT:  NO, YOUR HONOR.

 5            MR. DYBWAD:  NO, YOUR HONOR.

 6            THE COURT:  OKAY.

 7            I DID WANT TO PUT ON THE RECORD I'M HAPPY THAT

 8   MR. PROWLER IS HERE TODAY.  I KNOW HE HAD, AT ONE POINT,

 9   TAKEN THE POSITION THAT HE WOULD RATHER NOT COME PHYSICALLY,

10   THAT HE WOULD RATHER STAY WHERE HE WAS AND BE SENTENCED

11   PURSUANT TO THE VIDEO CONFERENCING.

12            HE PROBABLY RECALLS THAT I EXPRESSED CONCERNS ON

13   MORE THAN ONE OCCASION AS TO WHETHER THAT WAS BEST FOR HIM;

14   AND SO APPARENTLY BETWEEN HE AND HIS COUNSEL, HE DECIDED

15   THAT HE SHOULD BE HERE.  SO I'M HAPPY TO SEE HIM HERE TODAY.

16            OKAY.  I THINK WHAT I'LL DO NOW IS TO SHARE WITH

17   YOU MY POSITION TO ATTEMPT TO IDENTIFY THE ISSUES THAT I

18   THINK THAT YOU HAVE RAISED THAT AFFECT THE CALCULATION OF

19   THE GUIDELINES.

20            SO OBVIOUSLY PROBATION HAS CALCULATED THE

21   GUIDELINES IN THE PRESENTENCE REPORT; AND BOTH SIDES HAVE A

22   COPY OF THAT, OBVIOUSLY, AS WELL AS THE COURT.

23            YOU HAVE EACH CALCULATED THE GUIDELINES AS YOU

24   THINK APPROPRIATE, AND THEY APPEAR AT LEAST IN THE CHART AND

25   PROBABLY ELSEWHERE THAT DEFENSE COUNSEL REFERRED TO.
```

1        AND SO NOW THE COURT, CONSIDERING ALL OF THAT, HAS

2   ALSO CALCULATED THE GUIDELINES AND HAS SOME QUESTIONS,

3   THOUGH.  THERE ARE STILL SOME THINGS THAT I WANT TO HAVE YOU

4   ADDRESS.  SO I'LL IDENTIFY THOSE FOR YOU.

5        SO PROBATION'S CALCULATION OF THE GUIDELINES, THE

6   BASE OFFENSE LEVEL IS 24, AND I THINK BOTH SIDES AGREE WITH

7   THAT;

8        SPECIFIC OFFENSE CHARACTERISTICS, A PLUS 2.  I

9   THINK BOTH SIDES AGREE WITH THAT;

10       ROLE IN THE OFFENSE, NO INCREASE OR DECREASE;

11       THE VICTIM ADJUSTMENT, SIX POINTS;

12       THE OBSTRUCTION OF JUSTICE, ZERO;

13       THE ADJUSTED OFFENSE LEVEL, 32, IS CALCULATED BY

14  PROBATION;

15       AND THEN PROBATION ADDS FIVE FOR THE MULTIPLE

16  COUNT ADJUSTMENT.

17       AND I KNOW THIS IS SOMETHING ON WHICH THE PARTIES

18  ARE NOT IN AGREEMENT.  I THINK THE GOVERNMENT AGREES WITH

19  PROBATION, BUT THE DEFENSE DISAGREES.

20       THEN, THE NEXT CATEGORY IS THE CAREER OFFENDER,

21  CRIME LIKELIHOOD, ARMED CAREER CRIMINAL.  BUT I THINK THE

22  APPLICABLE ONE IS THE REPEAT SEX OFFENDER, AND THERE'S AN

23  ADDITIONAL FIVE, AND I THINK THERE IS A DISAGREEMENT OVER

24  WHETHER THAT'S APPROPRIATE.

25       ACCEPTANCE OF RESPONSIBILITY, A MINUS THREE.

1        THE TOTAL OFFENSE LEVEL THEN, 39, WITH A CRIMINAL

2   HISTORY CATEGORY OF 1, GUIDELINE RANGE OF 262 TO 327 MONTHS,

3   AND THEN SUPERVISED RELEASE TWO YEARS TO LIFE, AND THE FINE

4   25,000 TO 250,000.

5        AND THE PROBATION OFFICER RECOMMENDS THAT THE

6   COURT SENTENCE, I BELIEVE, AT THE HIGH END OF THE GUIDELINE

7   RANGE, WHICH IS 327.

8        I BELIEVE THE GOVERNMENT AGREES WITH THAT, BUT THE

9   DEFENDANT CALCULATES OR ASKS THAT THE SENTENCE BE NOT MORE

10  THAN 120 MONTHS.

11       AND THE 120-MONTH SENTENCE, I THINK, IS THE

12  SENTENCE THAT WAS ACTUALLY IMPOSED BY JUDGE TAKASUGI.

13       BUT AS THE PARTIES INDICATED AND AS THE CIRCUIT

14  INDICATES, THE JUDGE DID NOT INDICATE HOW HE CALCULATED THE

15  GUIDELINES TO GET TO THAT SENTENCE, AND SO I THINK EVERYBODY

16  AGREED THE CIRCUIT COUNSELED THAT THE CASE MAY BE RETURNED

17  TO THIS COURT FOR RESENTENCING, AND SO THAT'S WHERE WE ARE.

18       SO IN PROBATION'S CALCULATIONS, THERE IS A

19  FOUR-LEVEL ENHANCEMENT FOR VULNERABLE VICTIMS.  AND I THINK

20  THE GOVERNMENT AGREES THAT THAT'S APPROPRIATE, BUT THE

21  DEFENSE BELIEVES IT ISN'T;

22       AND THEN A TWO-LEVEL ENHANCEMENT FOR USING A MINOR

23  TO COMMIT THE OFFENSE; A FIVE-LEVEL ENHANCEMENT BECAUSE THE

24  OFFENSE INVOLVED MORE THAN ONE MINOR; AND A FIVE-LEVEL

25  ENHANCEMENT BECAUSE OF A PATTERN OF SEXUAL MISCONDUCT.

```
 1              SO THE FACTORS ON WHICH THERE IS AN AGREEMENT --

 2   IT'S THE BASE OFFENSE LEVEL, WHICH IS 24; THE COMMERCIAL SEX

 3   ACTIVITY SENTENCING FACTOR IN 2G1.3B(4), THE TWO LEVELS, I

 4   THINK YOU BOTH AGREE, AND THEN, OF COURSE, THE ACCEPTANCE OF

 5   RESPONSIBILITY, THE MINUS THREE, YOU BOTH AGREE.

 6              SO AS FAR AS THE VULNERABLE VICTIM SENTENCING

 7   FACTOR -- AND SO THESE WOULD BE TENTATIVE -- AND THE USE OF

 8   A MINOR TO COMMIT THE CRIME, MY TENTATIVE WOULD BE THAT THE

 9   APPLICABLE GUIDELINE FOR USE OF THE MINOR DOES APPLY TO THE

10   SENTENCING.  THIS IS 3B1.4.  IT WOULD INCREASE BY TWO

11   LEVELS, AND MY TENTATIVE WOULD BE TO INCREASE BY TWO LEVELS

12   FOR THAT FACTOR.

13              THE VULNERABLE VICTIM, THE GUIDELINE SECTION IS

14   3A1.1B(1) AND 3A1.1B(2), AND THE COURT FINDS THAT THAT IS

15   APPLICABLE AND WOULD INCREASE THE FOUR LEVELS.

16              SO I'M GOING TO APPLY THAT.

17              THE NEXT ISSUE, THE MULTIPLE COUNT ADJUSTMENT,

18   WHAT APPLIES, WHAT DOESN'T APPLY.  AND THIS IS ONE THAT I AM

19   GOING TO ASK THE PARTIES TO ADDRESS.

20              MY TENTATIVE ON THIS ONE IS TO....

21              FIRST, LET ME INDICATE TO THE PARTIES, INCLUDED IN

22   RELEVANT CONDUCT, THE COURT WOULD INCLUDE THE CHARGED BUT

23   DISMISSED COUNTS AS FAR AS RELEVANT CONDUCT IS CONCERNED.

24              THEN THE COURT LOOKS AT THE VARIOUS VICTIMS.

25              SO I BELIEVE WE HAVE DOES "A" AND "C" THROUGH "F."
```

1    AND PROBATION HAS TREATED THOSE AS SEPARATE COUNTS OF

2    CONVICTION AND HAS PLACED THOSE OFFENSES IN SEPARATE GROUPS

3    AND THEN DETERMINED THE OFFENSE LEVEL FOR EACH OF THE

4    SEPARATE GROUPS.

5            THE DEFENDANT'S ARGUMENT IS THE APPLICATION OF THE

6    FIVE LEVELS IS A VIOLATION OF THE SIXTH AMENDMENT RIGHT TO

7    CONFRONTATION.

8            THE GOVERNMENT'S POSITION THAT THE DEFENDANT'S

9    PROHIBITED SEXUAL CONDUCT WITH DOES C, D, E, AND F, AS

10   CHARGED IN THE FIRST SUPERSEDING INDICTMENT, BUT

11   SUBSEQUENTLY DISMISSED FOLLOWING THE DEFENDANT'S GUILTY

12   PLEA, IS ALSO RELEVANT CONDUCT.

13           SO A REVIEW OF SECTION 3D1.2 PERMITS GROUPING OF

14   CLOSELY RELATED COUNTS, AND THERE ARE FOUR SUBPARTS TO THAT,

15   (A) THROUGH (D) (READING:)

16       *"(A) WHEN COUNTS INVOLVE THE SAME VICTIM, THE SAME ACT,*

17       *OR TRANSACTION."*

18           AND FOR PURPOSES OF THAT, I THINK THE VICTIM THAT

19   WE'RE TALKING ABOUT IS DOE A.

20       *"(B) WHEN COUNTS INVOLVE THE SAME VICTIM AND TWO OR*

21       *MORE ACTS OR TRANSACTIONS CONNECTED BY A COMMON*

22       *CRIMINAL OBJECTIVE OR CONSTITUTING PART OF A COMMON*

23       *SCHEME OR PLAN."*

24           AND, AGAIN, I THINK FOR THAT ONE, THE VICTIM THAT

25   WE'RE TALKING ABOUT IS A.

1          AND SO THE NEXT TWO ARE THE ONES THAT I HAVE MORE

2     DIFFICULTY WITH (READING:)

3          *"(C) WHEN ONE OF THE COUNTS EMBODIES CONDUCT THAT IS*

4          *TREATED AS A SPECIFIC OFFENSE CHARACTERISTIC IN, OR*

5          *OTHER ADJUSTMENT TO, THE GUIDELINE APPLICABLE TO*

6          *ANOTHER OF THE COUNTS."*

7          I JUST DON'T KNOW IF THAT APPLIES.  AND IF IT DOES

8     APPLY, IS THERE EVIDENCE IN THIS RECORD TO SUPPORT IT, AND

9     (READING:)

10         *"(D) WHEN THE OFFENSE LEVEL IS DETERMINED LARGELY ON*

11         *THE BASIS OF THE...."*

12         AND I THINK WHAT'S APPLICABLE, IF APPLICABLE AT ALL

13         HERE --

14         *"....OFFENSE BEHAVIOR THAT'S ONGOING OR CONTINUANCE IN*

15         *NATURE AND THE OFFENSE GUIDELINE IS WRITTEN TO COVER*

16         *SUCH BEHAVIOR."*

17         AND MY QUESTION AND WHAT I WANT YOU TO ADDRESS IS

18    DOES THAT APPLY?  AND IF SO, IS THERE EVIDENCE IN THE RECORD

19    TO SUPPORT IT?

20         IF (C) AND (D) DO NOT APPLY, THEN WE'RE LEFT ONLY

21    WITH DOE A.

22         SO THE COURT WOULD FIND THAT THE CHARGES RELATING

23    TO DOE A, COUNTS 1 THROUGH 3, WHICH WERE CHARGED AND

24    DISMISSED, AND COUNT 4 TO WHICH THE DEFENDANT PLED GUILTY,

25    CAN BE GROUPED PURSUANT TO 3D1.2(B).

```
 1            NOW, THESE COUNTS ALL INVOLVE DOE A.  THEY ARE

 2    CONNECTED BY A COMMON SCHEME OR PLAN, AT LEAST IN THE

 3    COURT'S POSITION, I WOULD SO FIND.

 4            BUT THE GROUPING OF DOE A COUNTS PERMITS THE COURT

 5    TO ADD ONE UNIT, BUT SECTION 3D1.4 PROVIDES THAT A ONE-UNIT

 6    ENHANCEMENT RESULTS IN NO INCREASE IN THE OFFENSE LEVEL.

 7            SO IF I'M LOOKING ONLY AT (A) AND (B) FOR THOSE

 8    FOUR CATEGORIES UNDER 3D1.2, THEN THE VICTIM IS DOE A, BUT

 9    THERE WOULD BE NO INCREASE UNDER THE GUIDELINES.

10            SO THE QUESTION IS CAN YOU GROUP THE CHARGE IN

11    DISMISSED COUNTS FOR THE OTHER VICTIMS, AND IF SO, WHAT IS

12    THE AUTHORITY OF DOING THAT AND WHAT IS THE EVIDENCE IN THE

13    RECORD THAT WOULD SUPPORT ARGUING THAT.

14            THE NEXT IS THE PATTERN OF ACTIVITY, AND PROBATION

15    HAS ADDED FIVE POINTS FOR THAT.

16            PROBATION BELIEVES IT APPLIES.  THE GOVERNMENT

17    BELIEVES IT APPLIES.  THE DEFENDANT DOESN'T BELIEVE IT

18    APPLIES IF MULTIPLE COUNT APPLIES.  BUT UNDER THE COURT'S

19    FINDINGS, I WOULD NOT BE MAKING THE ADJUSTMENT FOR MULTIPLE

20    COUNTS FOR THE REASON THAT I JUST INDICATED.

21            SO I WOULD ADD THE FIVE ADDITIONAL POINTS UNDER

22    THE PATTERN OF ACTIVITY.

23            SO THAT WOULD BE TENTATIVELY THE COURT'S FINDING.

24            I DON'T THINK IT INVOLVES DOUBLE COUNTING.  SO I'M

25    NOT ACTUALLY FINDING THAT I WOULD BE PRECLUDED BECAUSE OF
```

1   DOUBLE COUNTING.

2            SO MY CALCULATIONS UNDER THE GUIDELINES WOULD BE

3   THE BASE OFFENSE LEVEL OF 24; THE COMMERCIAL SEX ACT, TWO

4   ADDITIONAL POINTS; THE USE OF THE MINOR, TWO ADDITIONAL

5   POINTS; THE VULNERABLE VICTIM, THE FOUR POINTS; FOR MULTIPLE

6   COUNT ADJUSTMENT, I WOULD NOT MAKE AN ADJUSTMENT; PATTERN

7   ACTIVITY, FIVE POINTS; ACCEPTANCE OF RESPONSIBILITY, A MINUS

8   THREE.

9            THE TOTAL OFFENSE LEVEL IS 34 WITH A CRIMINAL

10  HISTORY CATEGORY OF 1, AND THE GUIDELINE RANGE IS 151 TO 188

11  MONTHS.

12           SO THAT'S HOW I WOULD CALCULATE THE GUIDELINES.

13           WHETHER DEPARTURES UPWARD, DOWNWARD, THE PARTIES

14  WILL ADDRESS THAT; BUT THAT WOULD BE MY CALCULATIONS OF THE

15  GUIDELINES FOR THE REASONS THAT I HAVE INDICATED.

16           SO THOSE WOULD BE THE TENTATIVE FINDINGS I WOULD

17  MAKE, AND SO THE PARTIES MAY ADDRESS THAT.

18           I THINK THIS IS A PROPER TIME, THEN, TO PERMIT YOU

19  TO BE HEARD.

20           THERE ARE OTHER ISSUES WITH CONDITIONS OF

21  SUPERVISED RELEASE THAT WE CAN DISCUSS LATER AFTER WE GO

22  THROUGH THE GUIDELINE CALCULATION.

23           SO WHY DON'T I START WITH THE GOVERNMENT.

24           OBVIOUSLY, THE COURT IS NOT MAKING THE ADJUSTMENT

25  FOR MULTIPLE COUNTS.  THE GOVERNMENT THINKS THAT THAT IS

1    APPROPRIATE.

2            SO THE GOVERNMENT MAY WANT TO ADDRESS THAT AND

3    ATTEMPT TO RESPOND TO THE GUIDELINE THAT I THINK IS

4    APPLICABLE, 3D1.2, AND ADDRESS HOW DOES THE COURT INCLUDE

5    WHAT IS THE EVIDENCE THAT SUPPORTS IT, WHAT'S THE GUIDELINE

6    SUBSECTION THAT PERMITS IT, THE OTHER VICTIMS, VICTIMS DOES

7    I BELIEVE C, D, E, AND F.

8            SO I'LL LET THE GOVERNMENT BE HEARD FIRST.

9            AND IF THERE ARE ANY QUESTIONS BASED UPON THE

10   COURT'S TENTATIVE FINDINGS, JUST ASK THOSE, AND HOPEFULLY I

11   CAN EXPLAIN.

12                       *(PAUSE.)*

13       **MS. PEACE GARNETT:**  ONE MOMENT, YOUR HONOR.

14       **THE COURT:**  SO IT'S THE MULTIPLE COUNT ADJUSTMENT,

15   AND THE COURT HAS NOT INCREASED FOR MULTIPLE COUNT

16   ADJUSTMENT.

17           THE GUIDELINE THAT I THINK IS APPLICABLE THAT

18   DEALS WITH THE GROUPING IS THE 3D1.2, AND IT HAS THE

19   SUBPARTS A, B, C, AND D.

20           AND TENTATIVELY MY FINDING IS C AND D ARE NOT

21   APPLICABLE OR THERE'S NO EVIDENCE TO SUPPORT C AND D.

22           SO THAT'S THE PLACE WHERE I WOULD ASK THE

23   GOVERNMENT TO START.

24       **MS. PEACE GARNETT:**  OKAY, YOUR HONOR.

25           AS TO THE MULTIPLE COUNT ADJUSTMENT, IT'S THE

1    GOVERNMENT'S POSITION THAT BOTH COUNT 4 AND COUNT 10 INCLUDE

2    THE VICTIMS THAT WERE THE SUBJECTS OF THE DISMISSED COUNTS.

3           THE GOVERNMENT BELIEVES IT'S APPROPRIATE TO GROUP

4    THOSE COUNTS UNDER 3D1.2(B) FORMAT, WHICH PROVIDES WHEN

5    COUNTS INVOLVE THE SAME VICTIM AND TWO OR MORE ACTS OR

6    TRANSACTIONS CONNECTED BY A COMMON CRIMINAL OBJECTIVE OR

7    CONSTITUTING PART OF A COMMON SCHEME OR PLAN.

8           I'LL START WITH COUNT 10, FIRST.

9           COUNT 10 CHARGES TRAVELING TO THAILAND TO ENGAGE

10   IN SEX WITH MINORS OVER THE COURSE OF -- IT ACTUALLY CHARGES

11   DATES, AND LET ME JUST -- I APOLOGIZE, BUT I HAVE TO JUMP

12   AROUND IN MY NOTES A LITTLE BIT.

13          BUT THE DATES THAT ARE CHARGED ARE FROM

14   APPROXIMATELY OCTOBER 24, 2004, TO DECEMBER 19, 2004; AND

15   THAT IS WHAT DEFENDANT PLED GUILTY TO IN COUNT 10.

16          DURING THAT TIME PERIOD, DEFENDANT ENGAGED IN

17   ILLICIT SEXUAL CONDUCT WITH JOHN DOES C THROUGH F, AND WE

18   SHOWED IN OUR PAPERS SPECIFIC JOURNAL ENTRIES WHERE HE

19   REFERENCES ENGAGING IN CONDUCT WITH THOSE MINORS.

20          WE BELIEVE IT'S RELEVANT CONDUCT AS TO COUNT 10.

21   AND I WOULD ALSO WANT TO POINT OUT TO THE COURT THAT 1B1.1,

22   FOR RELEVANT CONDUCT -- OR 1B1.3 ALLOWS CONSIDERATION OF

23   DISMISSED COUNTS AS PART OF RELEVANT CONDUCT.

24          **THE COURT:**  I DON'T HAVE AN ISSUE WITH THAT.

25          **MS. PEACE GARNETT:**  OKAY.  ALL RIGHT.

*JULY 30, 2010*

1          AND I WOULD ALSO LIKE TO POINT OUT THAT, AS TO THE

2   DEFENDANT'S CONSTITUTIONAL ARGUMENT, THAT THE DEFENDANT

3   NEGOTIATED A PLEA WITH THE GOVERNMENT WHERE IN PARAGRAPH

4   16(B) HE SPECIFICALLY ACKNOWLEDGED THAT THE COURT COULD

5   CONSIDER THE DISMISSED COUNTS IN CALCULATING THE GUIDELINES

6   RANGE.

7          SO UNDER CHAPTER III, PART D, AS TO COUNT 10, IT

8   SHOULD INCLUDE THE MINOR VICTIMS UNDER 3D1.2(B) FORMAT.

9          **THE COURT:**  AND SO DO YOU AGREE THAT (C) AND (D)

10  UNDER 3D1.2 DON'T APPLY?

11         **MS. PEACE GARNETT:**  I DON'T AGREE, BECAUSE UPON A

12  READING OF 3D1.2(D), IT ALSO CONTEMPLATES BEHAVIOR THAT IS

13  ONGOING OR CONTINUOUS IN NATURE.

14         AND, AGAIN, THE WAY THAT WE CHARGED COUNT 10 WAS

15  THAT HE TRAVELED DURING A SPECIFIED TIME PERIOD, AND DURING

16  THAT TIME PERIOD, HE ENGAGED IN ILLICIT SEXUAL CONDUCT WITH

17  MINORS, AND THAT'S WHAT HE PLED GUILTY TO.  HE TRAVELED

18  DURING THE TIME PERIOD, AND DURING THAT TIME PERIOD HE HAD

19  SEX WITH MINORS, PLURAL.

20         **THE COURT:**  AND THE TIME PERIOD WE'RE REFERRING TO

21  IS OCTOBER 24, 2004, THROUGH DECEMBER 19, 2004.

22         **MS. PEACE GARNETT:**  CORRECT, YOUR HONOR.

23         AND, IN FACT, WE SPECIFICALLY ASKED JOHN DOES C,

24  D, E, F -- WE POINTED OUT IN THE DECLARATION OF GARY KIERNAN

25  THAT HE, THE DEFENDANT, COLLECTED INDEX CARDS WHERE HE

1    DETAILED ON A SPECIFIC DATE --

2            DOES THE COURT HAVE THE AMENDED DECLARATION OF

3    GARY KIERNAN?

4            **THE COURT:**  OH, YES.

5            **MS. PEACE GARNETT:**  IF I COULD JUST WALK THE COURT

6    THROUGH IT JUST A LITTLE BIT, I'LL SHOW YOU WHAT I'M TALKING

7    ABOUT.

8            **THE COURT:**  OKAY.  LET ME JUST GET IT.

9            SO I HAVE THE DECLARATION WITH THE EXHIBITS

10   ATTACHED THAT WAS FILED 9/7/07, AND THEN I HAVE THE AMENDED

11   EXHIBITS A THROUGH U THAT WERE PREVIOUSLY FILED AS

12   ATTACHMENTS, AND THIS WAS FILED NOVEMBER 20TH OF 2009.

13           SO WHICH OF THE TWO DOCUMENTS ARE YOU REFERENCING?

14           **MS. PEACE GARNETT:**  THE AMENDED EXHIBITS BECAUSE

15   THE AMENDED EXHIBITS CONTAIN BATES STAMPS.  SO I CAN DIRECT

16   YOU TO A PARTICULAR EXHIBIT AS WELL AS A PAGE NUMBER WHERE I

17   CAN POINT THINGS OUT.

18           **THE COURT:**  OKAY.

19           **MS. PEACE GARNETT:**  SO IF I COULD DRAW THE COURT'S

20   ATTENTION TO EXHIBIT "O," PAGE 107.

21           **THE COURT:**  THE ONLY THING THAT MAKES IT A LITTLE

22   BIT MORE DIFFICULT TO FIND IS THAT IT DOESN'T HAVE THE TABS.

23           **MS. PEACE GARNETT:**  OH, I APOLOGIZE.  MINE DOES.

24   I'M SORRY ABOUT THAT.

25           **THE COURT:**  OKAY.  LET'S SEE.

*JULY 30, 2010*

```
 1              IT'S EXHIBIT" O"?

 2         MS. PEACE GARNETT:  YES, PAGE 107.

 3         THE COURT:  107.

 4         AND ARE THE PAGE NUMBERS AT THE BOTTOM OR THE TOP?

 5         MS. PEACE GARNETT:  THE VERY BOTTOM.

 6         THE COURT:  I HAVE 107.

 7         MS. PEACE GARNETT:  I HIGHLIGHTED PORTIONS OF 107

 8    ON ALL OF THE COPIES.

 9         THE COURT:  RIGHT.  I SEE IT.  WHAT'S HIGHLIGHTED

10    MAKES A REFERENCE TO A YOUNGSTER, THE AGE.

11         MS. PEACE GARNETT:  BOY, JOY, AND KAY, WHICH ARE

12    JOHN DOES E, D, AND C, RESPECTIVELY.

13         THIS IS A LEDGER THAT WAS KEPT BY THE DEFENDANT.

14    THIS IS WHAT IT LOOKS LIKE IN REAL LIFE, YOUR HONOR.  I'M

15    HOLDING IT UP.  WHAT YOU HAVE IS A COPY (INDICATING.)

16         BUT THIS HE KEPT, BY YEAR, HIS SEXUAL EXPLOITATION

17    OF THE BOYS, HOW MUCH HE PAID THE BOYS FOR THINGS SUCH AS

18    TIPS AND TAXI AND THAT SORT OF THING.  HE KEPT INDEX CARDS

19    WHERE HE DID EXACTLY THE SAME THING.

20         SO UNDER NOVEMBER, 2004, YOU SEE THIS NOTATION,

21    "BOY, JOY, AND KAY, 14 YEARS OLD."  THAT'S HOW OLD KAY WAS.

22    "11/7," THAT REFERS TO NOVEMBER 7TH, 2004, WHICH IS IN THE

23    TIME PERIOD THAT WE CHARGED IN COUNT 10.

24         AND THEN IT SAYS HE PAID 600, WHICH IS 200 BAHT,

25    WHICH IS ABOUT $5, FOR EACH BOY THAT HE HAD SEX WITH, PLUS
```

```
1    60 IN TIPS, PLUS 100 IN TAXI, ET CETERA.  OKAY.

2         I'LL DIRECT THE COURT'S ATTENTION TO DECEMBER,

3    2004, WHERE IT REFERS TO BOY 3 OR "EM III" ON 12/19/2004,

4    WHICH THAT'S THE END OF THE TIME PERIOD THAT WE CHARGED IN

5    COUNT 10.  AND IN THAT INSTANCE, HE PAID THE TWO BOYS 200

6    BAHT EACH AND 170 FOR TAXIS.

7         NOW, THIS INFORMATION IS CONTAINED IN THE LEDGER.

8         IF I COULD DIRECT THE COURT'S ATTENTION TO EXHIBIT

9    "F," WHICH IS ON PAGE 33.

10                        (PAUSE.)

11        MS. PEACE GARNETT:  I'VE ALSO HIGHLIGHTED THE

12   JOURNAL ENTRY THAT HE KEPT.

13        THE COURT:  SO THIS IS IN HIS HANDWRITING.

14        MS. PEACE GARNETT:  YES.

15        I'LL SHOW YOU WHAT THE JOURNAL ENTRIES LOOK LIKE

16   IN REAL LIFE, SINGLE SPACED, DOUBLE PAGES, WHERE HE KEPT

17   APPROXIMATELY 50 JOURNALS DETAILING HIS SEXUAL EXPLOITS WITH

18   THESE MINORS.

19        AND WHAT EXHIBIT "F" ON PAGE 33 REFERS TO IS THE

20   ACTUAL SEX ACTS HE COMMITTED WITH BOY, JOY, AND KAY.

21        THE COURT:  SAME BOYS THAT WERE REFERENCED AT PAGE

22   107?

23        MS. PEACE GARNETT:  YES.

24        JUST TO GIVE YOU AN EXCERPT, IN THE JOURNAL

25   ENTRY -- IT STARTS ON THE 6TH, BUT IT GOES OVER UNTIL
```

```
 1   NOVEMBER 7TH, '04.  HE SAYS (AS READ:)
 2        "I GOT OFF IN THE REGULAR SPOT TOWARDS THE CORNER.
 3        AGAIN, THE BOYS SEEMED TO BE CONGREGATING CLOSER TO THE
 4        CORNER AND WERE IN THE STREET WORKING."
 5             HE TALKS ABOUT HAVING JOY, BOY, AND KAY, BRINGING
 6   THEM BACK TO HIS HOUSE AND ENGAGING IN SEX ACTS WITH THEM.
 7             AND HE ALSO TALKS ABOUT -- I MAY HAVE GOTTEN THIS
 8   WRONG.  THIS MIGHT BE EM III THAT I'M REFERRING TO, BUT WHAT
 9   I'M TRYING TO SHOW THE COURT IS THE DEFENDANT IN HIS
10   JOURNALS TALKS ABOUT WHAT HE DID.  HE KEEPS A RECORD OF WHAT
11   HE DID.
12             IN HIS JOURNALS, HE GIVES YOU THE DETAILS OF WHAT
13   HE DID, AND THEN THERE ARE ALSO CORRESPONDING PHOTOGRAPHS.
14   HE TALKED ABOUT TAKING PHOTOGRAPHS OF JOY, BOY, AND KAY
15   INDIVIDUALLY AND COLLECTIVELY AS A GROUP.
16             AND IF I COULD TURN THE COURT'S ATTENTION TO
17   EXHIBIT "T," AT PAGE 154.
18             THE COURT:  PAGE NUMBER AGAIN?
19             MS. PEACE GARNETT:  154.
20             THE COURT:  154.  I HAVE THAT.
21             MS. PEACE GARNETT:  EXHIBIT "T" DEPICTS ONE OF THE
22   PHOTOGRAPHS THAT HE TOOK OF JOY, BOY, AND KAY.  THIS
23   PHOTOGRAPH WAS SHOWN TO EACH ONE OF THESE VICTIMS, AND THEY
24   IDENTIFIED THEMSELVES UNDERNEATH THEIR PARTICULAR PHOTO.
25             SO THIS PHOTO CORROBORATES HIS JOURNAL ENTRY, IT
```

1   CORROBORATES THE INDEX CARDS, AND IT ALSO CORROBORATES HIS

2   LEDGER THAT HE KEPT ABOUT THE TRANSACTIONS THAT HE HAD IN

3   2004.

4            AND, AGAIN, THIS ENTIRE TRANSACTION OR ACT OF

5   SEXUAL EXPLOITATION OCCURRED WITHIN COUNT 10, WITHIN THE

6   TIME FRAME OF COUNT 10.

7            THE SAME IS TRUE FOR JOHN DOE F, WHO ALSO GOES BY

8   THE NAME OF EM III.  YOU HAVE JOURNAL ENTRIES, YOU HAVE A

9   LEDGER, AND YOU HAVE SPECIFIC DETAILS OF WHAT HE DID WITHIN

10  THE TIME FRAME OF COUNT 10.

11           SO AS TO COUNT 10, IT'S THE GOVERNMENT'S POSITION

12  THAT IT IS RELEVANT CONDUCT AND THAT THE FOUR BOYS WHO

13  DEFENDANT EXPLOITED DURING THE TIME FRAME OF COUNT 10 SHOULD

14  BE CONSIDERED EACH AS IF THEY WERE CHARGED IN THE SEPARATE

15  COUNT.  AND, IN FACT, THEY WERE CHARGED IN SEPARATE COUNTS,

16  THE DISMISSED COUNTS THAT DEFENDANT AGREED PURSUANT TO THE

17  PLEA AGREEMENT THAT COULD BE TAKEN INTO ACCOUNT BY THIS

18  COURT.

19           AS TO COUNT 4, COUNT 4 INVOLVED JOHN DOE A.  AND

20  JOHN DOE A WAS USED BY MR. PROWLER TO BRING OVER JOHN DOE B

21  ON MAY 10, 2005; ON THE EVENING BEFORE MAY 10TH --

22           **THE COURT:**  AND THE FACT THAT THE COURT HAS

23  ALREADY INDICATED TENTATIVELY THE USE OF THE MINOR, I WOULD

24  INCREASE FOR THAT.  SO I THINK THE CONDUCT THAT YOU'RE GOING

25  TO DESCRIBE IS THAT CONDUCT BACK AND FORTH.

1          **MS. PEACE GARNETT:**  YES, IS THAT CONDUCT.

2          **THE COURT:**  ALL RIGHT.

3          **MS. PEACE GARNETT:**  WHAT HAPPENED ON MAY 10 WAS

4    THAT JOHN DOE A CONTACTED MR. PROWLER AND SAID, YOU KNOW, I

5    HAVE THIS BOY, AND HE'S GOING TO BRING HIM OVER.  AND IN

6    DEFENDANT'S OWN ADMISSIONS, WHICH ARE REFERENCED IN THE

7    P.S.R., DEFENDANT KNEW THAT THIS MEANT THAT HE WAS GOING TO

8    HAVE SEX WITH THE BOY.

9          THERE IS A HISTORY BETWEEN DEFENDANT AND JOHN

10   DOE A, WHO IS KNOWN AS "JACK," WHERE DEFENDANT COERCED JACK

11   TO BRING YOUNGER BOYS FOR HIM TO HAVE SEX WITH.  THE COURT

12   HAS ALREADY FOUND USE, BUT THERE ARE VARIOUS JOURNAL ENTRIES

13   OVER TIME WHERE HE WAS ASKING JOHN DOE A TO BRING BOYS.

14         AND JOHN DOE A BROUGHT ANOTHER BOY PRIOR TO THIS

15   INCIDENT BY THE NAME OF -- I BELIEVE IT WAS DTON THAT

16   DEFENDANT HAD SEX WITH A COUPLE OF TIMES.

17         AND ON MAY 10, 2005, WHICH IS CHARGED IN COUNT 4,

18   JOHN DOE A BROUGHT JOHN DOE B.  COUNT 4 INVOLVES JOHN DOE A

19   AND JOHN DOE B.

20         JOHN DOE B WAS THE SUBJECT OF A GUILTY PLEA BY

21   DEFENDANT IN THAILAND.  HE WAS SENTENCED TO TWO YEARS.  HE

22   SERVED ONE YEAR FOR THAT OFFENSE.  THERE'S NO DISPUTE THAT

23   HE ACTUALLY COMMITTED THAT CONDUCT BECAUSE HE PLED GUILTY TO

24   IT.

25         SO IT'S THE GOVERNMENT'S POSITION IT'S RELEVANT

1    CONDUCT AS TO COUNT 4 BECAUSE THIS WAS A CONTINUOUS

2    TRANSACTION; IT OCCURRED WITH BOTH BOYS.  DEFENDANT ADMITTED

3    ON THE DAY OF HIS ARREST THAT HE HAD HAD SEX WITH BOTH BOYS.

4          BOTH BOYS WERE INTERVIEWED BY THE ROYAL THAI

5    POLICE AND ADMITTED HAVING SEX WITH DEFENDANT AND IDENTIFIED

6    DEFENDANT.  DEFENDANT IDENTIFIED THEM.  SO THERE'S NO

7    DISPUTE THAT COUNT 4 INVOLVED TWO MINORS.

8          **THE COURT:**  SO LET ME JUST ASK A COUPLE OF

9    QUESTIONS.

10          SO IF WE LOOK AGAIN AT 3D1.2 AND WE LOOK AT THOSE

11    VARIOUS SUBPARTS.  SO A, WHICH IS ONE THAT YOU THINK IS

12    APPLICABLE FOR PURPOSES OF THIS DISCUSSION, MULTIPLE COUNTS.

13    AM I CORRECT?

14          **MS. PEACE GARNETT:**  YES.

15          **THE COURT:**  AND SO WHO IS THE VICTIM THAT WE'RE

16    REFERRING TO IN A?

17          **MS. PEACE GARNETT:**  JOHN DOE A.

18          **THE COURT:**  AND THEN B, I THINK YOU BELIEVE IS

19    APPLICABLE.

20          **MS. PEACE GARNETT:**  YES.

21          **THE COURT:**  AND SO WHO IS THE VICTIM THAT WE'RE

22    REFERRING TO IN B?

23          **MS. PEACE GARNETT:**  JOHN DOE A AS WELL.

24          **THE COURT:**  THEN YOU BELIEVE THAT D IS APPLICABLE

25    BECAUSE THE BEHAVIOR IS ONGOING OR CONTINUOUS IN NATURE AND

```
 1   THE OFFENSE GUIDELINE IS WRITTEN TO COVER SUCH BEHAVIOR --

 2          MS. PEACE GARNETT:  CORRECT.

 3          THE COURT:  -- AND YOU'VE ARTICULATED THE EVIDENCE

 4   TO SUPPORT THAT.

 5          AND SO THE QUESTION IS WHO ARE THE VICTIMS IN B,

 6   IF WE'RE LOOKING AT VICTIMS AS OPPOSED TO JUST CONDUCT?

 7          MS. PEACE GARNETT:  I WOULD SAY ALL OF THE MINORS,

 8   JOHN DOES A THROUGH F, ARE THE VICTIMS IN B.

 9          THE COURT:  OKAY.  ANYTHING ELSE THAT YOU WISH TO

10   PLACE ON THE RECORD TO SUPPORT YOUR POSITION AS TO WHY THE

11   COURT SHOULD INCLUDE THE FIVE ADDITIONAL POINTS, AS

12   PROBATION HAS, FOR THE MULTIPLE COUNTS?

13          MS. PEACE GARNETT:  ONE MOMENT, YOUR HONOR.

14          NO, YOUR HONOR.

15          THE COURT:  NOW, LET ME HEAR FROM THE DEFENSE.

16          I BELIEVE YOUR POSITION ON THIS IS THE COURT

17   SHOULD NOT ADD THE ADDITIONAL FIVE POINTS FOR MULTIPLE

18   COUNTS, AND I BELIEVE THAT YOU'RE PROBABLY LOOKING AT THE

19   SAME GUIDELINE SECTION AND THE SAME SUBPARTS.

20          SO LET ME HEAR YOU AS TO WHY YOU THINK THAT IS NOT

21   APPLICABLE.

22          MR. DYBWAD:  THAT IS CORRECT, YOUR HONOR, THAT WE

23   DO NOT BELIEVE IT IS APPLICABLE.

24          BASED ON THE COURT'S COMMENTS TODAY, I THINK

25   FOCUSING ON SUBPART C OF 3D1.2, ONE OF --
```

1          **THE COURT:**  I WASN'T LOOKING AT C.  I SAID C

2    DOESN'T SEEM TO BE APPLICABLE.  I THINK GOVERNMENT DIDN'T

3    FOCUS ON C.  THE GOVERNMENT THINKS THAT THE APPLICABLE

4    SUBPARTS ARE A, B, AND D.

5          **MR. DYBWAD:**  IN SHORT, YOUR HONOR, ONE OF THE

6    GROUPS TAKES INTO ACCOUNT AN ENHANCEMENT BASED ON THE

7    PATTERN OF ACTIVITY INVOLVING ALL OF THE MINORS.  IN OTHER

8    WORDS, JOHN DOE A'S GROUP, WHICH I BELIEVE IS -- BY

9    PROBATION, THE LARGEST GROUP, BOTH ENCAPSULATES ACTIVITY

10   REGARDING JOHN DOE B.

11         **THE COURT:**  OKAY.  SO WHICH IS THAT, THAT YOU ARE

12   REFERRING TO THAT YOU THINK ARE --

13         I THINK WHAT YOU'RE SAYING IS THAT ONE OF THE

14   CALCULATIONS HAS ALREADY INCLUDED THIS ACTIVITY?

15         **MR. DYBWAD:**  THAT'S WHAT I'M SAYING, YOUR HONOR.

16         **THE COURT:**  AND SO WHICH ONE, IF YOU LOOK AT

17   PROBATION'S CALCULATIONS, DO YOU BELIEVE ALREADY INCLUDES

18   THIS ACTIVITY?

19         **MR. DYBWAD:**  THE USE OF A MINOR ENHANCEMENT

20   INCLUDES THE ACTIVITY, AND THE PATTERN AND PRACTICE

21   FIVE-LEVEL ENHANCEMENT INCLUDES THIS ACTIVITY.

22         **THE COURT:**  AND SO IT'S YOUR POSITION THAT, IF THE

23   COURT THEN INCLUDES IT AGAIN UNDER D OF 3D1.2, THAT'S DOUBLE

24   COUNTING.

25         **MR. DYBWAD:**  THAT'S CORRECT.

*JULY 30, 2010*

```
 1              THE COURT:  IS THAT THE ARGUMENT?

 2          MR. DYBWAD:  THAT'S CORRECT, YOUR HONOR.

 3              THE COURT:  OKAY.  ANYTHING ELSE?

 4          MR. DYBWAD:  YOUR HONOR, IF I COULD BRIEFLY BE

 5    HEARD ON THE VULNERABLE VICTIM ENHANCEMENT, GIVEN THE

 6    COURT'S TENTATIVE?

 7              THE COURT:  DON'T TAKE ME THERE YET.  LET ME TRY

 8    TO RESOLVE THIS IN MY OWN MIND.  CERTAINLY THAT'S WHY I

 9    ARTICULATED THE TENTATIVES BECAUSE I WANTED TO GIVE BOTH

10    SIDES AN OPPORTUNITY TO BE HEARD BASED ON THE TENTATIVE, AND

11    THEN LATER I WILL GO THROUGH THE ACTUAL SENTENCE THAT I'M

12    GOING TO IMPOSE.

13              MR. DYBWAD:  UNDERSTOOD, YOUR HONOR.

14          AT THIS POINT, I'LL SIT DOWN.

15              THE COURT:  ALL RIGHT.

16          SO THE GOVERNMENT MIGHT WANT TO ADDRESS, THEN IT

17    SOUNDS LIKE WHAT DEFENDANT'S ARGUMENT IS, IS TO ENHANCE FOR

18    D OR PURSUANT TO D, ONGOING CONDUCT, THAT THAT'S ALREADY

19    BEEN CALCULATED IN AND THEREFORE WOULD CONSTITUTE DOUBLE

20    COUNTING.

21          SO I'LL LET YOU ADDRESS THAT.

22              MS. PEACE GARNETT:  THE DOUBLE COUNTING ISSUE?

23              THE COURT:  WELL, I THINK THAT'S ALL DEFENSE IS

24    SAYING.  HE'S SAYING DON'T ENHANCE FOR MULTIPLE -- DON'T

25    MAKE A MULTIPLE COUNT ADJUSTMENT BECAUSE THE COURT HAS
```

```
 1   ALREADY OR AT LEAST PROBATION, IN ITS CALCULATION, HAS

 2   ALREADY MADE THE ADJUSTMENT FOR THE VERY SAME ACTIVITY THAT

 3   YOU ARE IDENTIFYING THAT WOULD SUPPORT THE MULTIPLE COUNT

 4   ADJUSTMENT.

 5        I THINK THAT'S WHAT DEFENDANT IS SAYING, AND SO

 6   ULTIMATELY WHAT THAT COMES DOWN TO IS DOUBLE COUNTING.

 7        SO I'M JUST GIVING YOU AN OPPORTUNITY TO ADDRESS

 8   WHY DOES THAT ARGUMENT NOT APPLY; WHY IS IT NOT DOUBLE

 9   COUNTING; OR IF IT IS DOUBLE COUNTING, IS IT APPROPRIATE.

10        MS. PEACE GARNETT:  WHY IS IT NOT DOUBLE COUNTING

11   TO TAKE INTO ACCOUNT JOHN DOES A THROUGH F UNDER THE

12   MULTIPLE COUNT ADJUSTMENT?

13        THE COURT:  I BELIEVE THAT'S THE ARGUMENT THE

14   DEFENSE IS MAKING, THAT THE REASON THAT THE COURT --

15        AND DEFENSE CERTAINLY IS CAPABLE OF MAKING HIS OWN

16   ARGUMENT.  SO IF I'M GETTING IT WRONG, YOU TELL ME.

17        BUT I BELIEVE WHAT DEFENSE IS SAYING, THE REASON

18   THE COURT DOES NOT MAKE AN ADJUSTMENT UNDER THE MULTIPLE

19   COUNT ADJUSTMENT, IN LOOKING AT THE CONDUCT THAT THE

20   GOVERNMENT RELIES UPON, WHICH IS THE ONGOING CONDUCT

21   INVOLVING ALL OF THE BOYS THAT YOU IDENTIFIED -- THAT THAT'S

22   ALREADY BEEN TAKEN INTO CONSIDERATION IN ENHANCING UNDER THE

23   USE OF A MINOR, AS WELL AS THE PATTERN OF ACTIVITY.

24        MS. PEACE GARNETT:  OKAY.  I WILL ADDRESS THAT

25   ISSUE.  I UNDERSTOOD THE DOUBLE COUNTING IN THE PAPERS TO BE
```

*JULY 30, 2010*

```
 1    SOMETHING A LITTLE BIT DIFFERENT.

 2            THE COURT:  MAYBE.

 3            BUT HAS THE COURT PROPERLY CHARACTERIZED THE

 4    DEFENSE'S POSITION?

 5            MR. DYBWAD:  YES, YOUR HONOR.

 6            THE COURT:  OKAY.

 7            MS. PEACE GARNETT:  SO MY RESPONSE WOULD BE THIS,

 8    YOUR HONOR.

 9            IT ISN'T DOUBLE COUNTING UNDER THE GUIDELINES

10    ITSELF, BECAUSE GUIDELINES SECTION 2G1.3(D) PROVIDES FOR A

11    SPECIAL INSTRUCTION WHICH SAYS (AS READ:)

12        "IF THE OFFENSE INVOLVED MORE THAN ONE MINOR" --

13            AND NOW WE'RE TALKING ABOUT COUNT 4 AND COUNT 10

14    THEN --

15        "CHAPTER THREE, PART D," I.E., "MULTIPLE COUNTS, SHALL

16        BE APPLIED AS IF THE PERSUASION, ENTICEMENT, COERCION,

17        TRAVEL" --

18            WHICH IS WHAT WE'RE TALKING ABOUT NOW --

19        "OR TRANSPORTATION TO ENGAGE IN A COMMERCIAL SEX ACT OR

20        PROHIBITED SEXUAL CONDUCT OF EACH VICTIM HAD BEEN

21        CONTAINED IN A SEPARATE COUNT OF CONVICTION."

22                (END OF QUOTED MATERIAL.)

23        MS. PEACE GARNETT:  SO MY RESPONSE WOULD BE IT'S

24    NOT DOUBLE COUNTING BECAUSE CONGRESS, IN FORMULATING THESE

25    GUIDELINES, DIDN'T CONSIDER IT TO BE DOUBLE COUNTING AND
```

*JULY 30, 2010*

```
1    SPECIFICALLY PROVIDED THAT AS TO THESE TYPES OF OFFENSES,

2    WHEN YOU'RE DEALING WITH MULTIPLE MINORS, EACH MINOR IS

3    SUPPOSED TO BE TREATED SEPARATELY.

4              I THINK WHERE I'M SORT OF GETTING CONFUSED HERE IS

5    THAT IT'S NOT JUST LOOKING AT CHAPTER 3, PART D, IN A

6    VACUUM.

7              I THINK YOU HAVE TO LOOK AT 2G1.3(D) FOR THE

8    SPECIAL INSTRUCTION TO SEE HOW WE ARE SUPPOSED TO TREAT

9    CHAPTER 3, PART D, THE MULTIPLE COUNT ADJUSTMENT.

10              AND THAT SECTION, 2G1.3(D), SPECIFICALLY STATES

11    THAT EACH MINOR IS SUPPOSED TO BE TREATED AS IF CONTAINED IN

12    A SEPARATE COUNT OF CONVICTION.

13              NOW, WHEN THE COURT LOOKS AT THE APPLICATION NOTE

14    FOR 2G1.3(D), IT ALSO STATES THAT THE MINORS THAT WE'RE

15    TALKING ABOUT DO NOT EVEN HAVE TO BE SPECIFICALLY STATED IN

16    THE INDICTMENT.  IT'S ENOUGH THAT WE POINT -- I'LL READ IT

17    JUST SO I DON'T MISQUOTE IT --

18              THE COURT:  BUT IN THIS CASE, ALL OF THESE MINORS

19    THAT WE'RE TALKING ABOUT WERE IDENTIFIED IN THE INDICTMENT.

20              MS. PEACE GARNETT:  YES.  THEY WERE NOT

21    IDENTIFIED -- MINORS C THROUGH F WERE NOT IDENTIFIED IN

22    COUNT 10, BUT THEY WERE IDENTIFIED IN COUNTS 6 THROUGH 9.

23              BUT, AGAIN, 2G1.3 PROVIDES THEY DO NOT HAVE TO BE

24    STATED IN COUNT 10, AND MINOR B DOES NOT HAVE TO BE STATED

25    IN COUNT 4, ALTHOUGH HE WAS THE SUBJECT OF COUNT 5, WHICH
```

1    WAS DISMISSED.

2              SO I THINK BEFORE YOU GET TO CHAPTER 3, PART D,

3    YOU HAVE TO GO TO 2G1.3(D) FOR THE SPECIAL INSTRUCTION THAT

4    SAYS EACH MINOR INVOLVED HERE, FOR PURPOSES OF RELEVANT

5    CONDUCT, HAS TO BE TREATED AS IF CONTAINED IN A SEPARATE

6    COUNT OF CONVICTION.

7              THEN FROM 2G1.3(D), IF THE COURT GOES TO THE

8    APPLICATION NOTE, IT SAYS (AS READ:)

9         *"FOR PURPOSES OF CHAPTER THREE, PART D, MULTIPLE*

10        *COUNTS, EACH MINOR TRANSPORTED, PERSUADED, INDUCED,*

11        *ENTICED, OR COERCED TO ENGAGE IN"* TRAVEL (SIC) EXCUSE

12        ME -- *"IN A COMMERCIAL SEX ACT OR PROHIBITED SEXUAL*

13        *CONDUCT IS TO BE TREATED AS A SEPARATE MINOR."*

14             CONSEQUENTLY, MULTIPLE --

15        **THE COURT:**  SEPARATE VICTIM.

16        **MS. PEACE GARNETT:**  SEPARATE MINOR.  IT SAYS,

17   "SEPARATE MINOR."

18             I'M READING FROM THE 2006 GUIDELINES, WHICH IS

19   WHAT PROBATION APPLIED.

20             CONSEQUENTLY, MULTIPLE COUNTS INVOLVING MORE THAN

21   ONE MINOR ARE NOT TO BE GROUPED TOGETHER UNDER 3D1.2.

22             IN ADDITION, SUBSECTION (D)(1) DIRECTS THAT

23   (AS READ:)

24        *"IF THE RELEVANT CONDUCT OF AN OFFENSE OF CONVICTION*

25        *INCLUDES TRAVEL OR TRANSPORTATION TO ENGAGE IN A*

1      *COMMERCIAL SEX ACT OR PROHIBITED SEXUAL CONDUCT IN*

2      *RESPECT TO MORE THAN ONE MINOR, WHETHER SPECIFICALLY*

3      *CITED IN THE COUNT OF CONVICTION, EACH SUCH MINOR SHALL*

4      *BE TREATED AS IF CONTAINED IN A SEPARATE COUNT OF*

5      *CONVICTION."*

6            THIS WAS THE BASIS FOR THE GOVERNMENT'S ARGUMENT

7      THAT EACH OF THE MINORS SHOULD BE TREATED SEPARATELY, AND I

8      BELIEVE THIS WAS ALSO THE BASIS OF PROBATION'S ARGUMENT THAT

9      EACH OF THE MINORS SHOULD BE TREATED SEPARATELY.

10            SO I DON'T THINK WE CAN GO DIRECTLY TO CHAPTER 3,

11     PART D, AND SAY IT HAS TO FIT EXACTLY LIKE WE SEE IT THERE

12     BECAUSE 2G1.3 FOR CHILD EXPLOITATION CONTAINS THAT SPECIAL

13     INSTRUCTION THAT GIVES THE COURT SPECIFIC DIRECTION IN CHILD

14     EXPLOITATION CASES.

15            SO AS TO THE DOUBLE COUNTING ISSUE, I THINK IT'S

16     ANSWERED BY 2G1.3(D).

17            AND AS TO THE GROUPING ISSUE, I THINK IT'S ALSO

18     ANSWERED BY THE SPECIFIC GUIDELINES FOR CHILD EXPLOITATION.

19            **THE COURT:**  LET ME ASK -- AND I DIDN'T RAISE THIS

20     BEFORE -- DO BOTH SIDES AGREE THAT THE APPLICABLE GUIDELINE

21     IS THE GUIDELINE OF 2006?

22            THAT DOES SEEM TO BE THE ONE THAT PROBATION USED

23     IN CALCULATING ITS GUIDELINES.  AND, OF COURSE, WE'RE NOW AT

24     2010.  SO THERE HAVE BEEN A LOT OF GUIDELINES IN BETWEEN.

25            BUT I THINK THE LAW -- AND, OF COURSE, THERE'S A

1    RECENT CASE JUST THE OTHER DAY THAT KIND OF ADDRESSES

2    THIS -- THAT YOU WOULD USE THE LAW IN EFFECT AT THE

3    SENTENCING HEARING UNLESS THAT CREATES A VIOLATION OF

4    EX POST FACTO.

5              SO THE NEW CASE THAT I'M THINKING OF IS THE ONE

6    WHERE THE DEFENDANT WAS SENTENCED TO TEN YEARS.  I GUESS IT

7    WAS A MANDATORY MINIMUM.  AND HE'S NOW GOING TO BE MAYBE

8    RESENTENCED THE COURT SAYS, BUT IF HE WAS RESENTENCED TODAY,

9    THAT WOULDN'T APPLY.

10             BUT, OF COURSE, WE'RE NOT GOING TO LOOK AT THE LAW

11   ON THE SENTENCING DATE.  WE'RE GOING TO LOOK AT THE LAW,

12   WHICH SEEMS A LITTLE BIT DIFFERENT THAN WHAT WE THOUGHT IT

13   WAS.

14             BUT, ANYWAY, MY REAL QUESTION IS DO YOU AGREE THAT

15   IT'S THE 2006 GUIDELINES THAT WE SHOULD BE LOOKING AT FOR

16   PURPOSES OF CALCULATING ALL THIS?

17             **MR. DYBWAD:**  YES AS TO THE DEFENSE, YOUR HONOR.

18             **THE COURT:**  OKAY.

19             AND THE GOVERNMENT BELIEVES ALSO?

20             **MS. PEACE GARNETT:**  YES, YOUR HONOR.

21             **THE COURT:**  ALL RIGHT.

22             SO I'VE HEARD THE GOVERNMENT'S ARGUMENT NOW.

23             IS THERE SOMETHING ELSE THE DEFENSE WANTS TO PUT

24   ON THE RECORD ON THIS ISSUE, OR IS IT YOUR POSITION IT'S

25   STILL DOUBLE COUNTING AND THAT'S IT?

1          **MR. DYBWAD:**  YOUR HONOR, IT'S OUR POSITION THAT

2     IT'S DOUBLE COUNTING, OR EVEN MORE SPECIFICALLY, THAT HERE

3     YOU HAVE A SITUATION WHERE ONE OF THE COUNTS IS EMBODYING

4     CONDUCT THAT IS COUNTED AS AN ADJUSTMENT.

5          AND, AGAIN, FOR THE REASONS WE DISCUSSED -- THAT

6     ONE OF THE COUNTS IS EMBODYING BOTH USE OF A MINOR AND ALSO

7     A PATTERN AND PRACTICE, WHICH THE PROBATION OFFICE

8     IDENTIFIED ON THE PRECISE BASIS OF JOHN DOES A THROUGH F --

9     THEREFORE, IT'S INAPPROPRIATE TO THEN HAVE THE MULTIPLE

10    COUNT ADJUSTMENT.

11         **THE COURT:**  THERE'S SOME MORE RECENT DOUBLE

12    COUNTING CASES, AS WELL.  AND I DON'T KNOW IF COUNSEL LOOKED

13    AT ANY OF THOSE CASES FOR HELPING US UNDERSTAND WHAT

14    CONSTITUTES DOUBLE COUNTING.

15         IN THE LAST FEW DAYS, IT SEEMS TO ME, I SAW

16    ANOTHER CASE FROM THE CIRCUIT THAT INVOLVES DOUBLE COUNTING.

17    IT MAY NOT BE APPLICABLE HERE, BUT I DON'T HAVE IT IN MIND

18    SUFFICIENTLY ENOUGH TO KNOW WHETHER IT APPLIES.

19         SO IF EITHER OF YOU BELIEVE THAT THERE ARE SOME

20    MORE RECENT CASES THAT MAY NOT HAVE BEEN IN THE POSITION

21    PAPERS THAT YOU FILED, JUST ON THE CONCEPT OF WHAT

22    CONSTITUTES DOUBLE COUNTING, IT MAY BE THAT THE COURT MAY

23    NEED TO TAKE A LOOK AT SOME OF THOSE JUST TO FOCUS ON WHEN

24    DO WE HAVE DOUBLE COUNTING, WHEN DO WE NOT HAVE DOUBLE

25    COUNTING.

```
 1              SO I DON'T ASK YOU TO RESPOND AT THIS MOMENT.  I

 2    WILL TAKE A BREAK.  WE'RE NOT GOING TO FINISH THIS BEFORE

 3    THERE IS A BREAK.

 4              SO THINK ABOUT WHETHER THERE ARE ANY RECENT CASES,

 5    CASES NOT CITED IN YOUR POSITION PAPER ON THE QUESTION OF

 6    WHAT CONSTITUTES DOUBLE COUNTING.  IF THERE ARE, IT MIGHT BE

 7    WORTH LOOKING AT SOME OF THOSE CASES TO GIVE US GUIDANCE.

 8              ALL RIGHT.  THEN I THINK WHERE WE CAN GO NEXT -- I

 9    THINK THAT ADEQUATELY ADDRESSES -- WELL, MAYBE I SHOULD

10    RAISE THIS.

11              SO WHAT THE COURT DID, THE COURT SAID, WELL, IN MY

12    TENTATIVE FINDINGS, I'M NOT ADJUSTING FOR THE MULTIPLE

13    COUNTS.  SO NO MULTIPLE COUNT ADJUSTMENT FOR THE REASONS

14    THAT I SAID -- AND YOU'VE BEEN HEARD ON THAT -- BUT I SAID,

15    BUT I WILL ADJUST FOR PATTERN OF ACTIVITY, THE FIVE POINTS.

16              SO I'M NOT QUITE CLEAR, THEN, WHAT THE DEFENDANT'S

17    POSITION IS IF THE COURT'S TENTATIVE IS TO NOT ADJUST FOR

18    MULTIPLE COUNTS BUT TO MAKE THE ADJUSTMENT FOR PATTERN OF

19    ACTIVITY.

20              MAYBE YOUR ARGUMENT IS STILL THAT'S STILL DOUBLE

21    COUNTING, BUT I'M JUST NOT CLEAR ON THAT.  SO WHY DON'T I

22    HAVE YOU COME TO THE LECTERN, AND WHAT IS YOUR POSITION ON

23    THAT?

24              **MR. DYBWAD:**  YOUR HONOR, I'LL BE BRIEF.

25              OUR POSITION WAS THAT, IF THE COURT IS TO APPLY
```

1  ONE, THE OTHER SHOULDN'T BE APPLIED.

2        HERE, THE COURT'S TENTATIVE IS TO APPLY THE

3  PATTERN AND PRACTICE BUT NOT THE MULTIPLE COUNTS.  AND AS WE

4  LAID OUT IN OUR PAPERS, THE ARGUMENT IS SIMPLY YOU CANNOT

5  APPLY BOTH FIVE-LEVEL ENHANCEMENTS; BUT IF YOU APPLY ONE,

6  BUT NOT THE OTHER, THAT WOULD BE OKAY.

7        **THE COURT:**  ALL RIGHT.  SO I DON'T THINK THE

8  GOVERNMENT NEEDS TO BE HEARD ON IT, BUT IF YOU HAVE

9  SOMETHING MORE TO PUT ON THE RECORD ON THAT, PLEASE DO SO.

10       **MS. PEACE GARNETT:**  YES, YOUR HONOR.

11       **THE COURT:**  SO MY TENTATIVE WAS TO MAKE THE

12  ADJUSTMENT FOR PATTERN OF ACTIVITY, INCREASE THE FIVE

13  LEVELS, BUT NOT TO MAKE THE ADJUSTMENT FOR MULTIPLE COUNTS.

14       YOU'VE ADDRESSED THE MULTIPLE COUNTS AND WHY YOU

15  THINK THE COURT SHOULD MAKE THE ADJUSTMENT FOR THAT, AS WELL

16  AS PATTERN OF ACTIVITY.

17       AS I UNDERSTAND THE DEFENSE, THEY ARE NOT

18  OBJECTING AS LONG AS THE COURT DOESN'T DO BOTH.

19       DO YOU WISH TO ADDRESS PATTERN OF ACTIVITY?

20       **MS. PEACE GARNETT:**  YES, YOUR HONOR.

21       I BELIEVE THE COURT SHOULD DO BOTH.  I BELIEVE THE

22  COURT SHOULD APPLY THE MULTIPLE COUNT ADJUSTMENT, FOR THE

23  REASONS I STATED, AND ALSO THE PATTERN AND PRACTICE.

24       DOUBLE COUNTING ONLY OCCURS WHEN ONE PART OF THE

25  GUIDELINES IS APPLIED TO INCREASE DEFENDANT'S PUNISHMENT FOR

1    HARM THAT HAS ALREADY BEEN ACCOUNTED FOR BY ANOTHER PART OF

2    THE GUIDELINES.

3            WHAT WE HAVE BEEN TALKING ABOUT THUS FAR IN TERMS

4    OF THE MULTIPLE COUNT ADJUSTMENT ARE HIS CONDUCT WITH

5    JOHN DOES A THROUGH F, AND WE'RE TALKING ABOUT SINGLE ACTS.

6            JOHN DOE A AND B WAS ON MAY 10, 2005.

7            JOHN DOE C, D, AND E WERE NOVEMBER 14, 2004.

8            AND JOHN DOE F WAS, I BELIEVE, DECEMBER 19, 2004.

9            THAT IS THE CONDUCT THAT WAS CHARGED.  THAT IS THE

10   CONDUCT THAT IS THE BASIS OF THE MULTIPLE COUNT ADJUSTMENT.

11           BUT WE HAVE ALSO SHOWN IN OUR PAPERS THAT

12   DEFENDANT ENGAGED IN SEXUAL ACTS ON MULTIPLE OCCASIONS WITH

13   JOHN DOE A THAT IS NOT TAKEN INTO ACCOUNT.

14           HE ALSO ENGAGED IN MULTIPLE ACTS WITH JOHN DOE C,

15   I BELIEVE, A MINOR BY THE NAME OF KAY.  SO THAT IS NOT TAKEN

16   INTO ACCOUNT.

17           WE HAVE ALSO SHOWN, BY THE LEDGERS AND THE INDEX

18   CARDS AND THE JOURNAL ENTRIES AND THE HUNDREDS OF PHOTOS --

19   ONLY AN EXCERPT OF WHICH ARE IN THE AMENDED DECLARATION --

20   THAT MR. PROWLER ENGAGED IN SEXUAL CONDUCT WITH HUNDREDS,

21   HUNDREDS OF MINORS OVER A FIVE-YEAR PERIOD; AND THAT IS NOT

22   TAKEN INTO ACCOUNT BY THE MULTIPLE COUNT ADJUSTMENT.

23           AND SO IT'S OUR POSITION THAT THE PATTERN AND

24   PRACTICE GOES TO HIS BEHAVIOR ON MULTIPLE OCCASIONS WITH THE

25   SAME VICTIM, WHICH HAS NOT BEEN TAKEN INTO ACCOUNT, AND AS

```
 1   TO MANY OTHER VICTIMS THAT HAVE NOT BEEN TAKEN INTO ACCOUNT.

 2   AND UNDER U.S. V. STOTERAU, WHICH WAS A 2008 CASE, BUT I

 3   WOULD LOOK DURING THE RECESS FOR SOMETHING MORE RECENT.  I'D

 4   LIKE TO PROVIDE THE CITE, AND THAT'S 524 F.3D 988.

 5            THE COURT:  LET ME ASK YOU TO REPEAT IT AGAIN,

 6   PLEASE.

 7            MS. PEACE GARNETT:  524 F.3D 988.  IT'S A NINTH

 8   CIRCUIT CASE IN 2008.  AND IT'S U.S. VERSUS S-T-O-T-E-R-A-U.

 9            AND IT SAYS THAT IT'S NOT DOUBLE COUNTING WHEN AN

10   ENHANCEMENT IS NECESSARY TO REFLECT THE FULL EXTENT OF

11   WRONGFULNESS OF THE DEFENDANT'S CONDUCT.

12            SO IT'S OUR POSITION THAT BOTH THE MULTIPLE COUNT

13   ADJUSTMENT AND THE PATTERN AND PRACTICE ARE APPLICABLE IN

14   THIS CASE BASED ON ALL OF HIS CONDUCT OVER THE FIVE-YEAR

15   PERIOD.

16            THE COURT:  ALL RIGHT.

17            SO, THEN, THE DEFENSE WOULD LIKE TO BE HEARD.  SO

18   WE'LL GO BACK TO SOME OF THE OTHER FINDINGS -- TENTATIVE

19   FINDINGS THAT THE COURT MADE THAT THE PARTIES HAVE NOT YET

20   ADDRESSED.  THE VULNERABLE VICTIM.  AND, OF COURSE, THE

21   COURT'S READ THE ARGUMENTS IN THE WRITTEN POSITION PAPER,

22   BUT YOU ALSO MAY HAVE SOME ADDITIONAL COMMENTS.  MAYBE

23   THERE'S SOME MORE RECENT CASES THAT HAVE BEEN DECIDED SINCE

24   THE PAPERS WERE ACTUALLY PREPARED.

25            MR. DYBWAD:  YES, YOUR HONOR.
```

1          **THE COURT:**  THIS IS VULNERABLE VICTIM.

2          **MR. DYBWAD:**  YES, YOUR HONOR.

3          AND OBVIOUSLY THE COURT HAS READ OUR ARGUMENT.  I

4   WILL BRIEFLY SUMMARIZE THE ARGUMENT AND THEN ADDRESS ONE

5   ARGUMENT THAT'S IN THE GOVERNMENT'S RESPONSE TO IT.

6          BASICALLY, YOUR HONOR, THE ARGUMENT IS THAT UNDER

7   EXISTING NINTH CIRCUIT CASE LAW, SPECIFICALLY UNITED STATES

8   V. CASTANEDA, UNITED STATES V. WILLIAMS, AND OTHER MANN ACT

9   CASES, IF THE VICTIM OF THE OFFENSE IS THE TYPE OF VICTIM

10  THAT IS TYPICALLY OR USUALLY ASSOCIATED WITH THE OFFENSE,

11  THE NINTH CIRCUIT ASSUMES THAT THAT CHARACTERISTIC HAS

12  ALREADY BEEN BUILT INTO THE BASE OFFENSE LEVEL TO THE

13  OFFENSE.  SO TO, THEREFORE, ADD ANOTHER ENHANCEMENT ON THE

14  BASIS OF THAT TYPE OF VICTIM IS TO IGNORE THE REALITY THAT

15  IT'S BUILT IN THE BASE OFFENSE.

16         **THE COURT:**  AND SO WHAT DO YOU BELIEVE IS THE

17  DESCRIPTION OF THE VICTIM THAT IS INCLUDED IN THE UNDERLYING

18  OFFENSE?

19         **MR. DYBWAD:**  SOCIOECONOMIC STATUS, YOUR HONOR.

20  AND THAT IS PRECISELY THE GROUND THAT PROBATION IDENTIFIED

21  FOR THE ENHANCEMENT IN CONNECTION WITH THE ORIGINAL

22  SENTENCING.  IT IS THE GROUND THAT THE GOVERNMENT IDENTIFIED

23  AS THE CHARACTERISTIC OF THE VICTIMS IN CONNECTION WITH THE

24  ORIGINAL SENTENCING.

25         AND IF THE COURT LOOKS AT SOME OF THE LEGISLATIVE

1    HISTORY THAT WE CITED IN OUR PAPERS, BOTH IN FRONT OF

2    JUDGE TAKASUGI AS WELL AS HERE, THIS STATUTE, WHEN IT WAS

3    ENACTED, CONTEMPLATED THE VICTIMS.  THE TYPICAL -- AS

4    LAMENTABLE AS IT IS, THE TYPICAL VICTIMS OF THE OFFENSE IN

5    ASIAN COUNTRIES BEING VICTIMS WHO WERE PREYED ON BECAUSE OF

6    THEIR SOCIOECONOMIC CIRCUMSTANCES.

7         THAT'S IN THE LEGISLATIVE HISTORY.  I BELIEVE

8    THERE IS A STATEMENT BY REPRESENTATIVE ZOE LOFGREN TO THAT

9    EFFECT.

10        **THE COURT:**  THE LEGISLATIVE HISTORY OF THE

11   CHARGING STATUTE AS CHARGED IN THE INDICTMENT?

12        **MR. DYBWAD:**  OF THE CHARGING STATUTE.

13        AND, YOUR HONOR, THAT'S THE ARGUMENT I WANTED TO

14   ADDRESS THAT APPEARS IN THE GOVERNMENT'S RESPONSE ON

15   RESENTENCING IN FRONT OF THIS COURT.

16        ESSENTIALLY, THE GOVERNMENT ARGUES THAT THESE WERE

17   NOT TYPICAL VICTIMS OF THE OFFENSE BECAUSE THEY WERE NOT

18   PROSTITUTES AHEAD OF TIME AND REFERS BACK TO OTHER MANN ACT

19   STATUTES THAT OBVIOUSLY CRIMINALIZE BRINGING PEOPLE OVER FOR

20   PROSTITUTION.

21        THAT'S AT ODDS WITH BOTH THE CASTANEDA DECISION

22   ITSELF AND THE CASTANEDA DECISION DEALING WITH ANOTHER

23   PROVISION, SIMILAR PROVISION, THAT INVOLVED EXTENSIONS OF

24   THE MANN ACT.

25        THE VICTIMS OF THAT OFFENSE WERE NOT PROSTITUTES

```
 1   AHEAD OF TIME.  THEY WERE TRICKED AND BROUGHT OVER TO

 2   SAIPAN, AND THE DISTRICT COURT IMPOSED THE VULNERABLE VICTIM

 3   ENHANCEMENT ON THE BASIS OF SOCIOECONOMIC STATUS, THEIR

 4   SOCIOECONOMIC STATUS MAKING THEM MORE VULNERABLE TO THE

 5   OFFENSE.

 6            AND THE NINTH CIRCUIT SAID NO, THAT'S NOT CORRECT

 7   AND CITED THE FIRST CIRCUIT AND SOME OTHER DECISIONS WHERE

 8   THEY DISCUSSED THAT THE TYPICAL VICTIMS CONTEMPLATED BY THAT

 9   STATUTE WERE OFTEN MARKED BY LOWER SOCIOECONOMIC STATUS,

10   SOMETIMES RUNAWAYS, SOMETIMES ADDICTED TO NARCOTICS.

11            NOW, I AGREE THE PROPER INQUIRY HERE IS THAT THE

12   COURT NEEDS TO LOOK AT THE SPECIFIC STATUTE THAT MR. PROWLER

13   WAS CHARGED WITH AND THEN TO LOOK AT THE LEGISLATIVE HISTORY

14   AS TO WHAT ARE THE TYPES OF VICTIMS THAT WERE CONTEMPLATED

15   AS BEING VICTIMS OF THIS STATUTE.

16            AND I THINK THE LEGISLATIVE HISTORY REVEALS,

17   CONSISTENT WITH OTHER MANN ACT EXTENSIONS, THAT THE TYPE OF

18   VICTIMS THAT WERE CONTEMPLATED HERE WERE MINORS WHO WERE

19   PREYED UPON FOR MONEY.

20            AND THAT'S WHAT YOU HAVE.

21            WHETHER THE MINORS WERE PROSTITUTES BEFORE OR

22   AFTER THIS OFFENSE, THAT'S NOT THE PROPER INQUIRY.  IT

23   WASN'T THE PROPER INQUIRY IN CASTANEDA.

24            THE PROPER INQUIRY IS WHAT IS THE TYPE OF MINOR

25   CONTEMPLATED.  IT IS SOMEWHAT OF A LOWER SOCIOECONOMIC
```

1    STATUS.

2          THERE ARE OTHER MANN ACT CASES DISCUSSING THIS

3    ENHANCEMENT THAT ALSO TALK ABOUT RUNAWAYS, HOMELESSNESS,

4    DRUG ADDICTION.  THOSE ARE, AGAIN, LAMENTABLY, THE TYPE OF

5    CHARACTERISTICS TYPICALLY ASSOCIATED WITH THE VICTIMS OF THE

6    OFFENSE.

7          AND SO, YOUR HONOR, AT THIS POINT, I BELIEVE THAT

8    TO IMPOSE THAT FOUR-LEVEL ENHANCEMENT IS SOMETHING THAT IS

9    ALREADY BUILT INTO THE BASE OFFENSE LEVEL AND AT ODDS WITH

10   NINTH CIRCUIT CASE LAW.

11         **THE COURT:**  AND WHAT IS THE CHARGING STATUTE?

12         **MR. DYBWAD:**  2423, YOUR HONOR.

13         THE LEGISLATIVE HISTORY -- I APOLOGIZE.  THIS CASE

14   HAS OBVIOUSLY BEEN PENDING FOR A LONG TIME FOR ALL OF US.

15         THE LEGISLATIVE HISTORY AS TO THAT CHARGING

16   STATUTE IS CITED, I WOULD IMAGINE, BOTH IN THE DEFENSE'S

17   ORIGINAL PAPERS IN SUPPORT OF THIS ARGUMENT AS WELL AS THE

18   DEFENSE'S PAPERS ON RESENTENCING.

19         **THE COURT:**  I JUST WANTED TO MAKE SURE THAT THE

20   LEGISLATIVE HISTORY THAT YOU ARE REFERENCING IS THE

21   LEGISLATIVE HISTORY OF THE STATUTE THAT WAS CHARGED IN THE

22   INDICTMENT.

23         **MR. DYBWAD:**  YES.

24         AND, YOUR HONOR, I AGREE, I THINK THAT'S A PROPER

25   INQUIRY HERE.

```
 1            THE COURT:  OKAY.

 2            ALL RIGHT.  GOVERNMENT, YOU MAY BE HEARD,

 3    VULNERABLE VICTIM.

 4            MS. PEACE GARNETT:  ALL RIGHT.  AS TO THE

 5    VULNERABLE VICTIM, DEFENSE COUNSEL REFERRED TO CASTANEDA,

 6    AND WHAT HE WAS TALKING ABOUT IN CASTANEDA, THE NINTH

 7    CIRCUIT SAID THIS ABOUT THE LEGISLATIVE HISTORY.  AND IT WAS

 8    REFERRING TO ANOTHER CASE FROM THE FIRST CIRCUIT CALLED THE

 9    SABATINO CASE.

10            AND IT SAYS (AS READ:)

11        "THE SABATINO CASE DISCUSSED THE LEGISLATIVE HISTORY OF

12         THE MANN ACT AT LENGTH AND CONCLUDED THAT THE ACT

13         EMBODIED A PATERNALISTIC ATTITUDE CONCERNING THE

14         PROTECTION OF WOMEN AND GIRLS WHO, BECAUSE OF THEIR

15         INNOCENCE, THEIR HARD LIVES, AND THEIR VULNERABILITY

16         WERE PARTICULARLY SUSCEPTIBLE TO BECOMING VICTIMS OF

17         UNSCRUPULOUS MEN AND WOMEN WHO WOULD TAKE ADVANTAGE OF

18         THEIR SITUATION FOR IMMORAL PURPOSES."

19            (END OF QUOTED MATERIAL.)

20            MS. PEACE GARNETT:  AND I'M READING FROM

21    CASTANEDA, WHICH IS 239 F.3D 978.  IT'S A 2001 CASE FROM THE

22    NINTH CIRCUIT, AND IT'S SPELLED C-A-S-T-A-N-E-D-A.

23            I THINK THE DIFFICULTY WITH THE VULNERABLE VICTIM

24    ENHANCEMENT IS THAT THE MANN ACT HAS SORT OF EVOLVED OVER

25    TIME AND THERE HAVE BEEN MANY AMENDMENTS TO THE MANN ACT,
```

```
 1   INCLUDING SOME OF THE CHILD EXPLOITATION STATUTES THAT WERE

 2   CHARGED IN THIS CASE.  BUT TRADITIONALLY IT WAS ENACTED TO

 3   PROTECT THESE GIRL VICTIMS OF PROSTITUTION.

 4           WHAT THE GOVERNMENT TRIED TO POINT OUT BY SAYING

 5   THAT THE VULNERABLE VICTIM ENHANCEMENT APPLIED HERE IS THAT

 6   THIS PARTICULAR DEFENDANT TARGETED HIS VICTIMS --

 7           HE WAS AN ENGLISH TEACHER IN THAILAND.  HE TAUGHT

 8   5 TO 11 YEAR OLDS.  HE ALSO TAUGHT PIANO, AND HE HAD ACCESS

 9   TO THESE MINORS.  BUT THESE ARE NOT THE INDIVIDUALS THAT HE

10   TARGETED FOR HIS SEXUAL EXPLOITATION BECAUSE, OBVIOUSLY,

11   THEY CAME FROM EDUCATED -- OR PRESUMABLY CAME FROM EDUCATED

12   FAMILIES AND COULD CAUSE PROBLEMS FOR HIM.

13           THE COURT:  WHY DO YOU PRESUME THAT?

14           MS. PEACE GARNETT:  I DON'T KNOW WHY.  BUT THEY

15   THEMSELVES WERE EDUCATED BECAUSE THEY WERE LEARNING ENGLISH

16   AND WERE ABLE TO TAKE THE TIME TO LEARN ENGLISH AS OPPOSED

17   TO THE PARTICULAR VICTIMS THAT WE'RE TALKING ABOUT.

18           THE VICTIMS THAT WE'RE TALKING ABOUT WERE ON THE

19   STREETS; THEY LIVED ON THE STREETS OF THAILAND IN A

20   PARTICULAR INTERSECTION.  AND DEFENDANT WOULD GO AND TROLL

21   THIS INTERSECTION AND LOOK FOR THESE KIDS AND TRY TO ENTICE

22   THEM TO COME BACK TO HIS HOME.

23           IN THE VICTIM IMPACT STATEMENT, SOME OF THE

24   VICTIMS TALKED ABOUT DEFENDANT SHOWING UP WITH ICE CREAM

25   BECAUSE THESE KIDS WERE HUNGRY.
```

```
 1            IF THE COURT RECALLS FROM THE PHOTOGRAPH THAT I
 2    SHOWED YOU, I WANT TO SAY IT'S EXHIBIT "T," YOU HAVE THE
 3    THREE MINORS.  ONE OF THEM IS INCREDIBLY EMACIATED.  YOU CAN
 4    SEE HIS RIBS.  THESE KIDS WERE HUNGRY, THEY WERE POOR, THEY
 5    WERE USING SQUEEGEES IN THIS BUSY INTERSECTION TO EARN MONEY
 6    FOR FOOD; AND THESE ARE THE KIDS THAT DEFENDANT TARGETED.
 7            IN ONE OF HIS JOURNAL ENTRIES ON EXHIBIT "F,"
 8    PAGE 41, I'LL JUST READ IT TO YOU AT THIS POINT.
 9            JOURNAL ENTRY DATED DECEMBER 19, 2004; AGAIN, THE
10    SAME TIME PERIOD OF COUNT 10.
11            DEFENDANT SAYS (AS READ:)
12        "IF I AM COUNTING CORRECTLY, I HAVE HAD SEX WITH NINE
13         OF THE ASOKE BOYS -- "
14            THAT'S IN THIS PARTICULAR INTERSECTION.
15        " -- SO FAR. FABULOUSLY, I'VE TOTALLY BEEN ABLE TO
16         PENETRATE AND LEAVE MY MARK ON THIS ONCE UNTOUCHABLE
17         GROUP OF SQUEEGEE BOYS."
18            THEY WERE CALLED THE "SQUEEGEE BOYS" BECAUSE THEY
19    WEREN'T PROSTITUTES.  THEY WERE USING SQUEEGEES TO GET
20    MONEY.  BUT DEFENDANT WOULD GO AND TRY TO GIVE THEM FOOD,
21    NOODLES, AND ICE CREAM AND THAT SORT OF THING AND INVITE
22    THEM BACK TO HIS APARTMENT, GIVE THEM A SHOWER, AND THAT
23    SORT OF THING.
24            SO IT'S THE GOVERNMENT'S POSITION THAT HE TARGETED
25    THESE PARTICULAR INDIVIDUALS.  AND AMONGST THOSE GROUPS, IN
```

1    THE VICTIM IMPACT STATEMENT, AGAIN, SOME OF THESE VICTIMS

2    WERE ON GLUE, AND THEY WOULD SAY THAT HE WOULD ALLOW THEM TO

3    USE GLUE IN THE APARTMENT.

4           SO THAT IS THE BASIS FOR THE VULNERABLE VICTIM

5    ENHANCEMENT AND THAT THERE WERE MULTIPLE VICTIMS, AND SO

6    THAT'S WHY THERE WAS A TOTAL OF FOUR.

7           BUT I JUST WANT TO POINT OUT AS TO ALL --

8           **THE COURT:**  TARGETED THEM BECAUSE OF THEIR

9    SOCIOECONOMIC STATUS?

10          **MS. PEACE GARNETT:**  YES, YOUR HONOR.

11          <u>CASTANEDA</u> DIDN'T DECIDE WHETHER OR NOT THAT COULD

12   BE SOMETHING TO BE LOOKED AT BY THE COURT.

13          BUT AS TO ALL OF THE GUIDELINE CALCULATIONS, ONE

14   OF THE THINGS I WANT TO POINT OUT TO THE COURT IS THERE

15   IS -- AS THE PROBATION OFFICER POINTED OUT, AN UPWARD

16   DEPARTURE IS WARRANTED IN THE CASE.

17          **THE COURT:**  WELL, I THINK -- AND I WILL GIVE

18   COUNSEL AN OPPORTUNITY TO TALK ABOUT THE UPWARD DEPARTURE,

19   BUT I ACTUALLY SEPARATE THAT FROM THE GUIDELINE CALCULATION.

20          SO I THINK WHAT WE'RE TALKING ABOUT NOW IS HOW DO

21   WE CALCULATE THESE GUIDELINES, WHAT APPLIES, ET CETERA.

22          BUT CERTAINLY BOTH COUNSEL WILL HAVE AN

23   OPPORTUNITY TO ADDRESS WHAT SHOULD THE SENTENCE BE WHEN THE

24   COURT CONSIDERS ALL OF THE OTHER FACTORS, OTHER THAN JUST

25   THE GUIDELINE CALCULATION.

1          **MS. PEACE GARNETT:**  OKAY.  WELL, THEN, UNLESS THE

2     COURT HAS ANY OTHER QUESTIONS AS TO VULNERABLE VICTIM, I'LL

3     LEAVE THAT ALONE.

4          **THE COURT:**  I'M NOT SURE THAT I FOLLOW THE

5     ARGUMENT.

6          THE DEFENSE'S POSITION IS WE'RE ALREADY -- THE

7     STATUTE --

8          WELL, MAYBE I SHOULD ADDRESS IT THIS WAY:

9          WE'RE LOOKING AT THE FACT THAT THEY WERE MINORS.

10    WE'RE ALSO LOOKING AT THE FACT OF THEIR SOCIOECONOMIC

11    STATUS.  SO IF THE ARGUMENT IS THEY ARE VICTIMS BECAUSE OF

12    THAT, THEY'RE MINORS, BUT THEY'RE VULNERABLE BECAUSE OF THE

13    SOCIOECONOMIC STANDARD -- I THINK THAT'S THE GOVERNMENT'S

14    ARGUMENT.

15         AM I CORRECT?

16         **MS. PEACE GARNETT:**  YES, YOUR HONOR.

17         **THE COURT:**  AND DEFENSE'S ARGUMENT IS --

18         **MS. PEACE GARNETT:**  WE CAN'T TAKE THAT INTO

19    ACCOUNT BECAUSE IT'S ALREADY TAKEN INTO ACCOUNT.

20         **THE COURT:**  EXACTLY.

21         **MS. PEACE GARNETT:**  I MEAN, I THINK IT'S A CLOSE

22    CASE.  I THINK IT'S AN ISSUE THAT'S NOT CLEARCUT.

23         BUT, AGAIN, IF THE COURT IS NOT INCLINED, BASED ON

24    THOSE ARGUMENTS, TO IMPOSE THAT PARTICULAR ENHANCEMENT, THEN

25    I WOULD MAKE OTHER ARGUMENTS LATER ON.

```
1              THE COURT:  OKAY.  VERY GOOD.

2         ANYTHING FURTHER FOR THE DEFENSE?

3                   (PAUSE.)

4              THE COURT:  AND I WAS GOING TO ASK THE

5    GOVERNMENT'S COUNSEL JUST TO IDENTIFY THE CHARGING STATUTE.

6    I HAVE NOT LOOKED AT THIS LEGISLATIVE HISTORY, BUT TO THE

7    EXTENT THAT THAT'S HELPFUL -- AND I SHOULD LOOK AT IT --

8    WHAT IS THE CHARGING STATUTE?  I DON'T HAVE THE INDICTMENT

9    BEFORE ME.

10             MS. PEACE GARNETT:  COUNT 4 WAS 2423(C), ENGAGING

11   IN ILLICIT SEXUAL CONDUCT WITH A MINOR IN A FOREIGN PLACE,

12   AND COUNT 10 WAS 2423(B) -- ALL UNDER TITLE 18, OF COURSE --

13   TRAVELING WITH INTENT TO ENGAGE IN ILLICIT SEXUAL CONDUCT IN

14   A FOREIGN PLACE.

15             SO COUNT 10 GOES TO THE TRAVEL AND WHAT HE DID

16   THERE, AND THEN COUNT 4 GOES TO WHAT HE DID THERE.

17             THE COURT:  AND SO COUNT 4 OF THE STATUTE ITSELF,

18   2423(C), INCLUDES MINORS.

19             MS. PEACE GARNETT:  YES.

20             THE COURT:  I MEAN, THE BASIS FOR IT IS THEY'RE

21   MINORS.

22             MS. PEACE GARNETT:  AND HE PLED GUILTY TO MINORS,

23   PLURAL.

24             THE COURT:  ALL RIGHT.  DEFENSE WISH TO BE HEARD

25   FURTHER?
```

1          **MR. DYBWAD:**  VERY BRIEFLY, YOUR HONOR.

2          WE IDENTIFIED, I BELIEVE -- ACTUALLY, IT'S MOST

3    LIKELY IN BOTH OF OUR PAPERS, BUT THE LEGISLATIVE HISTORY AT

4    H.R. REP. 107-525.

5          IN THERE, THERE'S A STATEMENT BY ZOE LOFGREN, WHO

6    STATED:  IN CALIFORNIA, IT SEEMS TO BE MAINLY THE TRAVEL TO

7    ASIA WHERE THE CHILDREN ARE PREYED UPON FOR MONEY IN

8    CONNECTION WITH THE PASSAGE OF THAT PARTICULAR STATUTE.

9          THERE IS ALSO -- I BELIEVE, LEGISLATIVE HISTORY

10   CAN BE FOUND AT 2002 WESTLAW 1376220 FOR FUTURE REFERENCE.

11         AND IN SHORT, AGAIN, I AGREE WITH THE COURT'S

12   ANALYSIS.  THE NINTH CIRCUIT CASES AND THE FIRST CIRCUIT

13   CASE THAT WE'RE CITING DEAL WITH OTHER PARTS OF THE MANN ACT

14   OR THIS IS, RATHER, AN EXTENSION OF THE MANN ACT.

15         AND THEIR DISCUSSION OF THE TYPICAL VICTIM IN

16   CONNECTION WITH THOSE OFFENSES ARE THE TYPICAL VICTIMS

17   CONTEMPLATED BY THOSE PRECISE STATUTES, BUT THE ANALOGY IS

18   HERE.  THIS STATUTE CONTEMPLATED VICTIMS WHO WERE PREYED

19   UPON BECAUSE OF THEIR IMPOVERISHED STATUS.

20         **THE COURT:**  ALL RIGHT.

21         AND DID THE DEFENSE WISH TO BE HEARD ON THE

22   TENTATIVE FINDINGS MADE BY THE COURT?

23         **MR. DYBWAD:**  NO, YOUR HONOR.  I WOULD SUBMIT ON

24   THE OTHER ENHANCEMENTS THE COURT IDENTIFIED.

25         **THE COURT:**  OKAY.

1          AND HOW ABOUT THE GOVERNMENT.  DID THE GOVERNMENT

2   WISH TO BE HEARD?  AND THIS IS JUST BASED UPON THE COURT'S

3   TENTATIVE, AS TO HOW THE COURT WOULD CALCULATE THE SENTENCE

4   UNDER THE GUIDELINES?

5          **MS. PEACE GARNETT:**  IF THE COURT NEEDS FURTHER

6   DISCUSSION OF DOUBLE COUNTING, I WOULD ASK THAT IN THE BREAK

7   I BE ALLOWED TO DO SOME RESEARCH.

8          **THE COURT:**  I THINK WE SHOULD JUST TAKE A LOOK TO

9   SEE IF THERE ARE SOME MORE RECENT CASES THAT WEREN'T CITED

10  ON DOUBLE COUNTING THAT YOU BELIEVE THE COURT SHOULD REVIEW.

11         AND IF YOU IDENTIFY ANY, THEN YOU'LL CITE THOSE,

12  AND THE COURT WILL TAKE A LOOK AT THEM.

13         **MS. PEACE GARNETT:**  OKAY, YOUR HONOR.

14         **THE COURT:**  IT'S ABOUT A QUARTER OF 1:00, AND

15  OBVIOUSLY WE HAVE OTHER THINGS THAT WE HAVE TO DO.  WE HAVE

16  NOT BEEN IN SESSION TWO HOURS YET.  SO I CAN KEEP GOING,

17  BREAK AT 1:00, AND THEN GIVE YOU TIME FOR LUNCH IF YOU NEED

18  TO HAVE LUNCH OR JUST BREAK FOR JUST A REST AND THEN COME

19  BACK AND CONTINUE ON, BUT I'M WILLING TO GO UNTIL 1:00

20  UNLESS SOMEONE WOULD LIKE TO TAKE A BREAK NOW.

21         **MS. PEACE GARNETT:**  NO, YOUR HONOR.

22         **THE COURT:**  OKAY.

23         WHY DON'T WE GO THEN TO THE CONDITIONS OF

24  SUPERVISED RELEASE.  I THINK THAT'S THE OTHER AREA

25  SPECIFICALLY WHERE THE DEFENDANT OBJECTED.  THE GOVERNMENT

1    THEN FILED A RESPONSE TO THE DEFENDANT'S OBJECTIONS.

2            BUT LET ME ASK MR. LEVARIO -- AS I SAID, THE

3    PROBATION OFFICER, WHEN I SPOKE TO HIM THIS MORNING, HE SAID

4    BECAUSE PROBATION'S LETTER WAS PREPARED IN 2003, THAT

5    PROBATION --

6            OH, I SEE I HAVE THE DOCUMENT.

7            -- THE LANGUAGE THAT THEY WOULD USE FOR SIMILAR

8    CONDITIONS TODAY IS DIFFERENT.

9            SO LET ME JUST LOOK AT IT FIRST BECAUSE IT MAY BE

10   BETTER TO HAVE YOU HAVE IT IN WRITING, AND THEN YOU CAN

11   PROPERLY ADDRESS IT.

12                          *(PAUSE.)*

13        **THE COURT:**  I THINK WHAT I'LL DO IS ASK

14   MR. LEVARIO TO COPY WHAT PROBATION HAS PROVIDED TO THE COURT

15   SO THAT THE PARTIES CAN SEE IT, AND THEN I'LL GIVE YOU AN

16   OPPORTUNITY TO READ IT AND THEN ADDRESS IT LATER.

17           I THINK PROBATION'S POSITION IS THAT SINCE 2003,

18   THEY'VE DEVELOPED OTHER CONDITIONS OF COMPUTER MONITORING

19   PROGRAM RULES AND DEFENDANTS ARE BEING ASKED TO COMPLY WITH

20   THOSE DURING CONDITIONS OF SUPERVISED RELEASE.

21           SO SOME OF THE ARGUMENTS THAT MAY HAVE BEEN MADE

22   ORIGINALLY, THE LANGUAGE MAY BE SLIGHTLY DIFFERENT, AND YOU

23   MAY WANT TO ADDRESS THOSE TO THE EXTENT THAT THE COURT WILL

24   BE IMPOSING THE CONDITION AS MODIFIED.

25           BUT LET ME JUST COMMENT -- AND I WILL LET YOU READ

```
 1    IT DURING THE BREAK BECAUSE I THINK WE NEED TIME TO SEE

 2    WHAT'S THE DIFFERENCE AS FAR AS THE LANGUAGE IS CONCERNED

 3    AND TO KNOW WHETHER OR NOT THERE IS AN OBJECTION TO IT.

 4            THERE CLEARLY ARE SOME CASES FROM THE NINTH

 5    CIRCUIT THAT HAVE DISAPPROVED SOME LANGUAGE AND APPROVED

 6    OTHER LANGUAGE, BUT I WANT TO JUST MENTION ONE BEFORE WE

 7    TAKE THE BREAK.

 8            ONE OF THE CONDITIONS HAD TO DO WITH THE PROBATION

 9    OFFICER MONITORING WHAT THE DEFENDANT WOULD BE VIEWING ON

10    THE DEFENDANT'S COMPUTER.

11            AND I THINK THE ARGUMENT BY THE DEFENSE WAS WHY

12    USE THIS MONITORING EQUIPMENT; WHY NOT USE -- LET ME GET IT

13    RIGHT -- FILTERING SOFTWARE.  THE ARGUMENT WAS FILTERING

14    SOFTWARE MAY BE LESS INVASIVE; IT MAY ALSO BE LESS COSTLY,

15    ET CETERA.

16            SO I SPECIFICALLY ASKED THE PROBATION OFFICER

17    ABOUT THAT, WHAT KIND OF EQUIPMENT ARE THEY USING.

18            IF I UNDERSTAND IT CORRECTLY, PROBATION SAID, WHEN

19    THEY DO THIS MONITORING, THEY WOULD HAVE THE MONITORING

20    DEVICES AS WELL AS THE FILTERING SOFTWARE.  SO THEY WOULD

21    ACTUALLY HAVE BOTH.  WHY?

22            HIS EXPLANATION IS THE FILTERING SOFTWARE IS

23    SOMETHING THAT PARENTS PUT ON COMPUTERS TO RESTRICT THE USE

24    FOR CHILDREN BUT THAT A SOPHISTICATED PERSON WOULD BE ABLE

25    TO DISARM THAT.
```

```
 1          THEY THINK IT'S LESS LIKELY THAT THEY WOULD DISARM
 2     THE, IN QUOTES, "MONITORING EQUIPMENT."  SO IF THE FILTERING
 3     SOFTWARE FAILS, THEY HAVE THE OTHER PIECE OF EQUIPMENT, AND
 4     PROBATION WOULD STILL BE ABLE TO SEE WHAT A DEFENDANT IS
 5     LOOKING AT ON THE COMPUTER.
 6          SO THAT'S THEIR EXPLANATION FOR WHY THEY WOULDN'T
 7     JUST USE THE FILTERING SOFTWARE AS OPPOSED TO THE
 8     MONITORING.
 9          BUT WHAT MR. LEVARIO HAS JUST GIVEN YOU MAY EVEN
10     ADDRESS IT MORE FULLY, AND YOU MAY HAVE DIFFERENT ARGUMENTS
11     THAT YOU WANT TO FOCUS ON.
12          LET ME LOOK AT SOME OF THE OTHERS, AND I CAN TELL
13     YOU THE ONES THAT I THOUGHT PROBABLY NEEDED SOME
14     MODIFICATION AND WHERE THE COURT IS WITH THIS.
15          SO CONDITION NO. 4 WAS ONE OF THOSE.  AND WHEN I
16     SAY "NO. 4," I'M LOOKING AT THE JUDGMENT AND COMMITMENT
17     ORDER THAT WAS PREPARED AT THE OTHER SENTENCING HEARING.
18          SO CONDITION NO. 4 WAS ONE OF THOSE TO WHICH THE
19     DEFENDANT OBJECTED, BUT IT ALSO LOOKS LIKE IT'S ONE WHERE
20     PROBATION HAS SLIGHTLY CHANGED THE LANGUAGE THAT THEY WOULD
21     RECOMMEND TO THE COURT.
22          SO I WON'T GO FURTHER WITH THAT BECAUSE I WANT YOU
23     TO BE ABLE TO LOOK AT THE LANGUAGE.
24          CONDITION NO. 5 IS THE SEARCH AND SEIZURE, AND
25     THIS IS THE ONE THAT HAS TO DO WITH MONITORING VERSUS
```

1    FILTERING SOFTWARE.  AND, AGAIN, IT LOOKS LIKE THE LANGUAGE

2    IS SLIGHTLY DIFFERENT.  SO I WON'T GO ANY FURTHER WITH THAT

3    ONE.

4              THE NEXT ONE THAT THE DEFENSE OBJECTED TO WAS

5    NO. 6, CONDITION NO. 6.  AND THE LANGUAGE USED WAS:

6         *"DEFENDANT SHALL NOT ACCESS VIA COMPUTER ANY MATERIAL*

7         *THAT RELATES TO CHILD PORNOGRAPHY."*

8              SO IN ONE OF THE NINTH CIRCUIT CASES, IN YODER, I

9    THINK, Y-O-D-E-R, IN 2007, THE NINTH CIRCUIT SEEMED TO

10   PREFER LANGUAGE "*ANY MATERIAL THAT RELATES TO DEPICTIONS OF*

11   *CHILD PORNOGRAPHY."*

12             SO IF I WERE IMPOSING THAT CONDITION, I WOULD

13   PROBABLY CHANGE THE LANGUAGE CONSISTENTLY.

14             ANOTHER CASE FROM THE CIRCUIT IS COPE, C-O-P-E,

15   AND I THINK THESE CASES ARE CITED IN YOUR PAPERS.

16             SO THE CONCERN I THINK THAT DEFENSE EXPRESSED IS

17   THAT THE CONDITION SEEMS TO BE SO BROAD IT'S OVERBROAD,

18   BECAUSE DEFENDANT BELIEVES THAT THERE WOULD BE MATERIALS

19   THAT THE DEFENDANT MAYBE COULD NOT USE WITHOUT VIOLATING

20   THAT CONDITION THAT CLEARLY WE WEREN'T REFERENCING.

21             SO THE COURT WOULD BE INCLINED TO MODIFY, IF THE

22   COURT WERE GOING TO IMPOSE THAT CONDITION, TO PERMIT THE

23   DEFENDANT TO KEEP THINGS LIKE JOURNALS OR PARTICIPATE IN

24   WRITINGS OF A SEXUAL AUTOBIOGRAPHY THAT IS NOT CHILD

25   PORNOGRAPHY.

```
 1            SO SOME MODIFICATION TO THAT TO COVER THE

 2    OBJECTION THAT WAS RAISED.

 3            CONDITION NO. 7 IS THE CONDITION -- THIS CONDITION

 4    I BELIEVE WAS APPROVED IN THAT REARDEN CASE, R-E-A-R-D-E-N,

 5    FROM THE NINTH CIRCUIT.  SO I WASN'T PLANNING TO MAKE ANY

 6    MODIFICATION TO THAT LANGUAGE.

 7            THE LANGUAGE THAT'S SOMEWHAT TROUBLING AND IN A

 8    LOT OF THESE CASES WITH CONDITIONS OF SUPERVISED RELEASE,

 9    WHEN PROBATION SAYS, "WITHOUT THE PRIOR APPROVAL OF

10    PROBATION."  I SOMETIMES THINK THAT ALL PROBATION IS SAYING

11    IS ASK ME AND I MAY GIVE YOU THE APPROVAL, AND THEN YOU CAN

12    DO IT.

13            BUT WHEN WE READ IT, WE MAY BE THINKING THAT WHAT

14    PROBATION IS SAYING -- THAT WE ARE GIVING PROBATION TOO MUCH

15    DISCRETION.

16            SO THAT MAY BE ONE OF THE CONCERNS THAT YOU MAY

17    HAVE, AND SO WE COULD CERTAINLY TRY TO USE SOME LANGUAGE

18    THAT WOULD INDICATE THAT WE'RE NOT JUST LEAVING IT UP TO

19    PROBATION TO DECIDE WHEN, BUT THAT PROBATION COULD CERTAINLY

20    ALLOW THE DEFENDANT TO USE SOMETHING THAT THE COURT HAS

21    SAID -- PRECLUDED FROM USING BECAUSE PROBATION NOW THINKS

22    IT'S APPROPRIATE FOR YOU TO DO THAT.

23            SO THAT WAS TROUBLING, AND WE MAY JUST WANT TO

24    ADJUST THE LANGUAGE.

25            BUT NO. 9 WAS THE OTHER ONE THAT WAS OBJECTED TO
```

```
 1    THAT I WANTED TO ADDRESS.
 2              "DEFENDANT SHALL PARTICIPATE IN A
 3    PSYCHOLOGICAL/PSYCHIATRIC COUNSELING OR A SEX OFFENDER
 4    TREATMENT PROGRAM WHICH MAY INCLUDE INPATIENT TREATMENT,"
 5    THEN THE LANGUAGE "AS APPROVED AND DIRECTED BY PROBATION."
 6              AND I THINK THE CONCERN WAS THAT DEFENDANT OBJECTS
 7    TO THIS CONDITION TO THE EXTENT THAT IT REQUIRES INPATIENT
 8    TREATMENT, PSYCHOLOGICAL TESTING, POLYGRAPH TESTING.
 9              NOW, IT APPEARS THAT THE NINTH CIRCUIT NOW,
10    THROUGH CASES, HAS ACTUALLY APPROVED OF SOME OF THESE
11    CONDITIONS, OR AT LEAST HAVE SAID THAT IT WASN'T ERROR FOR
12    THE COURT TO IMPOSE THEM.  SO IT SEEMS TO BE SUPPORTED BY
13    NINTH CIRCUIT AUTHORITY.
14              BUT IF THE CONCERN WAS WHO DECIDES WHETHER OR NOT
15    THE DEFENDANT NEEDS THIS TYPE OF TREATMENT, SHOULD IT BE
16    PROBATION, SHOULD IT BE AT A HIGHER LEVEL, SOMEONE THAT HAS
17    MORE EXPERIENCE OR EXPERTISE IN THIS AREA, THEN OBVIOUSLY WE
18    COULD MAKE SOME ADJUSTMENT IF WE NEEDED TO ADJUST THAT
19    LANGUAGE.
20              THE COURT HAS SAID -- NINTH CIRCUIT HAS SAID
21    LEAVING SOME OF THESE DECISIONS REGARDING WHETHER THE
22    DEFENDANT SHOULD BE AN INPATIENT IN PROBATION'S HANDS COULD
23    BE UNCONSTITUTIONAL, ESPECIALLY IF THERE'S SOME REQUIREMENT
24    THAT THERE WOULD BE PRESCRIBED MEDICATION.
25              SO I THINK WE COULD MODIFY LANGUAGE, TO THE EXTENT
```

```
 1    THAT WE NEED TO, TO MAKE SURE THAT IT IS NOT BROADER THAN IT

 2    SHOULD BE.

 3              INCLUDED IN THAT CONDITION, NO. 9, IS THE LANGUAGE

 4    THAT "AS DIRECTED BY PROBATION" -- LET'S SEE.

 5              THE LANGUAGE IS THAT "DEFENDANT SHALL TAKE ALL

 6    PRESCRIBED MEDICATION AS DIRECTED BY PROBATION."  BUT MAYBE

 7    THE FOCUS SHOULD BE SOMEONE ELSE WHO HAS THE AREA OF

 8    EXPERTISE DECIDES IF THE MEDICATION IS NEEDED; AND IF THE

 9    MEDICATION IS PRESCRIBED AND NEEDED, IT'S PROBATION THAT'S

10    JUST MONITORING THAT IT HAS TO BE TAKEN.

11              IF THERE IS CONCERN ABOUT ANTI-PSYCHOTIC OR

12    HORMONAL DRUGS, WE CAN CERTAINLY ADDRESS THOSE IN THE

13    LANGUAGE.  THOSE COULD BE EXCLUDED, THOSE COULD REQUIRE

14    ACTUALLY A HEARING BY THE COURT, ESPECIALLY IF THE DEFENDANT

15    OBJECTS TO HAVING TO TAKE THOSE TYPES OF DRUGS.

16              I HAVE JUST SELECTED SOME OF THEM, BUT WHAT I'D

17    FIRST LIKE TO LET YOU DO IS READ NOW THE MOST RECENT

18    INFORMATION THAT WE'VE RECEIVED FROM PROBATION BASED UPON

19    THE LANGUAGE THAT THEY WOULD USE TODAY, ESPECIALLY AS TO

20    THESE CONDITIONS THAT HAVE TO DO WITH COMPUTER MONITORING OR

21    USE OF COMPUTERS.

22              NO. 12 SEEMS TO BE THE ONE THAT -- THE LANGUAGE IS

23    "DEFENDANT SHALL NOT POSSESS ANY MATERIALS INCLUDING

24    PICTURES, PHOTOGRAPHS, BOOKS, WRITINGS, DRAWINGS, VIDEOS, OR

25    VIDEO GAMES DEPICTING OR DESCRIBING CHILD PORNOGRAPHY."
```

1         AND THE OBJECTION WAS THAT THIS CONDITION IS SO

2    BROAD THAT IT WOULD PREVENT THE DEFENDANT FROM POSSESSING

3    HIS OWN PRESENTENCE REPORT, INCLUDING ALL COPIES OF STATUTES

4    IN CASES HE MAY NEED IF HE WERE TO BRING A COLLATERAL

5    CHALLENGE TO THE SENTENCING.

6         AND I THINK THAT WE COULD MODIFY THE LANGUAGE TO

7    EXCLUDE THINGS THAT WE THINK MAY BE NECESSARY FOR HIM TO

8    HAVE IN HIS POSSESSION, READ, AND INCLUDE IN ANY DOCUMENT

9    THAT HE'S TRYING TO FILE WITH THE COURT.

10        CONDITION NO. 11 READS: *"THE DEFENDANT SHALL NOT*

11   *POSSESS ANY MATERIALS INCLUDING PICTURES, PHOTOGRAPHS,*

12   *BOOKS, WRITINGS, DRAWINGS, VIDEOS, VIDEO GAMES DEPICTING*

13   *AND/OR DESCRIBING SEXUALLY EXPLICIT CONDUCT."*

14        AND THE NINTH CIRCUIT CASES -- I THINK, AGAIN, THE

15   REARDEN CASE, R-E-A-R-D-E-N, HELD THAT THE DISTRICT COURT

16   DID NOT ERR IN LIMITING THE DEFENDANT'S POSSESSION OF

17   MATERIALS DEPICTING, IN QUOTES, "SEXUALLY EXPLICIT CONDUCT,"

18   END OF QUOTE.  IT'S NOT VAGUE.  IT'S NOT OVERBROAD.

19        IN THE BEE CASE, B-E-E, FROM THE NINTH CIRCUIT,

20   PROBABLY CITED IN YOUR PAPERS, THE CIRCUIT AFFIRMED THE

21   DISTRICT COURT'S IMPOSITION OF A CONDITION PROHIBITING A

22   DEFENDANT WHO HAD BEEN CONVICTED OF ENGAGING IN SEXUALLY

23   ABUSIVE CONDUCT WITH A MINOR UNDER THE AGE OF 12 FROM -- AND

24   THIS WAS THE LANGUAGE -- *"POSSESSING SEXUALLY STIMULATING OR*

25   *SEXUALLY ORIENTED MATERIAL,"* END OF QUOTE.

*JULY 30, 2010*

1            SO TO THE EXTENT THAT YOU ARE ASKING THAT THE

2     COURT MODIFY ANY OF THE LANGUAGE SO THAT IT'S CONSISTENT

3     WITH DECISIONS FROM THE NINTH CIRCUIT WHERE CERTAIN LANGUAGE

4     HAS BEEN APPROVED, THEN, OF COURSE, THE COURT COULD ADDRESS

5     THAT.

6            SO WHY DON'T WE BREAK NOW, AND SINCE MOST OF YOU

7     KNOW I'M A NON-LUNCH EATER, HOW MUCH TIME WOULD YOU LIKE?

8            WE CAN BREAK FOR 30 MINUTES TO GIVE EVERYBODY AN

9     OPPORTUNITY TO REST, DO WHATEVER YOU NEED TO DO.  IF YOU

10    NEED A LITTLE BIT MORE TIME, I CAN GIVE YOU A LITTLE BIT

11    MORE TIME.  I JUST NEED TO KNOW WHEN TO ORDER YOU BACK.

12            **MR. DYBWAD:**  THIRTY MINUTES WOULD BE FINE FOR THE

13    DEFENSE, YOUR HONOR.

14            **THE COURT:**  OKAY.  HOW ABOUT THE GOVERNMENT?

15            **MS. PEACE GARNETT:**  YES, YOUR HONOR.

16            **THE COURT:**  HOW ABOUT THE COURT REPORTER?

17            **THE COURT REPORTER:**  THAT'S FINE, YOUR HONOR,

18    THANK YOU.

19            **THE COURT:**  ALL RIGHT.  THEN, OUR RETURN TIME WILL

20    BE 1:30.  THANK YOU.

21                    *(WHEREUPON AT 1:00 P.M.,*

22                    *THE LUNCH RECESS WAS TAKEN.)*

23    ///

24    ///

25    ///

1        LOS ANGELES, CALIFORNIA; FRIDAY, JULY 30, 2010

2                    1:30 P.M.

3                    --oOo--

4        THE COURT:  WE'RE ON THE RECORD, AND EVERYONE IS

5    HERE WHO NEEDS TO BE HERE IS HERE, THE DEFENDANT AND

6    COUNSEL, THE GOVERNMENT AND THE AGENT.

7            SO I THINK I'LL JUST PICK UP WHERE I LEFT OFF.

8            WE WERE JUST TALKING ABOUT THE CONDITIONS, AND I

9    PROVIDED YOU WITH JUST THIS ADDITIONAL INFORMATION FROM

10   PROBATION AS TO THE LANGUAGE THAT WOULD BE USED TODAY IF

11   THEY WERE ASKING FOR THESE CONDITIONS.

12           SO MY QUESTION WOULD BE WOULD THE OBJECTIONS BE

13   THE SAME THAT WERE RAISED BY THE DEFENDANT AND WOULD THE

14   ARGUMENTS BE THE SAME, OR IS THERE SOMETHING IN ADDITION TO

15   WHAT'S ALREADY BEFORE THE COURT THAT YOU WOULD PUT ON THE

16   RECORD CONCERNING ANY OF THESE CONDITIONS?

17           SO I'LL HEAR FROM THE DEFENSE FIRST.

18           SO YOU CAN ASSUME, FOR PURPOSES OF THIS QUESTION,

19   THAT THE CONDITIONS THAT WERE IMPOSED AT THE PRIOR SENTENCE

20   WOULD BE THE SAME CONDITIONS TO BE IMPOSED, EXCEPT I WOULD

21   MODIFY THE LANGUAGE CONSISTENT WITH WHAT PROBATION HAS

22   INDICATED TO US THE LANGUAGE WOULD BE TODAY, AND THEN THE

23   FEW COMMENTS THAT I MADE BEFORE WE TOOK OUR BREAK AS TO

24   CHANGING THE LANGUAGE SOMEWHAT.

25       MR. DYBWAD:  I'LL TRY AND MAKE MY TIME PRODUCTIVE,

```
 1    YOUR HONOR.

 2              THE PROPOSED CONDITION NO. 1 FROM THE PROBATION

 3    OFFICE ABOUT COMPUTER-RELATED DEVICES....

 4              THE COURT:  WHICH I THINK IS NO. 4 IN THE JUDGMENT

 5    AND COMMITMENT ORDER AT THE LAST SENTENCING, AND I HAVE THE

 6    BENEFIT OF THE OBJECTION THAT YOU MADE TO THAT.

 7              MR. DYBWAD:  AND, YOUR HONOR, I WOULD AGREE WITH

 8    THE PROBATION OFFICE'S CONDITION NO. 1 AS A REPLACEMENT.

 9              THE COURT:  OKAY.  NO OBJECTION, THEN?

10              MR. DYBWAD:  NO OBJECTION TO THAT.

11              THE COURT:  OKAY.

12              MR. DYBWAD:  NO. 2, AS PROPOSED BY PROBATION IN

13    THE DOCUMENT ENTITLED AS OF JULY 2010, I WOULD HAVE NO

14    OBJECTION TO THAT.

15              THE COURT:  OKAY.  AND I THINK THAT WAS CONDITION

16    NO. 5.

17              MR. DYBWAD:  I BELIEVE THAT'S CORRECT.

18              CONDITION NO. 3 THAT IS IN THE DOCUMENT ENTITLED

19    "PROBATION OFFICE'S STANDARD COMPUTER CONDITIONS AS OF

20    JULY 2010," THAT IS A NEW ONE THAT I'VE SEEN.  I'VE NOT SEEN

21    THIS ONE PREVIOUSLY.

22              MY OBJECTION WOULD BE, I SUSPECT, THAT AS WITH ANY

23    TIME YOU ORDER THE DEFENDANT TO PAY SOMETHING, IT HAS TO BE

24    BASED ON DEMONSTRATED FINANCIAL ABILITY TO PAY.

25              THE COURT:  AND I WOULD AGREE WITH THAT.  AND SO
```

```
 1   ONE OF THE QUESTIONS THAT I HAVE THAT WE SHOULD ADDRESS THIS

 2   AFTERNOON IS THE DEFENDANT'S FINANCIAL STATUS AND HIS

 3   ABILITY TO PAY.  SO THE PART OF THE CONDITION THAT YOU ARE

 4   OBJECTING TO IS THAT HE SHOULD PAY THE COSTS FOR THIS

 5   COMPUTER MONITORING.

 6          MR. DYBWAD:  THAT'S CORRECT, YOUR HONOR.

 7          THE COURT:  OKAY.

 8          MR. DYBWAD:  AND AS TO CONDITION NO. 4, THERE

 9   WOULD BE NO OBJECTION.

10          THE COURT:  NOW, PROBATION ALSO ATTACHED FOR US

11   THESE GENERAL PROVISIONS, AND SO I HAVEN'T SEEN THIS BEFORE.

12          YOU MAY BE MORE FAMILIAR WITH THEM, BUT I GUESS

13   THESE ARE THE GENERAL PROVISIONS THAT PROBATION ASKS THE

14   DEFENDANTS TO AGREE TO THAT ARE BEING SUPERVISED ONCE THEY

15   HAVE COMPLETED THEIR CUSTODY SENTENCE.  THEY ARE CALLED

16   GENERAL PROVISIONS.

17          SO DID YOU TAKE A LOOK AT THAT, AND DO YOU WANT TO

18   ADDRESS THOSE?

19          IT'S NOT A PART OF SOMETHING THAT I WOULD

20   ARTICULATE ON THE RECORD; BUT TO THE EXTENT THAT I'M SAYING

21   THE DEFENDANT SHOULD ALSO COMPLY WITH THE RULES AND

22   REGULATIONS OF PROBATION, THESE PROBABLY DO COME INTO PLAY.

23          MR. DYBWAD:  AND, YOUR HONOR, I THINK I WOULD

24   DEFER TO THE COURT.  THEY'RE NOT EXPLICITLY CODIFIED IN THE

25   SUPERVISED RELEASE CONDITIONS, AND AS A RESULT, SHOULD A
```

```
 1  PROBLEM ARISE LATER ON DOWN THE ROAD, I THINK THEY COULD BE

 2  ADEQUATELY ADDRESSED AT THAT TIME.

 3         THE COURT:  ALL RIGHT.  SO THE OTHER CONDITIONS OF

 4  SUPERVISED RELEASE, I'M JUST ASSUMING THAT YOUR OBJECTIONS

 5  WOULD BE THOSE THAT YOU PUT IN WRITING; BUT IF THERE ARE

 6  FURTHER COMMENTS TO BE MADE ON ANY OF THEM, THIS IS THE TIME

 7  TO DO SO.

 8         MR. DYBWAD:  NO, YOUR HONOR.  THEY'RE BASICALLY

 9  PUT IN WRITING.

10         MY MEMORY OF THEM IS THEY BOIL DOWN TO THE COPE

11  CASE, ESPECIALLY.  ANY TIME THERE WAS LANGUAGE IN THE

12  ORIGINAL CONDITIONS ABOUT ANYTHING, FOR EXAMPLE, DESCRIBING

13  SEXUALLY EXPLICIT CONDUCT, IF THE LANGUAGE IN SOME OF THE

14  ORIGINAL CONDITIONS IS SO BROAD AS TO PREVENT -- FOR

15  EXAMPLE, POSSESSION OF A P.S.R. OR OTHER LEGAL PAPERS -- AND

16  TO THE EXTENT THAT THOSE ARE OVERBROAD, A CARVE-OUT OF AN

17  EXCEPTION TO THEM.

18         I THINK AS TO THE INPATIENT TREATMENT --

19         THE COURT:  LET ME ASK YOU JUST BEFORE WE LEAVE

20  THERE BECAUSE -- I THINK THAT'S NO. 6.

21         SO WOULD YOU BE SATISFIED OR DOES IT CURE THE

22  CONCERN THAT YOU HAVE IF THE COURT WERE TO ADD SOME LANGUAGE

23  TO SAY THAT IT DOES NOT APPLY TO JOURNALS OR -- LET'S SEE.

24         "TO CLARIFY, THAT COPE MAY KEEP JOURNALS OR

25  PARTICIPATE IN THE WRITING OF A," IN QUOTES, "'SEXUAL
```

1    *AUTOBIOGRAPHY,' IF REQUIRED BY THE TREATMENT PROGRAM THAT*

2    *HE'S IN."*

3           BECAUSE APPARENTLY <u>COPE</u>, THAT WAS ONE OF THE

4    ISSUES THAT, IF YOU'RE ORDERING A DEFENDANT TO PARTICIPATE

5    IN A TREATMENT PROGRAM AND ONE OF THE REQUIREMENTS OF THE

6    TREATMENT PROGRAM IS YOU KEEP SOME KIND OF JOURNAL OR

7    SOMETHING AND THE CONTENT OF THAT JOURNAL WOULD SEEM TO PUT

8    THE DEFENDANT IN VIOLATION OF THE CONDITION, THAT THERE

9    COULD BE LANGUAGE THAT WOULD SAY "EXCEPT AS REQUIRED BY ANY

10   SEX OFFENDER TREATMENT PROGRAM."

11          **MR. DYBWAD:**  AS MR. COPE WAS ALSO ONE OF MY

12   CLIENTS, YOUR HONOR, I'M FAMILIAR WITH THE OPINION.

13          AND I THINK A CARVE-OUT THERE WOULD BE APPROPRIATE

14   AND AS WELL AS ANY LEGAL MATERIALS NECESSARY TO, I SUPPOSE,

15   A DIRECT APPEAL OR COLLATERAL ATTACK OF THE SENTENCE,

16   CONVICTION.

17          **THE COURT:**  YOU MAY CONTINUE.

18          **MR. DYBWAD:**  YOUR HONOR, AS TO THE INPATIENT

19   TREATMENT, JUDGE TAKASUGI ACTUALLY EXPLICITLY EXCLUDED ABEL

20   TESTING ON HIS OWN AT THE ORIGINAL SENTENCING.

21          I THINK THAT THERE IS A WAY TO MODIFY CONDITION 9

22   TO SIMPLY SAY "*WHICH MAY INCLUDE INPATIENT TREATMENT AS*

23   *APPROVED AND DIRECTED BY THE PROBATION OFFICER,*" AND THEN

24   INSTEAD OF THE PERIOD, COMMA, "*AND AS CONSENTED TO BY*

25   *DEFENSE COUNSEL*" OR "*AND WITH PRIOR CONSENT OF DEFENSE*

1    *COUNSEL."*

2              **THE COURT:**  BY THE DEFENDANT AND COUNSEL?

3              **MR. DYBWAD:**  BY THE DEFENDANT AND COUNSEL.

4              **THE COURT:**  SO HERE, ARE YOU ASKING THAT THE COURT

5    NOT INCLUDE THE ABEL TESTING, OR YOU'RE OKAY WITH THE ABEL

6    TESTING AS LONG AS IT INCLUDES THE ADDITIONAL LANGUAGE OF

7    THE MODIFIER?

8              **MR. DYBWAD:**  I WOULD ASK THAT THE ABEL TESTING

9    REMAIN EXCLUDED.

10             AND I BELIEVE BECAUSE IT WAS EXCLUDED THE FIRST

11   TIME -- I'M NOT SURE I ADDRESSED THE OPINIONS ON THIS.  BUT

12   THERE ARE A NUMBER OF OPINIONS DOUBTING THE VALIDITY, THE

13   SCIENTIFIC VALIDITY OF ABEL TESTING.

14             **THE COURT:**  OKAY.  I HAVE TO ADMIT, I DON'T THINK

15   I KNOW WHAT ABEL TESTING IS.  I HAVE SPOKEN TO PROBATION

16   ABOUT IT ON OTHER CASES, NOT THIS ONE.  AND I'M NOT SURE

17   THAT PROBATION EVEN DOES IT ALL THE TIME, WHATEVER IT IS.

18             ALL RIGHT.  YOU MAY CONTINUE.

19             **MR. DYBWAD:**  AND, I GUESS, NOW I'M TURNING MY

20   ATTENTION TO CONDITION NO. 10.

21             **THE COURT:**  THE CAUSE PART OF IT I THINK HAS THE

22   SAME ISSUE.

23             **MR. DYBWAD:**  THE CAUSE PART OF IT WAS THE

24   OBJECTION AND THE SAME OBJECTION RAISED EARLIER.

25             NO. 11, THE OBJECTION FALLS BACK INTO THE

1    "DEPICTING AND/OR DESCRIBING."  AND I WOULD ASK FOR THE SAME

2    CARVE-OUT THAT WE DISCUSSED EARLIER FOR JOURNALS AS PART OF

3    ANY TREATMENT PROGRAM AS WELL AS MATERIALS THAT WOULD BE

4    NECESSARY FOR A DIRECT APPEAL OR COLLATERAL ATTACK OF THE

5    SENTENCE, LEGAL MATERIALS.

6           **THE COURT:**  WHAT ABOUT THE LANGUAGE.  THE LANGUAGE

7    THAT PROBATION USES IS, IN QUOTES, "*SEXUALLY EXPLICIT*

8    *CONDUCT,*" END OF QUOTE.

9           IN SOME OF THE CASES, THE NINTH CIRCUIT SEEMS TO

10   BE APPROVING OF THE LANGUAGE SUCH AS "*SEXUALLY STIMULATING*

11   *OR SEXUALLY ORIENTED MATERIALS.*"

12          SO IS THE LANGUAGE SOMETHING YOU ARE CONCERNED

13   ABOUT, OR WAS IT JUST THAT IT NOT BE TOO BROAD SO THAT

14   DEFENDANT COULD, IN FACT, KEEP JOURNALS, CONSULT OR WRITE ON

15   THOSE THINGS THAT MAY BE NECESSARY FOR A TREATMENT PROGRAM

16   AS WELL AS TO ADDRESS THE LEGAL ISSUES?

17          **MR. DYBWAD:**  YOUR HONOR, I BELIEVE THE OBJECTION

18   WAS A COMBINATION OF WHAT THE COURT TALKED ABOUT.  IT SAID:

19   THE WORD DESCRIBING WHEN IN CONNECTION WITH THE TERM

20   SEXUALLY EXPLICIT CONDUCT CAN, IN SOME CIRCUMSTANCES, BECOME

21   TOO BROAD.

22          I BELIEVE THE REFERENCE TO "SEXUALLY EXPLICIT

23   CONDUCT" REFERS BACK TO THE STATUTE WHICH THEN LAYS OUT

24   FACTORS.

25          **THE COURT:**  SO THE LANGUAGE THAT APPARENTLY HAS

1    BEEN APPROVED -- I GUESS APPROVED BY THE NINTH CIRCUIT IS

2    *"SEXUALLY STIMULATING OR SEXUALLY ORIENTED MATERIALS."*

3           DOES THAT HELP?

4           **MR. DYBWAD:**  YOUR HONOR, I THINK MY POSITION WOULD

5    STILL BE THAT, WHEN COMBINED WITH THE WORD *"DESCRIBING,"*

6    IT'S TOO BROAD.  BUT I WOULD SUBMIT.

7           **THE COURT:**  OKAY.

8           **MR. DYBWAD:**  THEN AS TO NO. 12, AGAIN, MY

9    OBJECTION WOULD BE THE SAME, DESCRIBING CHILD PORNOGRAPHY,

10   BOTH SHOULD BE SUBJECT TO THE AUTOBIOGRAPHY CARVE-OUT AND

11   THE LEGAL MATERIAL CARVE-OUT.

12           AND THEN I WOULD SIMPLY ALSO OBJECT THAT IT'S

13   POTENTIALLY VAGUE TO SAY, FOR EXAMPLE, A "NEW YORK TIMES"

14   ARTICLE COULD DESCRIBE CHILD PORNOGRAPHY IN THE BROADEST

15   SENSE, AND A BROAD READING OF THAT CONDITION WOULD PROHIBIT

16   MR. PROWLER FROM POSSESSING THAT.

17           **THE COURT:**  ALL RIGHT.

18           **MR. DYBWAD:**  AS TO THE OTHERS, I THINK MY

19   OBJECTIONS ARE NOTED FOR THE RECORD.  I DON'T NEED TO REPEAT

20   THEM HERE.

21           **THE COURT:**  OKAY.

22           DOES THE GOVERNMENT WISH TO ADDRESS THE CONDITIONS

23   OF SUPERVISED RELEASE EITHER AS COULD BE MODIFIED BASED ON

24   THE DOCUMENT PROBATION GAVE US OR THE COMMENTS THAT DEFENSE

25   COUNSEL HAS MADE OR JUST ANY NEW LAW OR ANYTHING ELSE THAT

1    WOULD SUGGEST THAT THE LANGUAGE SHOULD BE DIFFERENT?

2            **MS. PEACE GARNETT:**  JUST BRIEFLY, YOUR HONOR.

3            AS TO CONDITION NO. 9, GOVERNMENT WOULD OBJECT TO

4    INCLUDING A CONDITION THAT ABEL TESTING OR ANY OTHER

5    INPATIENT TESTING BE GIVEN ONLY AT THE CONSENT OF DEFENDANT

6    AND HIS COUNSEL FOR THE REASONS STATED IN ITS PAPERS,

7    SPECIFICALLY, THAT IT SHOULD BE THE PARTICULAR TREATMENT

8    FACILITY THAT DECIDES WHETHER OR NOT SUCH TREATMENT IS

9    APPROPRIATE.

10           THE NINTH CIRCUIT HAS AFFIRMED THE USE OF ABEL

11   TESTING.  WHERE THE ISSUE COMES IN IS WHEN PLETH- -- LET ME

12   GET THE ACTUAL LANGUAGE HERE -- PLETHYSMOGRAPHY TESTING IS

13   USED.  AND I BELIEVE THAT IS WHERE A DEVICE IS AFFIXED TO

14   THE DEFENDANT'S PRIVATE PARTS AND HE'S SHOWN PICTURES TO

15   DETERMINE WHETHER OR NOT HE'S STIMULATED.  I THINK THAT IS

16   THE ONLY ONE THAT HAS COME UNDER FIRE.

17           AND SO THE GOVERNMENT HAS NO OBJECTION TO THE

18   COURT PRECLUDING THAT SORT OF TESTING, BUT AS TO THE OTHER

19   TYPES OF TESTING, I BELIEVE IT'S APPROPRIATE.

20           **THE COURT:**  I DON'T THINK THAT WAS ACTUALLY

21   INCLUDED ANYWHERE.  I WAS LOOKING FOR IT, BUT I DIDN'T --

22           **MS. PEACE GARNETT:**  IT DIDN'T REALLY DEFINE IT.

23   BUT JUST, YOU KNOW, THAT'S WHERE THERE HAS BEEN AN ISSUE.

24           BUT ABEL TESTING -- I BELIEVE WE CITED CASES FROM

25   THE NINTH CIRCUIT WHERE ABEL TESTING WAS AFFIRMED.

*JULY 30, 2010*

```
 1              THE COURT:  YES, AND I UNDERSTAND THAT THE NINTH

 2   CIRCUIT HAS FOUND IT TO BE CONSTITUTIONAL.

 3              MS. PEACE GARNETT:  AS TO CONDITION NO. 11, THE

 4   USE OF SEXUALLY EXPLICIT CONDUCT, I THINK, WOULD BE THE MOST

 5   APPROPRIATE WAY TO DETERMINE THE TYPES OF MATERIALS THAT

 6   SHOULD BE PRECLUDED, AND THAT WAS ALSO AFFIRMED BY THE NINTH

 7   CIRCUIT IN THE REARDEN CASE.

 8              IN THAT CASE, THE PARTICULAR CONDITION PRECLUDED

 9   THE DEFENDANT FROM POSSESSING ANY MATERIALS THAT DEPICTED

10   SEXUALLY EXPLICIT CONDUCT.

11              I THINK IF WE ADDED LANGUAGE THAT SAID DEFENDANT

12   WAS PRECLUDED FROM POSSESSING SEXUALLY STIMULATING CONDUCT,

13   THEN IT BECOMES A LITTLE BIT MORE FOGGY BECAUSE IT'S NOT

14   DEFINED BY THE STATUTE WHERE SEXUALLY EXPLICIT CONDUCT IS

15   DEFINED; AND THEN YOU'RE ALSO -- IT BECOMES SUBJECTIVE AS TO

16   WHAT STIMULATES THE DEFENDANT.

17              AS TO CONDITION NO. 11, THE GOVERNMENT'S POSITION

18   IS THAT IT SHOULD REMAIN AS IS.

19              AS TO CONDITION NO. 12, WE AGREE THAT SOME

20   MODIFICATION OF THE LANGUAGE WOULD BE APPROPRIATE TO ALLOW

21   THE DEFENDANT TO POSSESS A P.S.R. OR JOURNAL OR THAT SORT OF

22   THING.

23              AND I BELIEVE I STATED IN OUR POSITION OR RESPONSE

24   TO THE DEFENDANT'S OBJECTION SOME LANGUAGE THAT WE THINK

25   WOULD BE APPROPRIATE, AND I THINK IT'S IN LINE WITH WHAT THE
```

```
 1    COURT AND PROBATION ARE CURRENTLY USING.

 2            AND AS TO THE REMAINDER OF THE CONDITIONS, THE

 3    GOVERNMENT WOULD SUBMIT ON ITS PAPERS.

 4            THE COURT:  OKAY.  ALL RIGHT.

 5            BASED UPON THE COURT'S TENTATIVE AS TO HOW THE

 6    COURT WOULD CALCULATE THE GUIDELINES AND IF THE GUIDELINE

 7    RANGE IS BASED UPON THE COURT'S CALCULATION, 151 TO 188

 8    MONTHS, I WOULD LET BOTH SIDES NOW BE HEARD CONSIDERING

 9    OTHER FACTORS THAT NEED TO BE CONSIDERED AND MAYBE EVEN SOME

10    OF THE THINGS THAT WE'VE ALREADY TALKED ABOUT, WHAT THE

11    APPROPRIATE SENTENCE SHOULD BE, SPECIFICALLY LOOKING AT

12    18 UNITED STATES CODE 3553(A).

13            AND MAYBE I'LL MAKE IT EVEN A LITTLE BIT BROADER.

14            IF WE LOOK AT THE COURT'S TENTATIVE GUIDELINE

15    CALCULATION, YOU MAY ALSO LOOK AT YOUR OWN GUIDELINE

16    CALCULATION AND DISCUSS THE 18 UNITED STATES CODE 3553(A)

17    FACTORS TO INDICATE TO THE COURT WHAT YOU THINK THE

18    APPROPRIATE SENTENCE SHOULD BE AND WHY YOU THINK THAT IS THE

19    APPROPRIATE SENTENCE.

20            SO THIS WOULD BE THE APPROPRIATE TIME FOR

21    GOVERNMENT'S COUNSEL -- AND YOU RAISED THIS ISSUE EARLIER --

22    IF THE COURT DOES NOT INCREASE UNDER THE GUIDELINES FOR

23    CERTAIN CONDUCT, THAT YOU WOULD LIKE TO ADDRESS AN UPWARD

24    DEPARTURE.

25            SO I'LL HEAR FROM THE DEFENSE FIRST, AND THEN I'LL
```

1    HEAR FROM THE GOVERNMENT.

2            SO THIS IS APPROPRIATE SENTENCE BASED ON THE

3    CALCULATION OF THE GUIDELINES EITHER AS PROBATION HAS

4    CALCULATED THEM, THE DEFENSE CALCULATED THEM, OR THE COURT

5    HAS CALCULATED THEM, UPWARD DEPARTURE, DOWNWARD DEPARTURE,

6    3553 FACTORS.

7            AND I DID NOT SAY EARLIER, BUT I WANTED TO SAY

8    THAT THE MOST RECENT DOCUMENT THAT WAS FILED WITH THE COURT

9    RE SENTENCING, THE ONE FILED YESTERDAY, IT DOES INCLUDE

10   LETTERS -- A LETTER FROM THE DEFENDANT'S FATHER, A LETTER

11   FROM THE DEFENDANT'S MOTHER.  I JUST WANTED THE RECORD TO

12   REFLECT THAT I DID READ THOSE LETTERS.

13           IT ALSO INCLUDED SOME CERTIFICATES, THINGS THE

14   DEFENDANT HAS DONE AND COMPLETED SINCE HE'S BEEN IN THE

15   BUREAU OF PRISONS AWAITING SENTENCE.

16           I DID READ THOSE, AND THEY ARE CONSIDERED FOR

17   SENTENCING PURPOSES.

18           **MR. DYBWAD:**  AND, YOUR HONOR, IT'S THE DEFENSE

19   POSITION NOW, AS IT WAS IN 2007, THAT THE APPROPRIATE

20   SENTENCE -- AND I WOULD SAY IRRESPECTIVE OF THE COURT'S

21   GUIDELINES CALCULATIONS, ALTHOUGH I HAVE A SOMEWHAT

22   DIFFERENT VIEW -- IS THE TEN-YEAR SENTENCE.

23           **THE COURT:**  THAT'S THE SENTENCE THAT WAS

24   PREVIOUSLY IMPOSED.  RIGHT?

25           **MR. DYBWAD:**  THAT IS THE SENTENCE THAT WAS

1   PREVIOUSLY IMPOSED.

2            IN SOME SENSES, NOTHING HAS CHANGED SINCE 2007, IN

3   THE SENSE THAT OBVIOUSLY ONE COURT REVIEWED ALL OF THE

4   EVIDENCE IN FRONT OF IT, BOTH THE GUIDELINES AS WELL AS THE

5   3553(A) FACTORS, AND CAME TO THE CONCLUSION THAT A TEN-YEAR

6   SENTENCE WAS APPROPRIATE.  NOTHING, I THINK, IN MATERIAL

7   RESPECTS AS TO THAT HAS CHANGED.

8            ON THE FLIP SIDE, THERE HAS BEEN CHANGE, AND

9   THAT'S BEEN CHANGE BY MR. PROWLER DURING THE THREE YEARS IN

10  BETWEEN THE LAST SENTENCING AND THIS SENTENCING THAT I

11  BELIEVE THE COURT CAN AND SHOULD TAKE ACCOUNT OF.

12           THE COURT IS IN POSSESSION OF NUMEROUS OFTENTIMES

13  ENTITLED "SUPPLEMENTAL INFORMATION RE SENTENCING" THAT

14  DESCRIBE FIRST THAT MR. PROWLER HAS BEEN A MODEL PRISONER

15  WHILE AT F.C.I. SEAGOVILLE, AND THE COURT HAS A PROGRESS

16  REPORT -- A FAIRLY RECENT PROGRESS REPORT FROM F.C.I.

17  SEAGOVILLE IN THE RECORD BEFORE IT THAT DESCRIBES

18  MR. PROWLER MAKING PRODUCTIVE USE OF HIS TIME, NOT GETTING

19  IN TROUBLE, SETTING UP A FITNESS BOOKS LIBRARY.

20           AND I THINK THAT THAT IS SIGNIFICANT BECAUSE IT

21  SHOWS THAT MR. PROWLER IS RESPONDING WELL TO THE

22  REHABILITATION ASPECT OF THE INCARCERATION AT F.C.I.

23  SEAGOVILLE AND THAT LENDS SUPPORT TO THE INITIAL, ORIGINAL

24  SENTENCE OF TEN YEARS WAS THE SENTENCE THAT WAS CAPABLE OF

25  ACHIEVING ALL OF THE AIMS OF PUNISHMENT, INCLUDING THE AIM

*JULY 30, 2010*

```
 1    OF REHABILITATION.  AND WE CAN, THEN, NOW KNOW THAT THAT IS

 2    TRUE BECAUSE OF THE PROGRESS AT SEAGOVILLE.

 3            THERE IS ALSO IN FRONT OF THE COURT A NUMBER OF

 4    CERTIFICATES OF COMPLETION FROM THE ALEPH INSTITUTE,

 5    A-L-E-P-H.

 6            AND THAT SHOWS MR. PROWLER BEING -- AND I'M SURE

 7    THAT HE MAY DESCRIBE IT TO THE COURT -- IN CLOSER CONNECTION

 8    OR RECONNECTING TO HIS RELIGIOUS ROOTS, AND THAT IS

 9    SOMETHING THAT HAS BEEN IMPORTANT TO HIM OVER THE LAST THREE

10    YEARS.  AND HE HAS ACHIEVED A NUMBER OF CERTIFICATES OF

11    COMPLETION IN DIFFERENT TORAH STUDY CLASSES AND PRAYER

12    CLASSES, AND THE COURT HAS ALL THAT INFORMATION IN FRONT OF

13    IT.

14            AND I THINK THAT, IN SOME RESPECTS, NOTHING HAS

15    CHANGED.  THE TEN-YEAR SENTENCE IS STILL APPROPRIATE.  AND A

16    LOT HAS CHANGED IN TERMS OF INFORMATION AVAILABLE TO THE

17    COURT THAT SHOWS THAT A TEN-YEAR SENTENCE CAN AND WILL

18    ACHIEVE THE AIMS OF 3553(A) THAT THE COURT NEEDS TO TAKE

19    INTO ACCOUNT.

20            WHERE JUDGE TAKASUGI STARTED AND ENDED AND WHERE I

21    PICK UP NOW IS THE OVERARCHING INSTRUCTION OF 3553(A) IS TO

22    IMPOSE THE MINIMALLY SUFFICIENT SENTENCE TO ACHIEVE THE AIMS

23    OF PUNISHMENT.

24            AND THAT'S WHY I WAS DISCUSSING THAT THE

25    REHABILITATION AT SEAGOVILLE APPEARS TO BE WORKING WELL, AND
```

```
1    THAT IS A SPECIALLY DESIGNATED FACILITY FOR THESE TYPES OF

2    OFFENSES TO ACHIEVE THOSE REHABILITATIVE AIMS.

3              IN TERMS OF DETERRENT EFFECT AND PUNISHMENT

4    EFFECT, I'LL TALK BRIEFLY.  IN THE SOUTHERN DISTRICT OF

5    NEW YORK, I BELIEVE TWO OR THREE WEEKS AGO, THERE WAS A

6    RESENTENCING OF LYNNE STEWART, THE LAWYER WHO HAD BEEN

7    CONVICTED OF, IN SOME SENSE, PASSING ON TERRORIST MESSAGES.

8              AND AT THE ORIGINAL SENTENCING, JUDGE KOELTL HAD,

9    I BELIEVE, IMPOSED A 27- OR 28-MONTH SENTENCE.  AND SHE HAD

10   STEPPED OUT OF THE COURTROOM AND SAID SHE COULD DO THE TIME

11   STANDING ON HER HEAD.

12             WHEN SHE CAME BACK FOR RESENTENCING, JUDGE KOELTL

13   EXPLICITLY TOOK INTO ACCOUNT FOR HER POST ORIGINAL

14   SENTENCING COMMENTS AND SAYING BASED ON YOUR COMMENTS, THAT

15   ORIGINAL SENTENCE WAS INSUFFICIENT TO ACHIEVE THE AIM OF

16   3553(A); SPECIFICALLY, IT OBVIOUSLY DID NOT PROVIDE ADEQUATE

17   PUNISHMENT OR DETERRENCE.

18             HERE WE'RE IN A SOMEWHAT DIFFERENT SITUATION WHERE

19   THE GOVERNMENT DID ISSUE A PRESS RELEASE AT THE TIME OF

20   MR. PROWLER'S ORIGINAL SENTENCING.

21             THAT PRESS RELEASE, WHICH IS ATTACHED AS EXHIBIT

22   "A," INDICATES THAT AT SOME LEVEL THE GOVERNMENT OR THE

23   I.C.E. AGENT QUOTED VIEWED A TEN-YEAR SENTENCE AS SUFFICIENT

24   FOR THE PURPOSES OF DETERRENCE BECAUSE, IN THAT PRESS

25   RELEASE, THEY SAY THIS SENTENCE SENDS A STRONG MESSAGE AND
```

1   WORDS TO THE EFFECT OF "LET THIS SENTENCE BE A LESSON."

2          AND I DON'T WANT TO HARP ON IT, BUT I THINK IT'S

3   IMPORTANT TO POINT OUT THAT, EVEN AS TO OTHER 3553(A)

4   FACTORS, WHEN YOU TALK ABOUT DETERRENCE OR WHAT SENDS A

5   STRONG MESSAGE, EVEN THAT TEN-YEAR SENTENCE IMPOSED

6   ORIGINALLY BY JUDGE TAKASUGI DID SEND A DETERRENCE MESSAGE,

7   AND IT ALSO WAS APPROPRIATE FOR REHABILITATIVE AIMS.

8          YOUR HONOR, THE ORIGINAL SENTENCING TALKED

9   ABOUT -- AND I'LL TALK TO THIS COURT ABOUT THAT MR. PROWLER

10  WILL NEVER BE RESTORED TO FULL LIBERTY IN THE SENSE THAT

11  ANYONE IN THIS ROOM HAS.

12         WE ARE TALKING ABOUT VARIOUS FORMS OF CONFINEMENT

13  OR RESTRICTION GOING FORWARD FOR THE REST OF HIS LIFE.  AND

14  IMPOSING A TEN-YEAR SENTENCE, THAT WAS A SENTENCE THAT BOTH

15  ACHIEVED PUNISHMENT AND REHABILITATION BUT LEFT OPEN SOME

16  POSSIBILITY THAT, WITH CONTINUED PROGRESS ON THE

17  REHABILITATION, THAT THERE COULD BE A REENTRY TO SOCIETY AT

18  SOME POINT UNDER EXTREMELY RESTRICTED CONDITIONS.

19         HE'S NOW 61 YEARS OLD.  WE'RE TALKING ABOUT A

20  SENTENCE TO CRAFT TO GIVE HIM THAT GIVES HIM SOME LIGHT AT

21  THE END OF THE TUNNEL SO THAT HE CAN BE RESTORED TO SOME, I

22  GUESS, SLIGHTLY LESS DEGREE OF CONFINEMENT, NEVER FULL

23  LIBERTY.  AND CERTAINLY THAT'S NOT WHAT JUDGE TAKASUGI

24  IMPOSED WITH LIFETIME SUPERVISION AND A NUMBER OF EXTREMELY

25  RESTRICTIVE CONDITIONS.

1      I'M NOT STANDING IN FRONT OF THE COURT SAYING THAT

2  LIFETIME SUPERVISION IS INAPPROPRIATE, AND I'M NOT STANDING

3  IN FRONT OF THE COURT SAYING THAT IN WHOLE PART THESE

4  CONDITIONS OF SUPERVISED RELEASE ARE INAPPROPRIATE.

5      I'M SAYING THAT WE'RE TALKING ABOUT VARIOUS

6  DEGREES OF CONFINEMENT BUT CRAFTING A SENTENCE THAT ALLOWS

7  SOME LIGHT AT THE END OF THE TUNNEL FOR REENTRY INTO SOCIETY

8  WITH MAXIMUM MONITORING.

9      **THE COURT:**  JUST A COUPLE OF QUESTIONS.

10      UNDER THE 3553(A) FACTORS, ONE OF THE FACTORS TO

11  BE CONSIDERED IS TO PROVIDE THE DEFENDANT WITH NEEDED

12  EDUCATION OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER

13  CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER.

14      WOULD YOU SAY THAT THAT APPLIES HERE?  ARE THERE

15  SOME SPECIFIC NEEDS OF THE DEFENDANT AS DESCRIBED THERE THAT

16  THE COURT SHOULD BE CONSIDERING IN IMPOSING A SENTENCE?  IF

17  SO, WHAT SENTENCE DO THEY DICTATE?

18      **MR. DYBWAD:**  AND, YOUR HONOR, IN MY ATTEMPT TO

19  ANSWER THIS QUESTION, I THINK IT MAY BOIL DOWN TO MORE, WHEN

20  THE COURT PRONOUNCES SENTENCE, I'M GOING TO ASK THE COURT TO

21  AT LEAST MAKE A STRONG RECOMMENDATION TO THE BUREAU OF

22  PRISONS THAT MR. PROWLER BE RETURNED TO F.C.I. SEAGOVILLE

23  WHERE HE HAS BEEN FOR THESE LAST THREE YEARS.

24      THAT IS A FACILITY THAT HAS WHAT IS DESCRIBED AS

25  AN S.O.M.P. PROGRAM, SEXUAL OFFENDER MANAGEMENT PROGRAM.  IT

1    IS ONE OF THE FEW BUREAU OF PRISONS FACILITIES IN THE

2    COUNTRY THAT HAS THAT CAPABILITY.  IN FACT, I BELIEVE IT'S

3    ONE OF TWO OR THREE.

4              **THE COURT:**  BUTNER BEING ONE OF THEM.  THE FIRST

5    PROGRAM I THINK WAS THERE.

6              **MR. DYBWAD:**  AND I BELIEVE F.C.I. DEVENS BEING

7    ANOTHER.

8              BUT SEAGOVILLE IS A FACILITY THAT HAS THE SEXUAL

9    OFFENDER MANAGEMENT PROGRAM.

10             **THE COURT:**  NOW, HAS HE BEEN IN THAT PROGRAM, OR

11   HAS HE NOT BEEN ELIGIBLE BECAUSE HE HADN'T BEEN SENTENCED

12   YET?

13             **MR. DYBWAD:**  HE HAS NOT BEEN IN THE PROGRAM.  IT'S

14   MY UNDERSTANDING FROM HIM THAT HE HAS NOT YET BEEN DEEMED

15   ELIGIBLE, BUT IT OFTEN HAPPENS NEAR THE END OF YOUR SENTENCE

16   THAT YOU BECOME ENROLLED IN IT.

17             I LOOKED AT THE PROGRESS REPORT LAST NIGHT.  IT

18   HAS ESSENTIALLY AN ACTION PLAN GOING FORWARD.  CLEARLY, THE

19   ACTION PLAN FOR HIM CONTEMPLATES ENROLLING HIM IN THAT

20   PROGRAM IN THE FUTURE.  I DON'T KNOW HOW THE DATES WORKED

21   OUT IN TERMS OF HOW IMMEDIATE IT IS, BUT IT CERTAINLY IS

22   CONTEMPLATED IN THE DOCUMENTS IN FRONT OF THE COURT THAT HE

23   WOULD BE ENROLLED IN THAT PROGRAM.

24             **THE COURT:**  AND ARE THERE ANY SPECIFIC

25   REQUIREMENTS FOR THE PROGRAM, LIKE THE SENTENCE MUST BE AT

1    LEAST SOME PERIOD OF TIME?

2              **MR. DYBWAD:** NO, YOUR HONOR.

3              IN CONNECTION WITH ANOTHER CASE, I DID SOME

4    INVESTIGATION SPECIFICALLY WITH THE SEXUAL OFFENDER

5    MANAGEMENT PROGRAM AT F.C.I. DEVENS.  THAT PROGRAM, AS I

6    PRESUME SEAGOVILLE, HAS NO MINIMUM OR MAXIMUM TIME THAT

7    SOMEONE WHO IS HOUSED THERE WOULD NEED TO HAVE AS A LENGTH

8    OF SENTENCE TO PARTICIPATE IN THE PROGRAM.

9              MY MEMORY, ALTHOUGH I HOPE THE COURT DOESN'T HOLD

10   ME TO IT, IS PERHAPS THE MINIMUM AMOUNT OF TIME IN THE

11   PROGRAM IS SIX OR TWELVE MONTHS, BUT IT CAN LAST AS LONG AS

12   SOMEONE IS INCARCERATED AT THAT FACILITY.

13             **THE COURT:** AND A COUPLE OF OTHER QUESTIONS.

14             YOU MADE REFERENCE TO PROGRESS REPORTS FROM THE

15   BUREAU OF PRISONS THAT WOULD HELP THE COURT UNDERSTAND THE

16   ADJUSTMENT THAT HE'S MADE SINCE HE'S BEEN IN PRISON.

17             AND THOSE CERTIFICATES OF COMPLETION, I KNOW I

18   HAVE REVIEWED THOSE.  BUT COULD YOU IDENTIFY FOR ME AGAIN

19   WHERE THEY ARE SO I CAN JUST LOOK AT THEM AGAIN.

20             **MR. DYBWAD:** YES, YOUR HONOR.  I'M LOOKING AT A

21   DOCUMENT THAT I ENTITLED "SUPPLEMENTAL INFORMATION RE

22   RESENTENCING."  I PUT IT UNDER SEAL.  I HAVE A LODGE DATE ON

23   IT OF APRIL 13, 2010, AND EXHIBIT "A" TO THAT SUPPLEMENTAL

24   INFORMATION WAS THE PROGRESS REPORT FROM SEAGOVILLE.

25             **THE COURT:** ALL RIGHT.  AND SOME OF THE

1    CERTIFICATES, AT LEAST ONE, IS ATTACHED TO THE MOST RECENT

2    FILING THAT WAS FILED YESTERDAY.  SO THOSE MAY BE IN VARIOUS

3    PLACES.

4           **MR. DYBWAD:**  THEY ARE SPRINKLED THROUGHOUT THE

5    DIFFERENT SUPPLEMENTAL FILINGS IN FRONT OF THE COURT.

6           **THE COURT:**  OKAY.  AND THIS MAY BE NOT SOMETHING

7    THAT YOU CAN COMMENT UPON, AND I WILL ASK THE GOVERNMENT TO

8    COMMENT ON IT AS WELL.

9           ONE OF THE FACTORS THAT THE COURT IS SUPPOSED TO

10   CONSIDER, THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES

11   AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND

12   GUILTY OF SIMILAR CONDUCT.

13          I DON'T KNOW IF YOU HAVE BEEN INVOLVED WITH ENOUGH

14   OF THESE CASES TO EVEN ADDRESS THAT WHOLE QUESTION OF

15   DISPARITY AS IT RELATES TO WHAT PROBATION IS RECOMMENDING

16   THAT THE SENTENCE BE, AND I THINK THE GOVERNMENT JOINS.

17          **MR. DYBWAD:**  YOUR HONOR, THE ORIGINAL SENTENCING I

18   REFERENCE -- AND, UNFORTUNATELY, I HAVE NOT REVIEWED IT IN A

19   WHILE -- THE NINTH CIRCUIT OPINION IN UNITED STATES VERSUS,

20   I BELIEVE, IT'S MICHAEL CLARK.  OBVIOUSLY, IT'S A PUBLISHED

21   OPINION DEALING WITH THE CONSTITUTIONALITY OF THIS STATUTE.

22          THE REASON I BRING IT UP TO THIS COURT IS MY

23   RECOLLECTION WAS, IN COMBING THROUGH SOME OF THE DISTRICT

24   COURT DOCUMENTS, IN THE MICHAEL CLARK CASE -- AND I BELIEVE

25   THE SENTENCE IMPOSED IN THAT CASE WAS 97 MONTHS.  BUT,

1    AGAIN, AT THIS POINT I'M SORT OF GUESSING.

2         I BELIEVE IN COMBING THROUGH THE DISTRICT COURT

3    DOCUMENTS, I'VE LEARNED THAT MICHAEL CLARK'S CASE, WHICH WAS

4    ALSO A TRAVEL ABROAD/MINORS CASE -- IN FACT, PROBABLY ONE OF

5    THE FIRST ONES -- INVOLVED A NUMBER OF VICTIMS.  HE MAY HAVE

6    PLED GUILTY TO AN 11(C)(1)(C) THAT PERHAPS SPECIFIED A

7    CERTAIN NUMBER; BUT MY MEMORY OF THE RECORD IN FRONT OF THE

8    DISTRICT COURT WAS THAT THERE WAS THE PRESENCE OF MULTIPLE

9    VICTIMS WITH A 97-MONTH SENTENCE IMPOSED.

10        HERE, EVEN A 120-MONTH SENTENCE, A TEN-YEAR

11   SENTENCE, IS ABOVE THAT NUMBER IN TERMS OF COMPARABLE CASES.

12        AGAIN, THESE CASES ARE TO SOME DEGREE RELATIVELY

13   NEW.  SO IT'S TOUGH TO IDENTIFY COMPARABLE STATISTICS.

14        **THE COURT:**  AND THE CONSTITUTIONALITY STATUTE THAT

15   YOU'RE REFERENCING IS THE STATUTE THAT'S IN ISSUE HERE WHERE

16   ONE LEAVES THE UNITED STATES WITH THE INTENT OF COMMITTING

17   THE CRIME THAT'S DESCRIBED IN THIS INDICTMENT.  SO IT WAS A

18   CHALLENGE TO THE CONSTITUTIONALITY OF THAT STATUTE.

19        **MR. DYBWAD:**  NOW, AS MY MEMORY COMES BACK,

20   PRECISELY 2423(C), WHICH IS ONE OF THE STATUTES HERE,

21   ELIMINATED THE INTENT REQUIREMENT THAT WAS THE SUBJECT OF

22   THE CONSTITUTIONAL CHALLENGE IN UNITED STATES V. CLARK, THE

23   ELIMINATION OF THE INTENT REQUIREMENT.

24        **THE COURT:**  AND I WAS CURIOUS EARLIER, AND I

25   HAVEN'T DONE THIS RESEARCH.  SO CIRCUIT COURTS HAVE ACTUALLY

1    COMMENTED ON THE CONSTITUTIONALITY OF THE STATUTE.

2           **MR. DYBWAD:**  THE NINTH CIRCUIT HAS, AGAIN, BACK IN

3    2007 WHEN I LOOKED -- THE NINTH CIRCUIT IN UNITED STATES V.

4    CLARK UPHELD THE CONSTITUTIONALITY, I BELIEVE, AS TO A

5    CHALLENGE REGARDING THE ELIMINATION OF THE INTENT

6    REQUIREMENT.

7           THERE WAS A SUBSEQUENT CASE THAT MAY HAVE TURNED

8    MORE ON STATUTORY INTERPRETATION WHICH ACTUALLY STRUCK DOWN

9    A CONVICTION.  BUT OFF THE TOP OF MY HEAD, I CAN'T -- IT MAY

10   HAVE HAD TO DO WITH THE STATUTORY DEFINITION OF PERHAPS THE

11   WORD "TRAVELING" OR SOMETHING ALONG THOSE LINES.

12          **THE COURT:**  THANK YOU.

13          **MR. DYBWAD:**  AT THE TIME THIS CASE WAS ORIGINALLY

14   IN FRONT OF THE DISTRICT COURT, THE NINTH CIRCUIT HAD BEEN

15   THE ONLY CIRCUIT TO WEIGH IN ON THE CONSTITUTIONALITY OF THE

16   STATUTE, AND I'M NOT SURE IF THAT'S TRUE TODAY.

17          **THE COURT:**  AND THE NINTH CIRCUIT, AT LEAST AT

18   THAT TIME, HAD FOUND THE STATUTE TO BE CONSTITUTIONAL?

19          **MR. DYBWAD:**  YES.

20          **THE COURT:**  ALL RIGHT.  THANK YOU.

21          GOVERNMENT'S COUNSEL MAY ADDRESS ALL OF THE

22   FACTORS THAT ONE MUST CONSIDER IN DECIDING THE APPROPRIATE

23   SENTENCE.  THAT COULD INCLUDE DEPARTURES AND WHAT YOU

24   BELIEVE THE SENTENCE SHOULD BE.  I'D ALSO LIKE FOR YOU TO

25   ADDRESS THE FACTOR ABOUT DISPARITY AMONG DEFENDANTS IF YOU

1    HAVE BEEN INVOLVED IN ENOUGH OF THESE CASES TO EVEN COMMENT

2    ON THAT.

3            **MS. PEACE GARNETT:**  IF THE COURT WILL ALLOW ME TO

4    GO BACK TO THE MULTIPLE COUNT ADJUSTMENT.

5            **THE COURT:**  AND I HAD A NOTE, AND I WAS JUST

6    REMINDING MYSELF THAT I WAS GOING TO ASK EACH COUNSEL AS TO

7    WHETHER YOU FOUND ANY NEW CASES ON DOUBLE COUNTING THAT YOU

8    FELT THE COURT SHOULD REVIEW FOR PURPOSES OF ADDRESSING THE

9    POSITIONS THAT YOU'VE RAISED.

10           **MS. PEACE GARNETT:**  YOUR HONOR, I DID DURING THE

11   BREAK LOOK FOR CASES THAT WERE MORE RECENT THAN THE CASE

12   THAT I CITED, AND THOSE CASES DEALT WITH THINGS LIKE DOUBLE

13   COUNTING WITH RESPECT TO CRIMINAL HISTORY AND THAT SORT OF

14   THING.

15           SO GOVERNMENT'S POSITION IS THE MOST RELEVANT CASE

16   FOR THIS ISSUE IS THE STOTERAU CASE THAT I CITED EARLIER.

17           AND I JUST WANTED TO ADD A DEFINITION OF DOUBLE

18   COUNTING.  FIRST, IT WAS THE DEFINITION I GAVE BEFORE

19   (AS READ:)

20       *"IMPERMISSIBLE DOUBLE COUNTING OCCURS WHEN ONE PART OF*

21       *THE GUIDELINES IS APPLIED TO INCREASE DEFENDANT'S*

22       *PUNISHMENT ON ACCOUNT"* --

23           **THE COURT:**  THE COURT REPORTER IS ASKING YOU TO

24   SLOW DOWN JUST A LITTLE BIT.

25           **MS. PEACE GARNETT:**  SORRY.  (AS READ:)

1     *"IMPERMISSIBLE DOUBLE COUNTING OCCURS WHEN ONE PART OF*

2     *THE GUIDELINES IS APPLIED TO INCREASE A DEFENDANT'S*

3     *PUNISHMENT ON ACCOUNT OF ANOTHER"* -- *"ON ACCOUNT OF A*

4     *KIND OF HARM THAT HAS ALREADY BEEN TAKEN INTO ACCOUNT*

5     *IN ANOTHER PART OF THE GUIDELINES."*

6           THE COURT WENT ON TO STATE (AS READ:)

7     *"HOWEVER, DOUBLE COUNTING IS NOT ALWAYS IMPERMISSIBLE.*

8     *IT IS SOMETIMES AUTHORIZED AND INTENDED BY THE*

9     *SENTENCING GUIDELINES WHEN EACH INDICATION OF THE*

10    *BEHAVIOR SERVES A UNIQUE PURPOSE UNDER THE GUIDELINES."*

11              *(END OF QUOTED MATERIAL.)*

12         **MS. PEACE GARNETT:**  WHAT I WANT TO ADDRESS IS SOME

13    OF THE ARGUMENTS THAT THE DEFENDANT MADE.

14          THERE WAS AN ENHANCEMENT FOR USE OF A MINOR THAT

15    WAS APPLIED.  THAT ONLY APPLIES TO JOHN DOE A.  HE IS THE

16    ONLY ONE THAT THE GOVERNMENT IS ARGUING, WITH RESPECT TO THE

17    CHARGED OFFENSES, WAS USED BY PROWLER TO BRING ANOTHER MINOR

18    IN -- TO BRING ANOTHER MINOR TO PROWLER TO BE SEXUALLY

19    EXPLOITED.

20          THEN THERE IS THE ISSUE OF THE MULTIPLE COUNT

21    ADJUSTMENT.

22          IT IS OUR ARGUMENT THAT THAT ADJUSTMENT IS UNIQUE

23    TO THE MINORS IN THIS CASE.  UNDER THE APPLICABLE

24    GUIDELINES, 2G1.3, THE PURPOSE OF THAT MULTIPLE COUNT

25    ADJUSTMENT WITH RESPECT TO CHILD EXPLOITATION CASES IS TO

1    TAKE INTO ACCOUNT THE HARM THAT WAS IMPOSED ON EACH MINOR

2    VICTIM, EVEN IF THE MINOR VICTIM IS CHARGED WITH ANOTHER

3    MINOR IN THE SAME COUNT.

4          THAT IS THE PURPOSE OF THE MULTIPLE COUNT

5    ADJUSTMENT FOR CHILD EXPLOITATION.

6          AND THEN WITH RESPECT TO THE PATTERN AND PRACTICE

7    ENHANCEMENT, THAT IS TO TAKE INTO ACCOUNT DEFENDANT'S

8    REPEATED BEHAVIOR OVER TIME, WHETHER HE WAS ENGAGED IN THIS

9    TWO OR MORE TIMES.

10         AND WHAT THE GOVERNMENT IS SAYING IS IT IS NOT

11   IMPERMISSIBLE DOUBLE COUNTING IN THIS CASE BECAUSE DEFENDANT

12   USED A MINOR, WHICH WAS COVERED BY THE GUIDELINES; DEFENDANT

13   ENGAGED IN SEXUALLY EXPLICIT CONDUCT WITH MORE THAN ONE

14   MINOR, MULTIPLE MINORS, THE SIX WE HAVE IDENTIFIED; AND THAT

15   IS TAKEN INTO ACCOUNT BY THE MULTIPLE COUNT ADJUSTMENT.

16         AND IN ADDITION TO THAT CONDUCT, HE MOLESTED SOME

17   OF THE SAME MINORS MORE THAN ONCE, AND HE MOLESTED

18   ADDITIONAL MINORS IN THE SAME PERIOD OF TIME.

19         AND SO EACH ONE OF THOSE ENHANCEMENTS GOES TO A

20   UNIQUE HARM THAT DEFENDANT ENGAGED IN IN THIS CASE.

21         AND SO IT IS NOT IMPERMISSIBLE DOUBLE COUNTING

22   UNDER STOTERAU TO TAKE EACH ONE OF THOSE THINGS INTO

23   ACCOUNT.

24         AND SO IT'S OUR POSITION THAT, AS TO CALCULATING

25   THE PROPER GUIDELINES, THE COURT SHOULD IMPOSE THE

```
 1    ENHANCEMENT FOR PATTERN AND PRACTICE AS WELL AS USE THE

 2    MULTIPLE COUNT ADJUSTMENT AND THAT BOTH ARE APPROPRIATE

 3    UNDER NINTH CIRCUIT CASE LAW.

 4              WITH RESPECT TO VULNERABLE VICTIM, THE ONLY THING

 5    I WOULD SAY ABOUT VULNERABLE VICTIM IS IT'S A CLOSE CASE.

 6              BUT ONE OF THE THINGS THAT I WANTED TO ARGUE WAS

 7    THAT IN THIS CASE -- THIS CASE -- THIS GOVERNMENT COUNSEL

 8    HAS DONE CHILD EXPLOITATION CASES FOR A COUPLE OF YEARS.

 9    THIS CASE IS VERY UNIQUE, GIVEN THE AMOUNT OF CHILDREN THAT

10    WERE EXPLOITED OVER TIME.

11              TYPICALLY, WE DON'T KNOW HOW MANY CHILDREN HAVE

12    BEEN EXPLOITED BY INDIVIDUALS WHO LEAVE OUR COUNTRY AND GO

13    TO THIRD WORLD COUNTRIES AND EXPLOIT MINORS.

14              BUT IN THIS CASE, DEFENDANT DOCUMENTED OVER FIVE

15    YEARS ALL OF HIS ACTIVITY IN LEDGERS, INDEX CARDS, AND IN

16    HIS HANDWRITTEN JOURNAL.

17              AND THE QUANTITY OF HIS SEXUAL EXPLOITATION IS

18    EXTRAORDINARY.  I PERSONALLY HAVE NOT SEEN ANYTHING LIKE IT.

19              I'VE TALKED TO MY COLLEAGUES WHEN I WAS IN VIOLENT

20    AND ORGANIZED CRIME.  NOW I'M IN NATIONAL SECURITY.  BUT

21    WHEN I WAS VIOLENT/ORGANIZED CRIME, I TALKED TO MY

22    COLLEAGUES.  THEY HAVEN'T SEEN ANYTHING LIKE IT.

23              SO WITH RESPECT TO JUST PUNISHMENT FOR THIS

24    OFFENSE AND THE FACTORS THAT ARE TAKEN INTO ACCOUNT UNDER

25    3553(A), IT IS THE GOVERNMENT'S POSITION THAT THIS CASE
```

```
 1   WARRANTS A LENGTHY PERIOD OF INCARCERATION, NOT JUST FOR

 2   DETERRENCE BUT ALSO FOR PUNISHMENT BECAUSE OF THE

 3   EXTRAORDINARY NATURE OF DEFENDANT'S CONDUCT.

 4          AS TO THE GUIDELINES THEMSELVES -- AND I'M SORRY

 5   I'M JUMPING AROUND.  BUT AS TO THE GUIDELINES THEMSELVES,

 6   EVEN IF THE COURT DOESN'T BELIEVE THAT A CERTAIN GUIDELINE

 7   IS APPROPRIATE, THE COURT CAN STILL DEPART UPWARD.

 8          SECTION 2G1.3, APPLICATION NOTE 7, PROVIDES FOR AN

 9   UPWARD DEPARTURE WHEN YOU ARE DEALING WITH MORE THAN TEN

10   VICTIMS.  AND IN THIS CASE, WE KNOW IT IS COMPLETELY

11   UNDISPUTED WE'RE DEALING WITH HUNDREDS OF VICTIMS HERE.

12   DEFENDANT HAS NEVER DISPUTED THAT.

13          IN FACT, HE TOLD AUTHORITIES ON THE DAY OF HIS

14   ARREST THAT HE WOULD MOLEST MAYBE FIVE TO SEVEN CHILDREN A

15   MONTH.  AND IN HIS LEDGERS THERE ARE A NUMBER OF NAMES, AND

16   HE EVEN KEPT INDEX CARDS THAT THE P.S.R. REFERS TO WHERE, BY

17   YEAR, HE WOULD TALK ABOUT THE NEW BOYS THAT HE EXPLOITED

18   EACH YEAR.  SOMETIMES IT WAS 33 BOYS, NEW BOYS, EACH YEAR.

19   AND HE WOULD GIVE THE AVERAGE AGE, 33 BOYS, AVERAGE AGE

20   14.9.  THIS WENT ON FOR FIVE YEARS.

21          SO BOTH 2G1.3 PROVIDES FOR AN UPWARD DEPARTURE,

22   AND 5K2.0 ALSO PROVIDES FOR AN UPWARD DEPARTURE IF THE

23   OFFENSE INVOLVES -- EXCUSE ME -- IF CIRCUMSTANCES ARE SO

24   UNUSUAL THAT SUCH A DEPARTURE WOULD BE WARRANTED.

25          WE'RE TALKING ABOUT A TEN-VICTIM DEPARTURE FROM
```

1    2G1.3, AND HERE WE'RE DEALING WITH MAYBE 20 TIMES THE NUMBER

2    OF VICTIMS.

3            SO IF THE COURT IS NOT INCLINED TO IMPOSE OR FIND

4    ONE OF THE GUIDELINES ARE APPLICABLE, WE'D ASK THAT THE

5    COURT UPWARDLY DEPART.

6            PROBATION IS ASKING FOR A 30-YEAR SENTENCE IN THIS

7    CASE.  WE HAVE ASKED FOR 327 YEARS, WHICH WAS AT THE TIME

8    THE HIGH END OF THE GUIDELINES.

9        **THE COURT:**  YEARS?

10       **MS. PEACE GARNETT:**  MONTHS.  WHICH IS ABOUT 27.5.

11           AND IT'S OUR POSITION, IT'S ALWAYS BEEN OUR

12   POSITION THAT SHOULD BE THE MINIMUM.

13           DEFENDANT IS ESSENTIALLY A PREDATOR, AND WE'VE

14   SHOWN OVER FIVE YEARS THAT THAT IS WHAT HE WAS ENGAGING IN

15   WHEN HE WAS IN THAILAND.  AND HE ADMITTED AT HIS CHANGE OF

16   PLEA THAT THE REASON HE WENT TO THAILAND WAS SO THAT HE

17   COULD EXPLOIT MINORS.

18           NOW, DEFENSE HAS TALKED ABOUT THIS PRESS RELEASE

19   THAT WAS ISSUED AFTER THE ORIGINAL SENTENCING.

20           IT HAS NEVER BEEN OUR POSITION THAT TEN YEARS WAS

21   SUFFICIENT.  IT IS NOT OUR JOB TO CRITICIZE A JUDGE IN THE

22   PRESS, AND WE WOULD NEVER DO SO.  WE HAVE MAINTAINED ALL

23   ALONG THAT A MINIMUM OF 327 MONTHS WAS APPROPRIATE.

24           SO TO JUST POINT TO A PRESS RELEASE AND SAY THAT

25   THAT IS SUFFICIENT BECAUSE WE ISSUED A PRESS RELEASE OR THAT

```
 1    I ISSUED A PRESS RELEASE IS ABSURD.

 2             NOT ONLY DID DEFENDANT SEXUALLY EXPLOIT THE MINORS

 3    IN THIS CASE, BUT HE TOOK PHOTOGRAPHS OF THE MINORS, AND

 4    THEY HAVE BEEN ATTACHED AS EXHIBITS TO THE DECLARATION OF

 5    GARY KIERNAN.

 6             AGAIN, IT'S JUST AN EXCERPT OF THE HUNDREDS OF

 7    PHOTOGRAPHS THAT HE TOOK.

 8             APART FROM JUST TAKING PHOTOGRAPHS, HE KEPT

 9    MOMENTOS.  HE HAD THE MINORS -- A LOT OF THE MINORS CLIPPED

10    THEIR PUBIC HAIR, WHICH HE KEPT AS A MOMENTO.

11             HE WOULD USE THE PHOTOGRAPHS THAT HE TOOK, AND HE

12    WOULD SHOW THEM TO OTHER MINORS, PRESUMABLY TO MAKE THEM

13    MORE COMFORTABLE ABOUT WHAT HE WAS GOING TO ASK THEM TO DO.

14             BUT NOT ONLY DID HE USE THE PHOTOGRAPHS IN THAT

15    MANNER, HE ALSO DOCUMENTED THE FACT THAT HE MET UP WITH

16    ANOTHER CHILD PREDATOR AND SHARED THE PHOTOGRAPHS WITH HIM.

17    THEY BARTERED THEIR PHOTOGRAPHS.

18             HE ALLOWED ANOTHER PREDATOR TO UPLOAD THE

19    PHOTOGRAPHS THAT DEFENDANT HAD TAKEN, AND THESE ARE ALL

20    X-RATED PHOTOGRAPHS.  AGAIN, AN EXCERPT IS IN THE

21    DECLARATION THAT WE SUBMITTED UNDER SEAL.

22             APART FROM THAT CONDUCT, PROBABLY ONE OF THE WORST

23    THINGS THE DEFENDANT DID IS, AS HIS VICTIMS GOT OLDER, HE

24    WOULD TURN THEM INTO CHILD EXPLOITERS THEMSELVES.  HE WOULD

25    PAY SOME OF THEM A BONUS TO FIND A YOUNGER MINOR TO BRING TO
```

```
 1   HIM IN ORDER TO EXPLOIT.  HE DIDN'T JUST DO THIS WITH JACK

 2   OR JOHN DOE A, HE DID THIS WITH AT LEAST TWO OTHER MINORS.

 3              UNDER THE AMENDED DECLARATION THAT WE FILED UNDER

 4   EXHIBIT "F," PAGE 30, THERE IS A JOURNAL ENTRY DATED

 5   OCTOBER 27, 2004 -- AGAIN, IN THE SAME TIME PERIOD AS

 6   COUNT 10 -- WHERE HE TALKS ABOUT PAYING ANOTHER KID NAMED

 7   DTON, SPELLED D-T-O-N, A BONUS.

 8              HE SAYS (AS READ:)

 9      "AS FOR MONEY, I FELT I HAD TO BE GENEROUS.  I GAVE

10      DTON HIS USUAL 200 BAHT," WHICH IS A MEASLY $5, "THEN I

11      GAVE 100 BAHT TO DTON AS A BONUS FOR BRINGING HIS

12      WONDERFUL FRIEND, AND I SPELLED OUT FOR THEM HOW I NOW

13      WANT BOYS 12 TO 14 TO JOIN HIM."

14              IN ANOTHER JOURNAL ENTRY DATED 11/17/2004, AGAIN

15   THE SAME TIME PERIOD AS COUNT 10, THE DEFENDANT WROTE ABOUT

16   DTON BRINGING A 13-YEAR-OLD BOY, WHO FROM THE JOURNAL ENTRY,

17   APPEARED TO HAVE BEEN A VIRGIN, AND DEFENDANT TALKS ABOUT

18   HAVING ORAL AND ANAL SEX WITH THIS 13 YEAR OLD.

19              AND THEN HE SAYS (AS READ:)

20      "I PAID 200 BAHT EACH, PLUS A BONUS OF 100 BAHT TO DTON

21      THAT I EXPLICITLY SAID WAS FOR BRINGING A BOY OF 13,"

22      PARENTHETICAL, "TO REALLY REINFORCE THE INCENTIVE."

23              THIS IS THE CONDUCT THAT THE DEFENDANT ENGAGED IN

24   OVER FIVE YEARS.  AND THIS IS WHY THE GOVERNMENT IS ASKING

25   FOR A MINIMUM SENTENCE OF 327 MONTHS.
```

*JULY 30, 2010*

```
 1          THE DEFENDANT'S ACTS WERE DESPICABLE, AND THEY

 2     EXTENDED OVER A PERIOD OF TIME, AND THERE IS EVERY

 3     INDICATION THAT HE WOULD HAVE CONTINUED IN THOSE ACTS IF HE

 4     HAD NOT BEEN CAUGHT RED-HANDED BY THE ROYAL THAI POLICE.

 5          THE DEFENDANT TALKS ABOUT THE FACT THAT HE HAS

 6     IMPROVED DURING THE TIME PERIOD THAT HE HAS BEEN IN JAIL,

 7     BUT THAT'S BECAUSE HE'S AWAY FROM MINORS.

 8          IN HIS PRIOR SENTENCING HEARING, HE ARGUED THAT HE

 9     WOULD BE SUBJECT TO HARSH TREATMENT IN PRISON, BUT WE HEAR

10     NOW THAT HE'S WRITING POETRY AND HE'S DOING BOOK REVIEWS AND

11     HE HAS, YOU KNOW, ALL OF THESE FAVORABLE THINGS HAPPENING IN

12     HIS LIFE.

13          IN MANY RESPECTS, HE IS BETTER OFF THAN THE

14     VICTIMS THAT HE EXPLOITED.  HE GETS THREE MEALS A DAY.  WHEN

15     HE FOUND THESE VICTIMS, THEY WERE EMACIATED AND HUNGRY.  HE

16     GETS TO SLEEP IN A BED.  HIS VICTIMS SLEPT IN THE STREETS.

17     THEY SLEPT IN ROACH-INFESTED QUARTERS.

18          THE DEFENDANT GETS LEISURE TIME, DOES THE BOOK

19     REVIEWS, AND ALL OF THESE OTHER THINGS, WHEREAS HE LEFT HIS

20     VICTIMS WITHOUT ANY HOPE.

21          HE COULD HAVE TAUGHT THEM ENGLISH.  SOME OF HIS

22     VICTIMS SAID THAT THEY WANTED TO LEARN ENGLISH AND THEY

23     WISHED THAT HE HAD TAUGHT THEM ENGLISH AND GAVE THEM FOOD

24     INSTEAD OF SEXUALLY EXPLOITING THEM.

25          IT'S THE GOVERNMENT'S POSITION THAT A MINIMUM
```

1   SENTENCE OF 327 MONTHS IS REASONABLE, NOT JUST FOR

2   DETERRENCE, NOT JUST TO PROTECT THESE CHILDREN, BUT FOR

3   PUNISHMENT.  THAT IS ONE OF THE THINGS THAT THE COURT MUST

4   TAKE INTO ACCOUNT.  AND, AGAIN, THE DEFENDANT'S ACTS WERE

5   EXTRAORDINARY.

6           AS TO UNWANTED SENTENCING DISPARITY, THE PROBATION

7   OFFICER TALKED ABOUT THE HIRSCH CASE AND THE JULIAN CASE IN

8   HIS RECOMMENDATION.

9           IN THE HIRSCH CASE, THE DEFENDANT WAS SENTENCED TO

10  105 YEARS FOR 20 YEARS OF HISTORY OF EXPLOITING SEVERAL

11  MINORS.  HE KEPT THEM OVER AN EXTENDED PERIOD OF TIME.  IT

12  WAS NOT THE NUMBER OF MINORS THAT ARE INVOLVED IN THIS CASE.

13  IT WAS FAR FEWER.

14          IN THE JULIAN CASE, THE DEFENDANT WAS SENTENCED TO

15  25 YEARS BUT, AGAIN, LESS VICTIMS.

16          PROBABLY THE MOST ANALOGOUS CASE THAT I FOUND IS

17  THE FRANK CASE, AND THAT WAS DECIDED MARCH 15, 2010.  IT IS

18  2010 WESTLAW 890451 OUT OF THE 11TH CIRCUIT, AND IT INVOLVED

19  AN INDIVIDUAL WHO WAS CHARGED WITH 2423(B) AND 2423(C), AS

20  WELL AS ENTICEMENT.  BUT THE COURT MADE CLEAR WHAT THE

21  SENTENCE IT IMPOSED WENT TO.  SO I'LL TALK ABOUT THAT IN A

22  SECOND.

23          AS FAR AS HIS CONDUCT, HE ENGAGED IN SEXUALLY

24  EXPLICIT CONDUCT WITH THREE MINOR GIRLS AGE 12 TO 15.  HE

25  TOOK THEIR PHOTOGRAPHS.  HE PAID THE GIRLS FOR SEX

1   APPROXIMATELY $15 TO $25.  AND HE WAS SENTENCED JUST FOR THE

2   2423(B) AND (C) COUNTS TO 30 YEARS FOR TRAVELING, WHICH IS

3   IN ACCORDANCE WITH WHAT THE PROBATION OFFICER, AGAIN, IS

4   REQUESTING AND IS ACTUALLY MORE THAN WHAT THE GOVERNMENT IS

5   REQUESTING IN THIS CASE.

6          SO, AGAIN, THE GOVERNMENT BELIEVES THAT THE

7   RECOMMENDED SENTENCE IS WARRANTED BASED ON ALL OF THE

8   FACTORS SET FORTH IN 3553(A), AND WE WOULD ASK THE COURT TO

9   IMPOSE A SENTENCE OF A MINIMUM OF 327 MONTHS.

10          **THE COURT:**  JUST A QUESTION OF GOVERNMENT'S

11   COUNSEL.

12          I MADE REFERENCE TO THE VICTIM IMPACT STATEMENT.

13          **MS. PEACE GARNETT:**  YES.

14          **THE COURT:**  AND I DON'T REMEMBER THE DATE OF THE

15   DOCUMENT OFFHAND, BUT IS THERE ANYTHING ELSE THAT'S BEEN

16   DONE TO GIVE NOTICE TO THE VICTIMS AND TO ADVISE THEM THAT

17   THEY HAVE A RIGHT TO BE PRESENT AT THE HEARING, OR IS THE

18   STATEMENT THAT'S CONTAINED IN THAT DOCUMENT, WHAT HAS BEEN

19   DONE, THAT THE GOVERNMENT BELIEVES SATISFIES THE

20   REQUIREMENTS OF LAW?

21          **MS. PEACE GARNETT:**  WELL, THE GOVERNMENT

22   BELIEVES -- THE GOVERNMENT WISHES WE COULD HAVE DONE MORE.

23   BUT THE PROBLEM WITH THIS CASE IS BECAUSE THE VICTIMS WERE

24   HOMELESS, THE WAY THAT THE AGENTS FOUND THE VICTIMS TO BEGIN

25   WITH FOR THIS CASE IS THEY LITERALLY WALKED THE STREETS OF

1    THAILAND FOR WEEKS ON END WITH PHOTOGRAPHS THAT WERE FOUND

2    IN THE DEFENDANT'S POSSESSION.  AND THEY TRIED TO MATCH

3    PHOTOGRAPHS WITH THE MINORS ON THE STREET; AND IN SOME

4    CASES, THEY WERE SUCCESSFUL, AND IN SOME CASES THEY WERE

5    NOT.

6            OVER THE COURSE OF THIS CASE, WE WOULD FIND

7    VICTIMS, WE WOULD LOSE VICTIMS.  THEY WOULD BE ARRESTED,

8    THEY WOULD BE ON GLUE.  IT WAS PROBABLY ONE OF THE MOST

9    TROUBLING ASPECTS OF THIS CASE.

10           WHEN THE CASE WAS CLOSE TO SENTENCING, WE TRIED TO

11   FIND THEM AGAIN.  AND, AGAIN, THE AGENTS IN BANGKOK WALKED

12   THE STREETS LOOKING FOR THE VICTIMS.  AND WE WERE ABLE TO

13   SUBMIT THE VICTIM IMPACT STATEMENTS OF THE VICTIMS THAT WE

14   FOUND, BUT THERE WERE OTHER VICTIMS THAT WE HAVE NOT FOUND

15   AND MAY NEVER FIND.

16           SO WE TRIED TO DO MORE, BUT THIS IS WHAT WE WERE

17   ABLE TO DO AT THIS POINT IN THE CASE.

18           **THE COURT:**  THE FILING OF THE VICTIM IMPACT

19   STATEMENT IS APRIL 19, 2010, AND I WOULD JUST ASK TWO

20   QUESTIONS.

21           ONE, THE VICTIMS THAT YOU WERE ABLE TO CONTACT

22   WERE TOLD THAT THEY HAD A RIGHT TO BE PRESENT AT THE

23   HEARING?

24           **MS. PEACE GARNETT:**  ABSOLUTELY.

25           **THE COURT:**  AND AT THE TIME, YOU TOLD THEM WHAT

1  THE SENTENCING DATE WAS?

2  **MS. PEACE GARNETT:** YES.  WE TOLD THEM THOSE

3  THINGS.

4  AND ORIGINALLY, WHEN WE THOUGHT THIS CASE WAS

5  GOING TO TRIAL, WE SECURED VISAS FOR SOME OF THE VICTIMS

6  THAT WE WERE ABLE TO FIND.  WE WOULD HAVE GONE THROUGH THAT

7  PROCESS AGAIN IF THEY HAD INDICATED THEY WANTED TO BE HERE.

8  BUT, UNFORTUNATELY, A LOT OF THE VICTIMS HAD JUST -- I MEAN,

9  THEY -- SOME OF THEM DIDN'T EVEN THINK THEY WERE VICTIMS

10  BECAUSE THEY WERE JUST SO BEATEN DOWN AT THIS POINT, BUT

11  THEY GAVE US THE STATEMENTS, AND THEN THEY SORT OF MOVED ON.

12  **THE COURT:** AND NO FURTHER NOTIFICATION WAS

13  ATTEMPTED OR GIVEN AS THE SENTENCING DATES CHANGED IN THIS

14  CASE?

15  **MS. PEACE GARNETT:** NO, YOUR HONOR.

16  **THE COURT:** AND NONE OF THE VICTIMS ARE PRESENT AT

17  THE HEARING TODAY?

18  **MS. PEACE GARNETT:** NONE OF THE VICTIMS ARE

19  PRESENT.  NONE INDICATED THEY WANTED TO BE.

20  **THE COURT:** ALL RIGHT.  THANK YOU.

21  DEFENSE COUNSEL WISH TO BE HEARD FURTHER?

22  I'M ACTUALLY GOING TO HEAR FROM THE DEFENDANT

23  SOON, BUT DEFENSE COUNSEL MAY WANT TO COMMENT ON SOME OF THE

24  STATEMENTS MADE BY GOVERNMENT'S COUNSEL.

25  AND THE DEFENDANT'S AGE?

1      **MR. DYBWAD:**  IT'S 61, YOUR HONOR.

2      **THE COURT:**  COUNSEL MAY BE HEARD.

3      **MR. DYBWAD:**  I JUST HAD THREE BRIEF POINTS TO MAKE

4  TO THE COURT.

5           THIS CASE OBVIOUSLY HAS ESSENTIALLY INTERNATIONAL

6  IMPLICATIONS.  AND IN CONNECTION WITH THE ORIGINAL

7  SENTENCING, POINTED OUT, THIS IS ACTUALLY A CASE BY SOMEONE

8  WHO WAS LIVING AS A LAWFUL PERMANENT RESIDENT IN THAILAND,

9  WHO COMMITTED OFFENSES AGAINST THAI CITIZENS, WHO WAS

10  INVESTIGATED BY THE ROYAL THAI POLICE, AND THEN SUBSEQUENTLY

11  PROSECUTED BY THE THAI PROSECUTORS AND THEN SPENT A YEAR IN

12  A THAI PRISON.

13           AND, YES, IN CONNECTION WITH THE ORIGINAL

14  SENTENCE, IT WAS DISCUSSED THAT THE CONDITIONS IN THE THAI

15  PRISON WERE DEPLORABLE, AND IT'S A RELIEF THAT THE

16  CONDITIONS IN THE U.S. PRISONS ARE BETTER.

17           I DON'T MEAN TO SUGGEST THAT ADDITIONAL PUNISHMENT

18  OBVIOUSLY WASN'T WARRANTED.  WE ARE TALKING ABOUT AN

19  AMERICAN CITIZEN.  ADDITIONAL PUNISHMENT OVER AND ABOVE WHAT

20  THE THAI SOVEREIGN IMPOSED IS WHAT'S GOING TO HAPPEN HERE.

21           BUT IN CRAFTING ANY SENTENCE -- AT THE LAST

22  SENTENCING, THE FACT THAT MR. PROWLER HAD, IN FACT, BEEN

23  PROSECUTED AND PUNISHED IN THAILAND FOR THESE ACTS, I

24  BELIEVE, ARGUABLY WAS NOT FACTORED INTO THE EVENTUAL

25  SENTENCE, AND THAT WAS A YEAR IN ROUGH CONDITIONS.

1        SECOND, THE PRESS RELEASE, VERY BRIEFLY.  THERE IS

2    A DIFFERENCE BETWEEN NOT CRITICIZING A JUDGE AND ISSUING A

3    PRESS RELEASE TRUMPETING WHAT THAT JUDGE DID.

4        HERE THERE WAS A PRESS RELEASE.  I POINT IT OUT

5    NOT BECAUSE -- I'M NOT UNDER THE ILLUSION THE GOVERNMENT

6    WANTS A SENTENCE OTHER THAN 327 MONTHS, BUT ONE AIM OF

7    3553(A) IS TO CRAFT A SENTENCE THAT HAS A DETERRENT EFFECT.

8        THE PRESS RELEASE IS EVIDENCE FROM THE PARTY

9    OPPONENT THAT, AT ONE POINT, SOMEONE VIEWED THAT TEN-YEAR

10   SENTENCE AS HAVING A DETERRENT EFFECT.  THAT'S WHY I MENTION

11   IT.

12       YOUR HONOR, IN THIS CASE I MAY AGREE WITH THE

13   GOVERNMENT SOMEWHAT, BUT I WANT TO POINT OUT TO THE COURT

14   THERE IS NO PLAN FOR VICTIM RESTITUTION IN THIS CASE.

15       THE COURT, NO DOUBT, REVIEWED THE VICTIM IMPACT

16   STATEMENT.  THE REASON WHY PRESUMABLY THERE HAS BEEN NO

17   REQUEST FOR RESTITUTION IS WHEN THE FOUR VICTIMS WERE

18   INTERVIEWED RECENTLY, EACH ONE SAID THAT THEY HAD NOT BEEN

19   MEDICALLY HARMED, PSYCHOLOGICALLY HARMED, AND HAD SUFFERED

20   NO ILL EFFECTS AS A RESULT OF THIS CONDUCT.

21       I MERELY MEAN TO POINT OUT THIS WOULD BE A VERY

22   DIFFERENT CASE IF THERE HAD BEEN VIOLENCE, FORCE, AND

23   LONG-LASTING IMPACT ON THE VICTIMS.

24       YOUR HONOR, IN SHORT, IN THE END, IT'S THE COURT

25   OBVIOUSLY WHO DECIDES; AND WE REALLY ARE TALKING ABOUT

1  SOMEONE WHO IS 61 YEARS OLD.  IS THERE A SENTENCE THAT CAN

2  BE CRAFTED THAT GIVES SOME MODICUM OF FREEDOM AT SOME POINT

3  IN THE FUTURE, AND I BELIEVE THAT A TEN-YEAR SENTENCE WAS

4  APPROPRIATE THE FIRST TIME AND CONTINUE TO BELIEVE THAT A

5  TEN-YEAR SENTENCE ACHIEVES THOSE AIMS THREE YEARS LATER.

6          **THE COURT:**  JUST A QUESTION.

7          DOUBLE COUNTING, ANY ADDITIONAL CASES OTHER THAN

8  THOSE THAT ARE CITED IN THE PAPERS THAT ARE BEFORE THE COURT

9  THAT YOU BELIEVE THE COURT SHOULD CONSIDER?

10          **MR. DYBWAD:**  NO, YOUR HONOR.

11          PERHAPS IT'S MYOPIA.  THE GOVERNMENT'S FOCUSING ON

12  DOUBLE COUNTING.  I WOULD, OF COURSE, TRY AND RETURN TO THE

13  VULNERABLE VICTIM.  I HAVE A DIFFERENT VIEW ON WHETHER

14  THAT'S PROPER, BUT I'VE LAID OUT MY ARGUMENTS TO THE COURT.

15          **THE COURT:**  OKAY.  THANK YOU.

16          I'M, AT THIS POINT, PREPARED TO HEAR FROM THE

17  DEFENDANT IF THE DEFENDANT WISHES TO ADDRESS THE COURT.

18          HE DOES HAVE A RIGHT TO ADDRESS THE COURT, AND THE

19  COURT'S READY TO HEAR FROM HIM.

20          I ACKNOWLEDGED THIS MORNING THAT I HAVE READ THE

21  LETTER THAT HE WROTE TO THE COURT.  THAT LETTER, OF COURSE,

22  WAS DATED IN ANTICIPATION OF THE SENTENCING BEING AT AN

23  EARLIER DATE; SO THERE MAY BE ADDITIONAL INFORMATION THAT HE

24  MAY WANT TO PROVIDE TO THE COURT.

25          SO, SIR, IF YOU WISH TO ADDRESS THE COURT, IF

1    YOU'LL JUST COME TO THE LECTERN, PLEASE.

2           BEFORE THE DEFENDANT'S STATEMENT, I JUST WANT THE

3    RECORD TO REFLECT, SIR, YOU DID RECEIVE A COPY OF THE

4    PRESENTENCE REPORT AND YOU REVIEWED THAT PRESENTENCE REPORT?

5           **THE DEFENDANT:**  YES, YOUR HONOR.

6           **THE COURT:**  AND COUNSEL WAS PRESENT AT THE TIME

7    THAT YOU REVIEWED IT?

8           **THE DEFENDANT:**  YES.

9           **THE COURT:**  AND IF COUNSEL WASN'T THERE, DO YOU

10   BELIEVE THAT YOU'VE HAD THE OPPORTUNITY TO ASK QUESTIONS OF

11   COUNSEL ABOUT ANYTHING THAT WAS CONTAINED IN THE REPORT THAT

12   YOU MIGHT NOT HAVE UNDERSTOOD?

13          **THE DEFENDANT:**  YES, YOUR HONOR.

14          **THE COURT:**  YOU'RE AWARE THAT BOTH COUNSEL FILED

15   POSITION PAPERS, WRITTEN POSITIONS, THAT THEY'VE ADDRESSED

16   HERE TODAY; AND HAVE YOU DISCUSSED WITH YOUR COUNSEL THE

17   POSITION THAT HE PROVIDED TO THE COURT IN WRITING AS TO HOW

18   THE COURT SHOULD CALCULATE THE GUIDELINES AND THE

19   APPROPRIATE SENTENCE?

20          SO IT'S YOUR COUNSEL'S POSITION PAPER.  ARE YOU

21   AWARE OF THE POSITION THAT HE HAS TAKEN, PLACED IN WRITING

22   BEFORE THE COURT AS TO THE APPROPRIATE SENTENCE?

23          **THE DEFENDANT:**  YES, YOUR HONOR.

24          **THE COURT:**  YOU ALSO KNOW THAT YOUR COUNSEL RAISED

25   OBJECTIONS TO SOME OF THE CONDITIONS THAT WERE RECOMMENDED

1   AS CONDITIONS OF SUPERVISED RELEASE, AND WE'VE DISCUSSED

2   THOSE HERE IN OPEN COURT.  YOU'RE AWARE OF THAT.  CORRECT?

3           **THE DEFENDANT:**  YES, YOUR HONOR.

4           **THE COURT:**  THE VICTIM IMPACT STATEMENT.  I DON'T

5   KNOW IF YOU'VE SEEN IT OR COUNSEL DISCUSSED IT WITH YOU, BUT

6   I RAISED THE QUESTION WITH THE GOVERNMENT BECAUSE THE LAW

7   DOES REQUIRE THAT VICTIMS BE TOLD THAT THEY HAVE A RIGHT TO

8   ADDRESS THE COURT.  THEY CAN DO IT IN WRITING, THEY CAN BE

9   PRESENT IN THE COURT, THEY CAN BE HEARD ORALLY.

10          SO YOU'VE HEARD THE GOVERNMENT'S RESPONSE.  IN

11  THIS CASE, THERE ARE SOME VICTIM STATEMENTS BEFORE THE COURT

12  THAT THE COURT HAS REVIEWED.  YOU'RE AWARE OF THAT?

13          **THE DEFENDANT:**  YES, I READ THEM WITH COUNSEL THIS

14  MORNING.

15          **THE COURT:**  ALL RIGHT.

16          SO, SIR, WHATEVER YOU WISH TO PLACE ON THE RECORD

17  AT THIS TIME THAT YOU BELIEVE THE COURT SHOULD CONSIDER FOR

18  PURPOSES OF SENTENCE, PLEASE, GO FORWARD.

19          **THE DEFENDANT:**  WELL, YOUR HONOR, SINCE MY INITIAL

20  SENTENCING, THERE IS NOT A DAY THAT HAS GONE BY THAT I HAVE

21  NOT BEEN INVOLVED IN THE DEEPEST SOUL-SEARCHING OF NOT JUST

22  WHAT I HAD DONE OVERSEAS, BUT MY ENTIRE LIFE AND THE EVENTS

23  THAT LED UP TO THIS.

24          AND I SPOKE AT MY INITIAL SENTENCING ABOUT THE

25  GUILT THAT I HAVE FELT AND EXPERIENCED TOWARD MY VICTIMS.

1    AND SHORTLY AFTER THAT, I FELT A LITTLE STRANGE ABOUT IT.

2    AND I REALIZED MORE AND MORE OVER TIME THAT GUILT IS NOT

3    WHAT -- IT'S NOT A GOOD ENOUGH WORD TO DESCRIBE WHAT I FELT.

4            IN MY CASE, SHAME IS REALLY THE WORD.  AND IT'S

5    MULTIPLIED A THOUSAND-FOLD BECAUSE TO ME GUILT IS WHAT A

6    PERSON FEELS WHEN -- IT'S SOMETHING THEY KNOW THEY'VE DONE

7    WRONG, AND IT COULD BE IN THEIR OWN PRIVATE ROOM.

8            SHAME IS WHAT YOU FEEL, A GUILT FEELING THAT'S SO

9    MAGNIFIED BECAUSE YOU KNOW THAT EVERYBODY IN YOUR UNIVERSE,

10   PAST AND PRESENT, BECOMES AWARE OF SOMETHING YOU'VE DONE

11   THAT'S SHAMEFUL.

12           AND IN MY CASE, YES, IT WAS TERRIBLY WRONG,

13   SHAMEFUL AND DISHONORABLE.  AND REALIZING, KNOWING FIRSTHAND

14   THAT THERE ARE PEOPLE FROM FOUR DECADES AGO WHO WERE ABLE TO

15   FIND OUT WHAT I HAD DONE, AND THEY WERE SHATTERED BY IT,

16   THESE WERE ALL THE PEOPLE WHO I WOULD JUST LIKE TO REACH OUT

17   TO AND SAY I'M SORRY.

18           I OWE WHATEVER I CAN OWE TO MY DIRECT VICTIMS IN

19   THAILAND BUT ALSO TO ALL THE PEOPLE -- MY FAMILY, MY

20   RELATIVES, MY EX-WIFE, EX-GIRLFRIEND -- THE SHAME I FEEL

21   TOWARD THIS.  SO THERE SHOULD BE NO DOUBT ABOUT WHAT I FEEL

22   AND WHAT THIS HAS DONE, NOT JUST TO OTHER PEOPLE, BUT TO

23   MYSELF.

24           AND, UNFORTUNATELY, I CANNOT FEEL ANOTHER PERSON'S

25   PAIN.  I CAN ONLY WISH THAT I COULD DO SOMETHING TO SAY I'M

```
 1    SORRY TO EVERYBODY AND TO PRAY THAT THEIR WOUNDS HAVE HEALED

 2    OR WILL HEAL.

 3              AND PLEASE BEAR WITH ME NOW.

 4              WHAT I BELIEVE WITHOUT ANY DOUBT IS THAT,

 5    SOMEWHERE ALONG THE LINE, I DECIDED MY RELIGIOUS FAITH WAS

 6    NOT WORTH KEEPING, WHICH WAS IRRELEVANT IN MY LIFE.

 7              WELL, THE THREE YEARS I HAVE BEEN INCARCERATED, I

 8    HAVE BEEN INVOLVED IN A VERY INTENSIVE RETURN.  THE WORD IS

 9    IN HEBREW.  IT'S TESHUVAH, WHICH MEANS REPENTANCE, A RETURN

10    TO MY RELIGIOUS FAITH.

11              AND WITH THIS, IT HAS ENABLED ME TO REFLECT UPON

12    HOW MUCH I'VE DEVIATED FROM THE RELIGIOUS VALUES OF MY FAITH

13    AND WHAT GOD EXPECTS OF ME AND HOW MUCH I HAVE TO WORK ON

14    THIS TO RETURN, AND I FEEL I HAVE ACCOMPLISHED A LOT WITH

15    THAT SO FAR.

16              AND I SEE HOW, THROUGH THAT, GRAVE MY WRONGDOING

17    WAS BECAUSE IT DIDN'T JUST BRING ME DOWN IN THE EYES OF GOD

18    BUT DRAGGED OTHER PEOPLE DOWN, TOO.

19              SO IN CONCLUSION, I JUST WANT TO SAY I PRAY THAT

20    YOU WILL CONSIDER -- IN JUDGING ME, CONSIDER NOT JUST THE

21    WORST THING THAT I'VE EVER DONE, THE MOST DISHONORABLE THING

22    THAT I'VE EVER DONE, I PRAY THAT YOU WILL JUDGE ME ON WHAT I

23    CAN BE, TO RETURN TO MY FAITH, TO GOD, DEVOTE MYSELF

24    ENTIRELY IN THIS WAY, AND AT MY AGE NOW, MY FAMILY.

25              I WANT NOTHING MORE THAN TO BE ABLE TO HAVE THE
```

1    TIME TO DEMONSTRATE TO EVERYBODY MY ABILITIES, WHAT I CAN

2    OFFER IN SO MANY WAYS, AND TO PROVE TO MY FELLOW CITIZENS

3    AND THE WORLD THAT I CAN BE WHATEVER I AM SUPPOSED TO BE,

4    WHATEVER I WANT TO BE, AND HOPEFULLY TRY TO MAKE THE WORLD A

5    BETTER PLACE.

6              THANK YOU.

7              **THE COURT:**  THANK YOU, SIR.  YOU MAY BE SEATED.

8              I'M GOING TO TAKE A RECESS JUST TO CALCULATE THE

9    SENTENCE.  BUT BEFORE I DO THAT, I'LL JUST ASK THE PARTIES

10   IS THERE ANYTHING ELSE THAT EITHER SIDE WISHES TO PLACE ON

11   THE RECORD BEFORE I TAKE THE BREAK?

12             DEFENSE HAVE ANYTHING FURTHER?

13             **MR. DYBWAD:**  NO, YOUR HONOR.

14             **THE COURT:**  GOVERNMENT HAVE ANYTHING FURTHER?

15             **MS. PEACE GARNETT:**  YOUR HONOR, I DIDN'T WANT TO

16   LEAVE THE COURT WITH THE IMPRESSION THAT THE VICTIMS DIDN'T

17   FEEL LIKE VICTIMS.  SOME OF THE VICTIMS, AS YOU WILL SEE

18   FROM THE VICTIM IMPACT STATEMENTS, SAID THAT THEY WERE

19   EMBARRASSED AND ONE OF THEM SAID THAT HE'S MORE PROMISCUOUS

20   NOW.

21             THE VICTIMS HAVE SUSTAINED A LOT OF DAMAGE HERE.

22   THEY JUST AREN'T -- THEY JUST DON'T KNOW TO WHAT EXTENT THEY

23   HAVE BEEN DAMAGED.

24             SO I JUST WANTED TO MAKE SURE THAT THE COURT WAS

25   CLEAR ON THAT, AND WITH THAT, I'LL SUBMIT.

1      **THE COURT:**  ALL RIGHT.  WE'LL TAKE A RECESS NOW.

2  SO IT WILL BE ABOUT 15 MINUTES.

3                    *(RECESS TAKEN.)*

4      **THE COURT:**  WE CAN GO BACK ON THE RECORD FOR

5  SENTENCING.

6          SO IF THE DEFENDANT AND DEFENSE COUNSEL WILL JUST

7  STAND AT THE LECTERN, PLEASE.

8      *(MR. DYBWAD AND DEFENDANT APPROACH LECTERN.)*

9      **THE COURT:**  NO LEGAL CAUSE WHY SENTENCE SHOULD NOT

10  BE IMPOSED?

11      **MR. DYBWAD:**  NO, YOUR HONOR.

12      **THE COURT:**  AND DEFENDANT DOES WAIVE FORMAL

13  ARRAIGNMENT FOR HIS SENTENCE?

14      **MR. DYBWAD:**  YES, YOUR HONOR.

15      **THE COURT:**  THE COURT, HAVING CONSIDERED AND I

16  HAVE ALREADY INCORPORATED INTO THE RECORD OR MADE A PART OF

17  THE RECORD ALL OF THE THINGS THAT I'VE REVIEWED FOR PURPOSES

18  OF THE SENTENCING HEARING, THE COURT, HAVING CONSIDERED ALL

19  OF THOSE DOCUMENTS -- INCLUDING THE PRESENTENCE REPORT, THE

20  POSITION PAPERS OF THE PARTIES, VARIOUS POSITION PAPERS,

21  JUST BECAUSE OF THE LENGTH OF TIME THAT IT'S TAKEN TO GET TO

22  THIS POINT TO IMPOSE THE SENTENCE AFTER THE REMAND OF THE

23  CIRCUIT, THE CASE LAW THAT'S BEEN RELIED UPON BY THE

24  PARTIES, THE STATEMENT OF THE DEFENDANT, HIS LETTER THAT HE

25  WROTE TO THE COURT AND ALSO THE ORAL STATEMENT MADE TO THE

1    COURT, THE LETTERS THAT I'VE RECEIVED FROM HIS PARENTS.

2         THE COURT ALSO CONSIDERS THE ADJUSTMENT THAT HE'S

3    MADE SINCE HE'S BEEN IN THE BUREAU OF PRISONS, THE VARIOUS

4    PROGRAMS THAT HE'S PARTICIPATED IN, THE CERTIFICATES THAT

5    HAVE BEEN GIVEN AS A RESULT OF HIS SATISFACTORILY COMPLETING

6    CERTAIN PROGRAMS AND PARTICIPATING IN CERTAIN PROGRAMS THAT

7    WERE OFFERED BY THE BUREAU -- HAVING CONSIDERED ALL OF THOSE

8    THINGS, THE COURT IS NOW READY TO IMPOSE THE SENTENCE.

9         SO, FIRST, I'LL START WITH THE CALCULATION OF THE

10   GUIDELINES.

11        THE COURT HAS THE BENEFIT OF THE GUIDELINES AS

12   CALCULATED BY PROBATION, AS CALCULATED BY GOVERNMENT

13   COUNSEL, AS CALCULATED BY THE DEFENSE; THE PARTIES HAVING

14   ADDRESSED SOME OF THE ISSUES ON WHICH YOU DISAGREED AS TO

15   HOW THE GUIDELINES SHOULD BE CALCULATED, THE COURT WILL NOW

16   INDICATE THE COURT'S CALCULATION OF THE GUIDELINES.

17        SO THE BASE OFFENSE LEVEL IS 24; THE COMMERCIAL

18   SEX ACT, THE TWO-POINT INCREASE; THE USE OF THE MINOR,

19   TWO-POINT INCREASE.

20        THE COURT WILL NOT INCREASE FOR VULNERABLE

21   VICTIMS.  SO I DO NOT ACCEPT PROBATION'S CALCULATION AS TO

22   THAT, THE FOUR POINTS.  SO I WILL NOT ADD THOSE ADDITIONAL

23   FOUR POINTS INTO THE CALCULATION OF THE GUIDELINES.

24        THE MULTIPLE COUNT ADJUSTMENT, THE COURT DOES

25   INCREASE FOUR LEVELS FOR THE MULTIPLE COUNT ADJUSTMENT, AS

```
 1    WELL AS FIVE LEVELS FOR THE PATTERN OF ACTIVITY.

 2              SO BOTH MULTIPLE COUNT ADJUSTMENT AND THE PATTERN

 3    OF ACTIVITY, AND THE COURT WOULD FIND THAT THAT DOES NOT

 4    RESULT IN DOUBLE COUNTING.

 5              THREE POINTS CREDIT FOR ACCEPTANCE OF

 6    RESPONSIBILITY.

 7              SO THE TOTAL OFFENSE LEVEL IS 34 WITH A CRIMINAL

 8    HISTORY CATEGORY OF 1.  SO THE GUIDELINE RANGE, AS

 9    CALCULATED BY THE COURT, IS 151 TO 188 MONTHS.

10              THE COURT IN THIS CASE CONSIDERS THE FACTORS AS

11    THE COURT IS REQUIRED TO DO FOR IMPOSING THE SENTENCE -- THE

12    FACTORS THAT HAVE BEEN DISCUSSED ON THE RECORD, BUT ALSO ARE

13    DISCUSSED IN THE LETTER PREPARED BY PROBATION IN THEIR

14    JUSTIFICATION PORTION OF THEIR LETTER PURSUANT TO 18

15    UNITED STATES CODE 3553(A).

16              AND IN CONSIDERING THESE FACTORS AND WHAT THE

17    SENTENCE SHOULD BE, THE COURT CONSIDERS, OF COURSE, THE

18    NATURE AND CIRCUMSTANCES OF THE OFFENSE, HISTORY AND

19    CHARACTERISTICS OF THE DEFENDANT, THE NEED FOR THE SENTENCE

20    IMPOSED IN THIS CASE.

21              THE SENTENCE THAT THE COURT WILL IMPOSE WILL

22    REFLECT THE SERIOUSNESS OF THE OFFENSE.

23              THE COURT HAS CONSIDERED THAT ONE PURPOSE FOR

24    SENTENCING IS TO PROMOTE RESPECT FOR THE LAW, TO PROVIDE

25    JUST PUNISHMENT FOR THE OFFENSE, TO AFFORD ADEQUATE
```

1    DETERRENCE TO CRIMINAL CONDUCT, TO PROTECT THE PUBLIC FROM

2    FURTHER CRIMES OF THE DEFENDANT, AND THEN TO PROVIDE THE

3    DEFENDANT WITH NEEDED EDUCATIONAL, VOCATIONAL TRAINING OR

4    OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER.

5            AND FOR THAT ONE, THE COURT IS CONSIDERING THE

6    PROGRAM THAT'S OFFERED BY THE BUREAU OF PRISONS OF WHICH THE

7    DEFENDANT IS APPARENTLY AWARE, AND IT IS OFFERED AT THE

8    FACILITY WHERE THE DEFENDANT HAS BEEN APPARENTLY FOR THE

9    LAST THREE YEARS.

10           IT IS A PROGRAM THAT'S DESIGNED TO HELP THOSE WHO

11   HAVE COMMITTED SIMILAR OFFENSES AND TO PROVIDE JUST

12   TREATMENT.

13           THE COURT HAS ALSO CONSIDERED THE KINDS OF

14   SENTENCES THAT ARE AVAILABLE.  THAT WOULD INCLUDE A SENTENCE

15   WITHIN THE RANGE OF THE GUIDELINES.  THE GUIDELINES ARE

16   ADVISORY.  THE COURT UNDERSTANDS THAT.  THEY'RE NOT

17   MANDATORY, BUT THE COURT MUST CALCULATE THEM, AND SO THAT'S

18   THE STARTING PLACE, AND SO I HAVE DONE SO.

19           BUT CERTAINLY THE SENTENCES THAT ARE AVAILABLE TO

20   THIS COURT WOULD BE A SENTENCE WITHIN THE GUIDELINE RANGE,

21   SENTENCES BELOW THE RANGE, SENTENCES UPWARD FROM THE RANGE,

22   ALL THE WAY TO THE STATUTORY MAXIMUM SENTENCE THAT COULD BE

23   IMPOSED IN THIS CASE.

24           SO ALL OF THOSE ARE AVAILABLE TO THE COURT.  THIS

25   IS NOT A CASE THAT HAS A MANDATORY MINIMUM SENTENCE; AND SO,

```
 1    THEREFORE, THE COURT CAN SENTENCE WHATEVER THE COURT THINKS
 2    IS APPROPRIATE.
 3          THE GUIDELINE SENTENCING RANGE, OF COURSE, I'VE
 4    CONSIDERED THAT BECAUSE I CALCULATED THE GUIDELINES AND I'VE
 5    IDENTIFIED WHAT I BELIEVE THAT RANGE TO BE, THE PERTINENT
 6    POLICY STATEMENTS ISSUED BY THE SENTENCING COMMISSION.
 7          AND SO ON THE RECORD TODAY WE'VE DISCUSSED SOME OF
 8    THE GUIDELINES, STATEMENTS, WHETHER THEY APPLY, WHY THEY
 9    APPLY, HOW DOES THE COURT CALCULATE THE SENTENCE CONSIDERING
10    THOSE; I HAVE NOT READ THE LEGISLATIVE HISTORY THAT WAS
11    ACTUALLY DISCUSSED BY COUNSEL IN THE CASE, BUT I HAVE NOT
12    ACTUALLY REVIEWED THAT; THE NEED TO AVOID UNWARRANTED
13    SENTENCE DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS
14    WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT.
15          AND COUNSEL HAVE EACH, ON THE RECORD, ADDRESSED
16    OTHER CASES WHERE SENTENCES HAVE BEEN IMPOSED FOR SIMILAR
17    CONDUCT; AND TO THE EXTENT THAT THE CIRCUIT HAS BECOME
18    INVOLVED IN COMMENTING ON WHETHER THAT WAS AN APPROPRIATE
19    SENTENCE OR NOT, SO WE HAVE SOME CASE LAW TO GIVE SOME
20    GUIDANCE.
21          IN THIS CASE, WE DON'T HAVE OTHER DEFENDANTS.  WE
22    JUST HAVE ONE DEFENDANT.  SO IT IS NOT A CASE WHERE THE
23    COURT HAS LOOKED AT ROLE OF THE OFFENSE AND CRIMINAL HISTORY
24    AND COMPARED WITH INDIVIDUAL DEFENDANTS THE KINDS OF THINGS
25    THAT THE COURT WOULD COMPARE IF THERE WAS MORE THAN ONE
```

1    DEFENDANT INVOLVED.

2            THIS IS NOT A RESTITUTION CASE.  THERE'S BEEN NO

3    REQUEST FOR RESTITUTION OR ANY SUGGESTION THAT RESTITUTION

4    SHOULD BE IMPOSED.  SO THAT IS NOT A FACTOR TO BE

5    CONSIDERED.

6            THE COURT FINDS THAT THE SENTENCE -- AND I BELIEVE

7    IT TO BE A REASONABLE SENTENCE, CONSIDERING ALL OF THE

8    FACTORS THAT THE COURT HAS JUST DISCUSSED -- IS THE SENTENCE

9    OF 25 YEARS.  IT IS 300 MONTHS, AND THAT IS THE SENTENCE

10   THAT THE COURT WILL IMPOSE.

11           I DO CONSIDER THAT TO BE A HIGH SENTENCE.  IT MAY

12   BE ONE OF THE LARGER SENTENCES THAT I HAVE HAD THE OCCASION

13   TO IMPOSE, EXCEPT IN THOSE INSTANCES WHERE THERE WERE

14   MANDATORY MINIMUMS THAT THE COURT FELT THAT IT MUST IMPOSE

15   BECAUSE CONGRESS HAD ADDRESSED IT.

16           IN THIS CASE, I THINK IT'S WARRANTED.  THE COURT

17   IS DEPARTING CERTAINLY UPWARD FROM THE GUIDELINE RANGE IN

18   SENTENCING OUTSIDE OF THE GUIDELINE RANGE, BUT I THINK IT'S

19   APPROPRIATE FOR SOME OF THE FACTORS THAT THE COURT WILL

20   ADDRESS.

21           THE NATURE OF THE OFFENSE, CERTAINLY PROBATION HAS

22   CHARACTERIZED IT AS UNUSUALLY DEPRAVED --

23           THAT MAY BE THE BEST WAY TO DESCRIBE IT.

24           -- INVOLVING YOUNGSTERS, MINORS; THE AGES OF THESE

25   YOUNGSTERS, IN SUCH SERIOUS CONDUCT, CONDUCT THAT MAY AFFECT

1  THEM FOR THE REST OF THEIR LIVES, CERTAINLY MAY AFFECT THEIR

2  ABILITY TO ENGAGE IN SEXUAL CONDUCT THAT MANY MAY FEEL IS A

3  MORE NORMAL TYPE OF SEXUAL CONDUCT.

4          THE AGES OF THE VICTIMS; NUMBER OF OFFENSES; THE

5  FACT THAT THIS TOOK PLACE OVER A PERIOD OF FIVE YEARS; THE

6  FACT THAT SOME VICTIMS WERE EXPOSED TO THE CONDUCT ON MORE

7  THAN ONE OCCASION; THE PICTURES THAT WERE TAKEN, THE DIARY,

8  THE HANDWRITTEN DESCRIPTION OF THE CONDUCT THAT TOOK PLACE

9  OR THAT THE DEFENDANT DESIRED TO TAKE PLACE; THE RECRUITING

10 OF SOME YOUNGSTERS TO BRING EVEN YOUNGER VICTIMS; THE IMPACT

11 STATEMENTS OF THE VICTIMS THEMSELVES; THE FACT THAT SOME

12 AREN'T EVEN AWARE, MAYBE EVEN NOW, UNLESS SOMEONE HAS TOLD

13 THEM, THAT THERE WAS ANYTHING IMPROPER IN THE CONDUCT THAT

14 TOOK PLACE -- THESE ARE ALL FACTORS THAT THE COURT HAS

15 CONSIDERED.

16          I DO CONSIDER THESE TO BE AGGRAVATING FACTORS,

17 AGGRAVATING CIRCUMSTANCES THAT WARRANT A SENTENCE MUCH

18 HIGHER THAN THE SENTENCE THAT'S DICTATED UNDER THE

19 GUIDELINES.

20          THE FACT THAT THE DEFENDANT HAS ADMITTED TO THE

21 CONDUCT, THE NUMBER OF BOYS INVOLVED, THE AGE OF THE BOYS IS

22 A FACTOR THAT THE COURT HAS CONSIDERED AS WELL.

23          IT'S EXTRAORDINARY IN TERMS OF THE NUMBER OF

24 VICTIMS INVOLVED AND THE PERIOD OVER WHICH THE CONDUCT TOOK

25 PLACE.

1      THE FACT THAT -- AND, OF COURSE, THIS IS JUST

2   BASED ON THE STATUTE ITSELF -- THAT ONE WOULD LEAVE ONE

3   COUNTRY, GO TO OTHER COUNTRIES WITH THE INTENT OF MOLESTING

4   YOUNG CHILDREN, AND THE COUNTRY CHOSEN, THAILAND, A COUNTRY

5   WHERE THERE IS A LOT OF POVERTY AND FAMILIES SOMETIMES DON'T

6   EVEN THINK OF WHAT CONDUCT MAY TAKE PLACE WHEN THEIR

7   CHILDREN ARE EXPOSED TO THIS.

8      IN THIS CASE, OF COURSE, THESE WERE -- IT'S BEEN

9   DESCRIBED AS YOUNGSTERS WHO -- SOME OF WHOM DID NOT HAVE

10  FAMILIES, DID NOT HAVE HOMES, LIVED ON THE STREET, AND WOULD

11  ENGAGE IN CONDUCT FOR SUCH SMALL AMOUNTS OF MONEY AND SUCH

12  SMALL FAVORS AS HAVE BEEN ADDRESSED IN THIS CASE.

13     THOSE ARE ALL OF THE FACTORS THAT THE COURT HAS

14  CONSIDERED AND THE COURT BELIEVES WARRANTS A SENTENCE

15  OUTSIDE OF THE GUIDELINE RANGE IN THIS CASE.

16     ALSO, I WOULD JUST INDICATE THAT EVEN IF THE

17  GUIDELINES HAD BEEN CALCULATED DIFFERENTLY SO HAD THE COURT

18  FOUND THAT THE VULNERABLE VICTIM ADJUSTMENT APPLIED AND HAD

19  I IMPOSED THAT, I WOULD STILL FIND THE SENTENCE THAT THE

20  COURT IS IMPOSING TO BE WARRANTED AND REASONABLE IN THIS

21  CASE.

22     EVEN IF THE MULTIPLE COUNT ADJUSTMENT AND THE

23  PATTERN OF ACTIVITY RESULTS IN EITHER DOUBLE COUNTING OR

24  JUST THE FACTORS THAT HAVE BEEN CONSIDERED IN CALCULATING

25  OTHER PARTS OF THE GUIDELINE, EVEN IF THAT SHOULD BE FOUND

1   TO BE NOT WARRANTED IN THIS CASE OR NOT APPROPRIATE IN TERMS

2   OF THE GUIDELINE CALCULATION, THE COURT WOULD STILL FIND

3   THAT THE SENTENCE THAT THE COURT WILL IMPOSE THIS AFTERNOON

4   IS THE APPROPRIATE SENTENCE.

5          SO SENTENCING OUTSIDE THE GUIDELINES, REGARDLESS

6   OF HOW I CALCULATED THEM, WHETHER PROBATION IS RIGHT OR THE

7   DEFENSE IS RIGHT OR THE GOVERNMENT IS RIGHT, THE COURT STILL

8   BELIEVES THAT THE SENTENCE THAT THE COURT WILL IMPOSE IS A

9   WARRANTED AND APPROPRIATE SENTENCE IN THIS CASE.

10          THEREFORE, THE COURT SENTENCES AS FOLLOWS:

11          THE DEFENDANT IS ORDERED TO PAY TO THE

12   UNITED STATES A SPECIAL ASSESSMENT OF $200.  IT'S DUE

13   IMMEDIATELY, BUT IT MAY BE PAID DURING THE PERIOD OF

14   SUPERVISION.

15          THE COURT WAIVES THE FINES.  THE COURT FINDS THE

16   DEFENDANT DOES NOT HAVE THE ABILITY TO PAY A FINE.

17          AND EARLIER TODAY WE WERE DISCUSSING THE

18   DEFENDANT'S FINANCIAL STATUS AND WHETHER HE SHOULD PAY FOR

19   THE COST OF TREATMENT, AND THE COURT WILL ADDRESS THAT A

20   LITTLE BIT LATER.

21          PURSUANT TO THE SENTENCING REFORM ACT OF 1984, IT

22   IS THE JUDGMENT OF THE COURT THAT THIS DEFENDANT IS HEREBY

23   COMMITTED ON COUNTS 4 AND 10 OF THE FIRST SUPERSEDING

24   INDICTMENT TO THE CUSTODY OF THE BUREAU OF PRISONS TO BE

25   IMPRISONED FOR A TERM OF 300 MONTHS; SO IT'S A 25-YEAR

1    SENTENCE.

2         THIS TERM CONSISTS OF 300 MONTHS ON EACH OF THE

3    COUNTS 4 AND 10 TO BE SERVED CONCURRENTLY.

4         UPON RELEASE FROM IMPRISONMENT, DEFENDANT SHALL BE

5    PLACED ON SUPERVISED RELEASE FOR LIFE.  THE TERM CONSISTS OF

6    LIFE ON EACH COUNTS 4 AND 10 TO RUN CONCURRENTLY UNDER THE

7    FOLLOWING TERMS AND CONDITIONS.

8         AND I'LL ATTEMPT TO MODIFY THE CONDITIONS

9    CONSISTENT WITH THE DISCUSSION THAT WE'VE HAD AND CONSISTENT

10   WITH THE ADDITIONAL INFORMATION THAT PROBATION HAS PROVIDED.

11        SO WHEN I FINISH, COUNSEL CAN CERTAINLY CORRECT

12   THE RECORD TO THE EXTENT THAT I FAIL TO MAKE MODIFICATIONS

13   CONSISTENT WITH THE DISCUSSIONS THAT HAVE ALREADY TAKEN

14   PLACE.

15        NO. 1.  THE DEFENDANT SHALL COMPLY WITH THE RULES

16   AND REGULATIONS OF THE UNITED STATES PROBATION OFFICE AND

17   GENERAL ORDER 318, AS WELL AS THE GENERAL PROVISIONS UNDER

18   THE COMPUTER-MONITORING PROGRAM, RULES, AND PARTICIPATION

19   AGREEMENT.

20        AS DEFENSE COUNSEL SAID, IF ANY OF THOSE SHOULD

21   BECOME THE SUBJECT OF A VIOLATION OF SUPERVISED RELEASE,

22   THEN, OF COURSE, WE WILL HAVE FURTHER DISCUSSIONS ON WHETHER

23   THOSE SHOULD HAVE BEEN IMPOSED;

24        NO. 2.  DURING THE PERIOD OF COMMUNITY

25   SUPERVISION, DEFENDANT WILL PAY THE SPECIAL ASSESSMENT IN

1    ACCORDANCE WITH THIS JUDGMENT AND COMMITMENT ORDER;

2            NO. 3.  THE DEFENDANT SHALL COOPERATE IN THE

3    COLLECTION OF A D.N.A. SAMPLE FROM THE DEFENDANT;

4            THE FOURTH CONDITION, THE DEFENDANT SHALL POSSESS

5    AND USE ONLY THOSE COMPUTERS AND COMPUTER-RELATED DEVICES,

6    SCREEN USER NAMES, PASSWORDS, E-MAIL ACCOUNTS, AND INTERNET

7    SERVICE PROVIDERS WHICH HAVE BEEN DISCLOSED TO THE PROBATION

8    OFFICER UPON THE COMMENCEMENT OF SUPERVISION.

9            ANY CHANGES OR ADDITIONS ARE TO BE DISCLOSED TO

10   PROBATION, THE PROBATION OFFICER PRIOR TO THE FIRST USE.

11           COMPUTERS AND COMPUTER-RELATED DEVICES ARE

12   PERSONAL COMPUTERS, PERSONAL DATA ASSISTANTS, (PDA'S),

13   INTERNET APPLICATIONS, ELECTRONIC GAMES, CELLULAR

14   TELEPHONES, DIGITAL STORAGE MEDIA, AS WELL AS THEIR

15   PERIPHERAL EQUIPMENT THAT CAN ACCESS OR CAN BE MODIFIED TO

16   ACCESS THE INTERNET, ELECTRONIC BULLETIN BOARDS, AND OTHER

17   COMPUTERS;

18           CONDITION NO. 5.  ALL COMPUTERS, COMPUTER-RELATED

19   DEVICES, AND THEIR PERIPHERAL EQUIPMENT USED BY THE

20   DEFENDANT SHALL BE SUBJECT TO SEARCH AND SEIZURE.  THIS

21   SHALL NOT APPLY TO ITEMS USED AT THE EMPLOYMENT SITES WHICH

22   ARE MAINTAINED AND MONITORED BY THE EMPLOYER.

23           NEXT CONDITION, THE DEFENDANT SHALL COMPLY WITH

24   THE RULES AND REGULATIONS OF THE COMPUTER-MONITORING

25   PROGRAM.  THE COURT DOES NOT IMPOSE A COST.  THE COURT DOES

```
 1   NOT HAVE ADEQUATE INFORMATION CONCERNING THE DEFENDANT'S
 2   ABILITY TO PAY; AND CONSIDERING THE NUMBER OF YEARS THAT THE
 3   COURT HAS IMPOSED IN CUSTODY, AND THE DEFENDANT'S AGE,
 4   WHETHER HE WILL BE ABLE TO FIND EMPLOYMENT OR SATISFY THIS
 5   OBLIGATION, IT'S UNKNOWN TO THE COURT.  SO I'M NOT IMPOSING
 6   IT.
 7            I THINK THE TREATMENT PROGRAMS AND THE ASSISTANCE
 8   THAT PROBATION WILL BE ABLE TO OFFER THE DEFENDANT ARE
 9   IMPORTANT AND ANY COMMUNITY-BASED PROGRAMS THAT MAY BE
10   AVAILABLE TO HIM, THAT HE PARTICIPATE IN THOSE WITHOUT THE
11   BURDEN OF HAVING TO WORRY ABOUT HOW TO PAY FOR THEM.
12            NEXT CONDITION, THE DEFENDANT SHALL SUBMIT TO A
13   SEARCH AT ANY TIME WITH OR WITHOUT A WARRANT BY ANY LAW
14   ENFORCEMENT OR PROBATION OFFICER OF THE DEFENDANT, OF HIS
15   PERSON OR PROPERTY -- HIS HOUSE, HIS RESIDENCE, VEHICLE,
16   PAPERS, COMPUTER, OTHER ELECTRONIC COMMUNICATIONS OR DATA
17   STORAGE DEVICES OR MEDIA AND EFFECTS -- UPON REASONABLE
18   SUSPICION CONCERNING A VIOLATION OF THE CONDITIONS OF
19   SUPERVISION OR UNLAWFUL CONDUCT BY THE DEFENDANT OR BY ANY
20   PROBATION OFFICER IN THE LAWFUL DISCHARGE OF THE OFFICER'S
21   SUPERVISION FUNCTIONS.
22            THE DEFENDANT SHALL NOT POSSESS OR USE A COMPUTER
23   WITH ACCESS TO ANY ONLINE SERVICE OF ANY LOCATION WITHOUT
24   THE PRIOR APPROVAL OF PROBATION.  THIS INCLUDES ACCESS
25   THROUGH ANY INTERNET SERVER, PROVIDER, OR BULLETIN BOARD
```

1  SYSTEM OR ANY PUBLIC OR PRIVATE COMPUTER NETWORK SYSTEM.

2  THE DEFENDANT SHALL NOT HAVE ANOTHER INDIVIDUAL

3  ACCESS THE INTERNET ON HIS BEHALF TO OBTAIN FILES OR

4  INFORMATION WHICH HE HAS BEEN RESTRICTED FROM ACCESSING

5  HIMSELF OR TO ACCEPT RESTRICTED FILES OR INFORMATION FROM

6  OTHER PERSONS.

7  THE DEFENDANT SHALL REGISTER WITH THE STATE SEX

8  OFFENDER REGISTRATION AGENCY IN ANY STATE WHERE THE

9  DEFENDANT RESIDES, IS EMPLOYED, CARRIES ON A VOCATION, IS A

10  STUDENT, AS DIRECTED BY PROBATION.

11  THE DEFENDANT SHALL PROVIDE PROOF OF REGISTRATION

12  TO PROBATION WITHIN 30 DAYS OF RELEASE FROM IMPRISONMENT.

13  THE DEFENDANT SHALL PARTICIPATE IN A

14  PSYCHOLOGICAL/PSYCHIATRIC COUNSELING AND/OR SEX OFFENDER

15  TREATMENT PROGRAM, WHICH MAY INCLUDE INPATIENT TREATMENT, IF

16  SUCH PROGRAM IS APPROVED BY PROBATION WITH OR WITHOUT

17  CONSENT BY THE DEFENDANT AND DEFENSE COUNSEL.

18  DEFENDANT SHALL TAKE ALL PRESCRIBED MEDICATION AS

19  DIRECTED BY PROBATION.

20  SO THIS IS PRESCRIBED MEDICATION.  AND THE

21  MODIFIER IS JUST PROBATION'S DIRECTION THAT THE DEFENDANT

22  SHALL TAKE ALL PRESCRIBED MEDICATION, INCLUDING MEDICATION

23  THAT MAY BE PRESCRIBED BY A PROFESSIONAL CONCERNING THE

24  VARIOUS PROGRAMS OR TESTS THAT THE DEFENDANT MAY BE

25  PARTICIPATING IN.

```
 1              AGAIN, THE COURT IS NOT REQUIRING THAT THE

 2   DEFENDANT PAY THE COST.

 3              THIS DOES NOT INCLUDE ANTI-PSYCHOTIC MEDICATION OR

 4   HORMONAL DRUGS TO REDUCE ONE'S SEX DRIVE OR CAUSE IMPOTENCE.

 5   SUCH COULD BE REQUIRED ONLY WITH PERMISSION OF THE COURT.

 6              SO IF ANYONE RECOMMENDS -- EVEN A MEDICAL

 7   DOCTOR -- THAT ANTI-PSYCHOTIC OR HORMONAL DRUGS BE USED AS A

 8   PART OF TREATMENT, IT WOULD BE NECESSARY FIRST TO RETURN TO

 9   COURT AND GET PERMISSION OF THE COURT.

10              DEFENDANT SHALL NOT POSSESS ANY MATERIALS

11   INCLUDING PICTURES, PHOTOGRAPHS, BOOKS, WRITINGS, DRAWINGS,

12   VIDEO, OR VIDEO GAMES DEPICTING AND/OR DESCRIBING SEXUALLY

13   EXPLICIT CONDUCT, AND IT DOES NOT INCLUDE MATERIALS THAT MAY

14   BE USED FOR TREATMENT TO THE EXTENT THAT THE DEFENDANT'S

15   INVOLVED IN THE TREATMENT PROGRAM.

16              THE DEFENDANT SHALL NOT POSSESS ANY MATERIALS,

17   INCLUDING PICTURES, PHOTOGRAPHS, BOOKS, WRITINGS, DRAWINGS,

18   VIDEO, VIDEO GAMES, DEPICTING OR DESCRIBING CHILD

19   PORNOGRAPHY, BUT IT DOES NOT INCLUDE HAVING IN HIS

20   POSSESSION HIS PRESENTENCE REPORT, INCLUDING COPIES OF

21   STATUTES IN CASES THAT HE MAY NEED IF HE WERE TO BRING A

22   COLLATERAL CHALLENGE TO THE SENTENCE.

23              THE DEFENDANT SHALL NOT OWN, USE, OR HAVE ACCESS

24   TO SERVICES OF ANY COMMERCIAL MAIL-RECEIVING AGENCY, NOR

25   SHALL HE OPEN OR MAINTAIN A POST OFFICE BOX WITHOUT PRIOR
```

1   WRITTEN APPROVAL OF PROBATION.

2           THE DEFENDANT SHALL NOT FREQUENT OR LOITER WITHIN

3   A HUNDRED FEET OF SCHOOLYARDS, PARKS, PUBLIC SWIMMING POOLS,

4   PLAYGROUNDS, YOUTH CENTERS, VIDEO ARCADE FACILITIES, OR

5   OTHER PLACES PRIMARILY USED BY PERSONS UNDER THE AGE OF 18.

6           DEFENDANT SHALL NOT ASSOCIATE OR HAVE VERBAL,

7   WRITTEN, TELEPHONIC OR ELECTRONIC COMMUNICATION WITH ANY

8   PERSON UNDER THE AGE OF 18 EXCEPT IN THE PRESENCE OF THE

9   PARENT OR LEGAL GUARDIAN OF THE PERSON UNDER THE AGE OF 18

10  AND ON CONDITION THAT THE DEFENDANT NOTIFY THE PARENT OR

11  LEGAL GUARDIAN OF THIS CONVICTION OR THE CONVICTION IN THE

12  INSTANT OFFENSE.

13          THIS PROVISION DOES NOT ENCOMPASS PERSONS UNDER

14  THE AGE OF 18 SUCH AS WAITERS, CASHIERS, TICKET VENDORS WITH

15  WHOM DEFENDANT MUST INTERACT IN ORDER TO OBTAIN ORDINARY AND

16  USUAL COMMERCIAL SERVICES.

17          DEFENDANT SHALL NOT AFFILIATE WITH, OWN, CONTROL,

18  VOLUNTEER AND/OR BE EMPLOYED IN ANY CAPACITY BY A BUSINESS

19  AND/OR ORGANIZATION THAT CAUSES HIM TO REGULARLY CONTACT

20  PERSONS UNDER THE AGE OF 18.

21          DEFENDANT SHALL NOT AFFILIATE WITH, OWN, CONTROL

22  OR BE EMPLOYED IN ANY CAPACITY BY A BUSINESS WHOSE PRINCIPAL

23  PRODUCT IS THE PRODUCTION AND/OR SELLING OF MATERIALS

24  DEPICTING OR DESCRIBING, QUOTE, "SEXUALLY EXPLICIT CONDUCT,"

25  AS DEFINED IN 18 UNITED STATES CODE SECTION 22562.

```
 1          AND IN THESE CONDITIONS, WHENEVER THE COURT USES

 2   THAT EXPRESSION "SEXUALLY EXPLICIT CONDUCT," THE COURT IS

 3   REFERRING TO THE DEFINITION INCLUDED IN 18 UNITED STATES

 4   CODE 22562.

 5          THE DEFENDANT'S EMPLOYMENT SHOULD BE APPROVED BY

 6   PROBATION, AND ANY CHANGE IN EMPLOYMENT MUST BE PREAPPROVED

 7   BY PROBATION.  THE DEFENDANT SHALL SUBMIT THE NAME AND

 8   ADDRESS OF THE PROPOSED EMPLOYER TO PROBATION AT LEAST TEN

 9   DAYS PRIOR TO ANY SCHEDULE CHANGE.

10          AND THEN, FINALLY, DEFENDANT SHALL NOT RESIDE

11   WITHIN DIRECT VIEW OF SCHOOLYARDS -- IN HIS DIRECT VIEW OF

12   SCHOOLYARDS, PARKS, PUBLIC SWIMMING POOLS, PLAYGROUNDS,

13   YOUTH CENTERS, VIDEO ARCADE FACILITIES, OR OTHER PLACES

14   PRIMARILY USED BY PERSONS UNDER THE AGE OF 18.

15          DEFENDANT'S RESIDENCE SHALL BE APPROVED BY THE

16   PROBATION OFFICER.  ANY CHANGE IN RESIDENCE MUST BE

17   PREAPPROVED BY PROBATION.  DEFENDANT SHALL SUBMIT THE

18   ADDRESS OF THE PROPOSED RESIDENCE TO PROBATION AT LEAST TEN

19   DAYS PRIOR TO ANY SCHEDULED MOVE.

20                         (PAUSE.)

21          THE COURT:  THOSE ARE THE CONDITIONS OF SUPERVISED

22   RELEASE.

23          THIS IS THE TIME FOR COUNSEL TO BRING TO THE

24   ATTENTION OF THE COURT IF ANY OF THE CONDITIONS WERE TO BE

25   MODIFIED, LANGUAGE CHANGE, PLEASE ADVISE THE COURT SO I
```

```
 1    COULD CORRECT THE RECORD.

 2              ANYTHING FROM THE GOVERNMENT?

 3         MS. PEACE GARNETT:  NO, YOUR HONOR.

 4         THE COURT:  FROM THE DEFENSE?

 5         MR. DYBWAD:  NO, YOUR HONOR.

 6         THE COURT:  THE JUSTIFICATION FOR THE SENTENCE,

 7    THE COURT HAS ALREADY INDICATED ON THE RECORD.

 8              THE CONSIDERATION OF THE FACTORS, 18 UNITED STATES

 9    CODE 3553(A), AND THE JUSTIFICATION FOR THE UPWARD DEPARTURE

10    FROM THE GUIDELINE RANGE.  AND THOSE ARE THE SAME REASONS

11    THAT THE COURT HAS IMPOSED THE SENTENCE OF 300 MONTHS, THAT

12    THE COURT CONSIDERS TO BE A REASONABLE SENTENCE.  IT'S NOT

13    EXCESSIVE.  THE STATUTE DOES PROVIDE FOR A MANDATORY

14    SENTENCE THAT'S GREATER THAN THE ONE THE COURT IMPOSED, BUT

15    THE COURT FINDS THIS TO BE A REASONABLE SENTENCE CONSIDERING

16    THE CIRCUMSTANCES.

17              THE RECOMMENDATIONS, I THINK DEFENSE HAS ASKED

18    THAT THE COURT RECOMMEND THAT THE DEFENDANT BE DESIGNATED BY

19    THE BUREAU TO SERVE HIS SENTENCE AT THE FACILITY WHERE HE'S

20    BEEN FOR THE LAST THREE YEARS.

21              AND THE NAME, AGAIN?

22         MR. DYBWAD:  F.C.I. SEAGOVILLE,

23    S-E-A-G-O-V-I-L-L-E.

24         THE COURT:  AND THE COURT WILL SO RECOMMEND, AS

25    WELL AS RECOMMENDING THAT HE BE PERMITTED TO PARTICIPATE IN
```

*JULY 30, 2010*

1   THE TREATMENT PROGRAM THAT'S DESIGNED FOR THE OFFENSE OR THE

2   OFFENSES OF CONVICTION, IF HE IS OTHERWISE QUALIFIED TO DO

3   SO.

4          **MR. DYBWAD:**  AND IF YOUR HONOR WOULD ALSO MAKE A

5   TEMPORARY RECOMMENDATION.

6          I BELIEVE MR. PROWLER WAS FLOWN IN TO

7   SAN BERNARDINO LAST NIGHT.  IF THE COURT WOULD CONSIDER

8   ENTERTAINING MAKING A RECOMMENDATION THAT HE BE HOUSED AT

9   M.D.C. PRIOR TO PERHAPS BEING RETURNED TO F.C.I. SEAGOVILLE.

10          **THE COURT:**  PENDING DESIGNATION --

11          **MR. DYBWAD:**  PENDING DESIGNATION.

12          **THE COURT:**  -- THE COURT WOULD SO ORDER.

13          DEFENDANT, OF COURSE, WILL BE GIVEN CREDIT FOR HIS

14   TIME HE'S ALREADY SERVED TO BE CALCULATED BY THE BUREAU.

15          ANYTHING ELSE THAT COUNSEL WOULD LIKE TO HAVE THE

16   COURT MAKE SPECIFIC FINDINGS JUST FOR FUTURE PURPOSES?

17          **MR. DYBWAD:**  YOUR HONOR, IF I MAY HAVE A MOMENT.

18          **THE COURT:**  SURE.

19                *(PAUSE.)*

20        *(COUNSEL CONFERRED OFF THE RECORD.)*

21          **MR. DYBWAD:**  NOTHING FROM THE DEFENSE AT THIS

22   POINT, YOUR HONOR.

23          **THE COURT:**  ALL RIGHT.

24          ANYTHING FURTHER FROM THE GOVERNMENT?

25          **MS. PEACE GARNETT:**  AS TO THE MULTIPLE COUNT

```
 1  ADJUSTMENT, YOUR HONOR.

 2          THE COURT:  YES.

 3          MS. PEACE GARNETT:  THE COURT INCREASED THE

 4  DEFENDANT'S OFFENSE LEVEL BY FOUR LEVELS.

 5          THE COURT:  YES.

 6          MS. PEACE GARNETT:  PROBATION RECOMMENDED FIVE

 7  LEVELS, AND I JUST WANTED TO INQUIRE OF THE COURT WHETHER

 8  THERE WAS A SPECIFIC MINOR THAT THE COURT DID NOT INCLUDE.

 9          THE COURT:  I ACTUALLY THOUGHT IT WAS A FOUR-LEVEL

10  MULTIPLE COUNT ADJUSTMENT, AND THE PATTERN OF ACTIVITY WAS

11  THE FIVE.

12          MS. PEACE GARNETT:  ALL RIGHT, YOUR HONOR.

13          THE COURT:  OKAY.  I'LL STAY WITH WHAT I FOUND.

14          OKAY.  ANYTHING FURTHER FROM ANYONE?

15          THE COURT WILL ADVISE THE DEFENDANT OF HIS RIGHT

16  TO APPEAL, OBVIOUSLY.

17          DEFENDANT DOES HAVE A RIGHT TO APPEAL FROM THE

18  SENTENCE THAT HAS BEEN IMPOSED.  I THINK HE KNOWS WHAT TO DO

19  AND HOW TO DO THAT, BUT THE COURT WOULD ADVISE OR ORDER THAT

20  COUNSEL FILE THE NOTICE FOR HIM IF HE WISHES TO APPEAL FROM

21  THE IMPOSITION OF SENTENCE.

22          IT'S HIS RESPONSIBILITY TO KEEP THE NINTH CIRCUIT

23  ADVISED AT ALL TIMES OF HIS CURRENT ADDRESS.

24          BUT COUNSEL WILL FILE THE NOTICE FOR HIM IF HE

25  WISHES TO APPEAL JUST TO PROTECT HIS APPEAL RIGHTS.
```

*JULY 30, 2010*

1          AND I'M SURE COUNSEL WILL EXPLAIN, BUT THERE ARE

2     ISSUES THAT THE DEFENDANT MAY BE INTERESTED IN HAVING THE

3     APPELLATE COURT REVIEW SUCH AS THE CALCULATIONS OF THE

4     GUIDELINES, WHETHER SOME OF THESE THINGS WERE APPROPRIATE TO

5     ENHANCE UNDER THE GUIDELINE CALCULATION, THE UPWARD

6     DEPARTURE FROM THE GUIDELINES, AND THEN OBVIOUSLY THE

7     ULTIMATE SENTENCE THAT THE COURT HAS IMPOSED.

8          I ENCOURAGE THE DEFENDANT TO CONTINUE TO BE

9     INVOLVED IN THE PROGRAMS THAT ARE AVAILABLE THROUGH THE

10    BUREAU OF PRISONS.

11         YOU'VE ALREADY BEEN IN SOME PROGRAMS THAT I THINK

12    YOU HAVE FOUND TO BE BENEFICIAL.  I ENCOURAGE YOU TO

13    CONTINUE TO DO SO AND TAKE ADVANTAGE OF THE OPPORTUNITY TO

14    BETTER UNDERSTAND THE CASE, YOUR INVOLVEMENT IN IT, THE

15    EFFECT THAT ALL OF THIS HAS HAD ON YOUR LIFE, THE LIFE OF

16    THE YOUNGSTERS INVOLVED.

17         UNLESS THERE'S SOMETHING FURTHER, THIS DOES

18    COMPLETE THE SENTENCING HEARING.

19         **MR. DYBWAD:**  NOTHING FROM THE DEFENSE, YOUR HONOR.

20         **MS. PEACE GARNETT:**  THANK YOU, YOUR HONOR.

21         **THE CLERK:**  PLEASE RISE.

22              (PROCEEDINGS CONCLUDED.)

23                   --oOo--

24

25

*JULY 30, 2010*

```
 1                        CERTIFICATE

 2

 3        I HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

 4   TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

 5   CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

 6   PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

 7   TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

 8   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

 9

10   DATED THIS 12TH DAY OF OCTOBER, 2010.

11

12        _____

13        MARY RIORDAN RICKEY
          OFFICIAL COURT REPORTER

14

15

16

17

18

19

20

21

22

23

24

25
```

*JULY 30, 2010*